IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| Plaintiff, ) | |
| v. ) | Case No. 3:10-CR-73 |
| ) | VARLAN/GUYTON |
| DARREN WESLEY HUFF ) | |
| Defendant. ) | |

**MOTION TO DISMISS FOR FAILURE TO ESTABLISH
INTERSTATE COMMERCE JURISDICTION
AND MEMORANDUM IN SUPPORT**

Comes the defendant, DARREN WESLEY HUFF, by and through counsel, pursuant to Article I, Section 8 and the Sixth Amendment to the U.S. Constitution, and all other authorities cited herein, and respectfully moves this Court for an order dismissing Counts 1 and 2 of the Superseding Indictment for failing to establish interstate commerce jurisdiction. In support of this motion, Mr. Huff would show as follows:

(1) Mr. Huff is charged in a two-count indictment.

(2) Federal jurisdiction for Count 1 is predicated on the Commerce Clause.

(3) Federal jurisdiction for Count 2 is predicated on Count 1.

(4) Section 231(a)(2) does not comport with contemporary understandings of the limited bounds of federal jurisdiction based on the Commerce Clause.

(5) In addition to the statute's constitutional infirmity, the indictment failed to sufficiently allege the "commerce" element and failed to set forth any facts that would support it.

(6) Mr. Huff requests an evidentiary hearing on this motion.

In further support, Mr. Huff relies on the accompanying memorandum of law.

1

# MEMORANDUM OF LAW

## I. INTRODUCTION

Mr. Huff is charged in a two-count indictment. In Count 1, Mr. Huff is charged with "transport[ing] **in commerce** a firearm, knowing and having reason to know and intending that such firearm would be used unlawfully in furtherance of a civil disorder." See [Doc. 19: Superseding Indictment] (charging violation of 18 U.S.C. § 231(a)(2)) (emphasis added). In Count 2, Mr. Huff is charged with "us[ing] and carry[ing] a firearm during and in relation to a felony crime of violence **for which he may be prosecuted in a court of the United States** . . . ." [Doc. 19: Superseding Indictment] (charging violation of 18 U.S.C. § 924(c)) (emphasis added). Other than an approximate date ("[o]n or about April 20, 2010") and approximate location ("in Monroe County, in the Eastern District of Tennessee"), the indictment provides no information or circumstances that would establish an effect on interstate commerce or establish federal jurisdiction over the charged crimes.

## II. SECTION 231(a)(2) DOES NOT MEET THE TEST FOR FEDERAL COMMERCE CLAUSE JURISDICTION, AND THEREFORE ALSO CANNOT PROVIDE DERIVATIVE JURISDICTION FOR § 924(c)

Section 231(a)(2) is constitutionally infirm, because it does not meet the Supreme Court's current understanding of what conduct may be regulated under the Commerce Clause. Because the conduct prohibited by § 231(a)(2) cannot be prosecuted in federal court, it cannot provide derivative jurisdiction to support the charge in Count 2.

### A. The rare prosecutions under § 231 have not given courts the opportunity to address the statute's continued constitutional validity.

In the same enactment that Congress passed § 231, it countenanced the existence of state law governing the same prohibited conduct. See 18 U.S.C. § 233 ("Nothing in the chapter shall be construed as indicating an intent on the part of Congress to occupy the field in which any provisions of the chapter operate to the exclusion of State or local laws on the same subject matter . . . ."). Congress based its authority to criminalize certain "civil disorders," including § 231(a)(2), on the Commerce Clause. See United States v. Culbert, 548 F.2d 1355, 1358 n.1 (9th Cir. 1977) rev'd 435 U.S. 371 (1978) ("Congress has enacted a long list of statutes based on the Commerce clause.") (citing 18 U.S.C. § 231). Congress specifically defined "commerce" for purposes of § 231 as follows:

> The term "commerce" means commerce (A) between any State or the District of Columbia and any place outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) wholly within the District of Columbia.

18 U.S.C. § 232(2). The constitutionality of this definition in general and its application to § 231(a)(2) in particular appears never to have been examined.

The federal government has rarely chosen to invoke § 231. According to a Westlaw search, 18 U.S.C. § 231 has been cited in 142 federal cases. Upon closer examination, though, the number of cases in which there was actually a prosecution under § 231 drops to approximately a dozen, and most of those relate to prosecutions in the 1970s under § 231(a)(3) for involvement during the siege at Wounded Knee.[1]

---

[1] The unscientific survey of these cases revealed the following: Cases citing § 231 in the 2000s: 5 (number of cases in which there was a prosecution under § 231: 0); Cases citing § 231 in the 1990s: 7 (number of cases in which there was a prosecution under § 231: 1 unpublished decision in which defendant charged with furnishing instruction in the use of explosive devices in furtherance of civil disorder but not discussing statute, United States v. Bauer, 173 F.3d 862 (9th Cir. 1999)); Cases citing § 231 in the 1980s: 10 (number of cases in which there was a prosecution under § 231: 0); Cases citing § 231 in the 1970s: 33 cases (number of cases in which there was a prosecution under

3

The constitutionality of another subsection of the statute, § 231(a)(3), with respect to the Commerce Clause was challenged in two known cases, but one court upheld the validity of the statute on a separate ground[2] and the other, decided long before Jones v. United States, 529 U.S. 848 (2000), and United States v. Lopez, 514 U.S. 549 (1995), declined to discuss the issue.[3] Moreover, § 231(a)(3) requires more of a commerce nexus than § 231(a)(2) does, because it requires showing that the defendants conduct "affect[ed] commerce." Compare 18 U.S.C. §

---

[2] § 231: United States v. Casper, 541 F.2d 1275 (8th Cir. 1976) (Wounded Knee - § 231(a)(3)); United States v. Dodge, 538 F.2d 770 (8th Cir. 1976) (Wounded Knee - § 231(a)(2)); United States v. McArthur, 419 F.Supp. 186 (D. N.D. 1975) (Wounded Knee - § 231(a)(3)); United States v. Red Feather, 392 F.Supp. 916 (D. S.D. 1975) (Wounded Knee - § 231(a)(3)); United States v. Jaramillo, 510 F.2d 808 (8th Cir. 1975) (Wounded Knee - § 231(a)(3)); United States v. Consolidated Wounded Knee Cases, 389 F.Supp. 235 (D. Neb. 1975); United States v. Banks, 383 F.Supp. 368 (D. S. D. 1974) (Wounded Knee - § 231(a)(3)); United States v. Camil, 497 F.2d 225 (5th Cir. 1974) (referencing other trial under § 231(a)(1)); United States v. Featherston, 491 F.2d 96 (5th Cir. 1974) (§ 231(a)(1)); United States v. Dellinger, 472 F.2d 340 (7th Cir. 1972) (Democratic National Convention – acquitted §231(a)(1) and (a)(3)); United States v. Mechanic, 454 F.2d 849 (8th Cir. 1972) (§ 231(a)(3))); Cases citing § 231 in the 1960s after the Act was passed: 5 cases (number of cases in which there was a prosecution under § 231: 0; Nat'l Mobilization Comm. to End War in Viet Nam v. Foran, 411 F.2d 934, 940 n.6 (7th Cir. 1969) ("Section 231(a)(2) has not been assailed in plaintiffs' brief or oral argument."))).

[2] In United States v. Mechanic, 454 F.2d 849, 851-52 (8th Cir. 1971), the defendant contended that this statute was invalid "because it exceeds Congress' power under the Commerce Clause," but the Eighth Circuit concluded that "[w]e need not determine whether Congress has power to reach the conduct involved in this case under the Commerce Clause, since the statute is also directed at such activity when it affects "the conduct or performance of any federally protected function." The case was tried on the theory that the civil disorder affected a federally protected function, namely the R.O.T.C. program and the buildings housing it. We must determine whether, on this basis, Congress has power to punish the defendants' activities in this case." Id. Based on Congress's constitutional power to raise armies and protect them from destruction, the court upheld the statute against the defendant's challenge. Id.

[3] In United States v. Hoffman, 334 F.Supp. 504 (D. D.C. 1971), the defendant was indicted for (1) interstate travel with intent to organize, promote, encourage and participate in a riot, in violation of 18 U.S.C. § 2101, and (2) obstructing, impeding and interfering with a law enforcement officer during the commission of a civil disorder, in violation of 18 U.S.C. § 231(a)(3). Without discussion, the district court held that neither §§ 2101 nor 231(a)(3) are unconstitutional exercises of the commerce power. Id. at 508.

4

231(a)(2) ("transports . . . in commerce") with 18 U.S.C. § 231(a)(3) ("adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function").[4] See also United States v. Featherston, 461 F.2d 1119, 1123 (5th Cir. 1972) ("The argument that Congress exceeded its power under the Commerce Clause in enacting § 231(a)(1) fails to rise to the level of a substantial constitutional question and is rejected."). Whether § 231(a)(2) would have passed constitutional muster when it was passed does not address whether, in light of the Supreme Court's recent Commerce Clause jurisprudence, it is still comports with the Constitutional limitations on federal legislation.

> B. **The Commerce Clause does not grant Congress unlimited authority to legislate**.

The Commerce Clause does not grant Commerce unlimited authority. Section 231 (and § 924(c) by proxy) finds constitutional justification in the Commerce Clause, U.S. Const. Art. I, § 8, cl. 3, which grants Congress the power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Id. "[T]he grant of authority to Congress under the Commerce Clause, though broad, is not unlimited." Solid Waste Agency of North Cook Co. v. U.S. Army Corps of Engineers, 531 U.S. 159, 173 (2001) (applying Lopez and Morrison interstate commerce clause doctrines to declare a federal regulation unconstitutional as applied). Since Congress does not have unfettered discretion to pass laws, all federal enactments must be "based on one or more of its powers enumerated in the Constitution." United States v.

---

[4] "Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function-- Shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C.A. § 231(a)(3)

5

Morrison, 529 U.S. 598, 608 (2000); Marbury v. Madison, 5 U.S. 137 (1803).  The Commerce Clause affords Congress the opportunity to regulate three categories of activity: (1) that involving the use of channels of interstate commerce, (2) that involving instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities, and finally (3) that substantially affecting interstate commerce.  United States v. Morrison, 529 U.S. 598, 608-09 (2000); United States v. Lopez, 514 U.S. 549, 558-59 (1995).  The federal government does not have general police powers.  Id.

In United States v. Lopez, 514 U.S. 549 (1995), the Supreme Court sustained a challenge to the 1990 Gun-free School Zones Act, holding that Congress lacked the authority under the Commerce Clause to prohibit the mere possession of a firearm in or near a school.  Justice Rehnquist authored the opinion for the majority and noted that the law was "a criminal statute that by its terms ha[d] nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms."  Id. at 561.

> To uphold the Government's contentions here, we would have to pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States. Admittedly, some of our prior cases have taken long steps down that road, giving great deference to congressional action.  The broad language in these opinions has suggested the possibility of additional expansion, but we decline here to proceed any further. To do so would require us to conclude that the Constitution's enumeration of powers does not presuppose something not enumerated, and that there never will be a distinction between what is truly national and what is truly local. This we are unwilling to do.

Lopez, 514 U.S. at 567-568 (internal citations omitted).

In Morrison, the Supreme Court invalidated the Violence Against Women Act ("VAWA"), 42 U.S.C. § 13981, which also lacked a jurisdictional element establishing that the

6

federal statute was in pursuance of Congress' power to regulate interstate commerce, on its face. The Court began its analysis by focusing on Lopez, 514 U.S. 549 (1995), then rejected "'costs of crime' and 'national productivity' arguments because they would permit Congress to 'regulate not only all violent crime, but all activities that might lead to violent crime, regardless of how tenuously they relate to interstate commerce.'" Morrison, 529 U.S. at 612-13 (quoting Lopez, 514 U.S. at 564). "Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity. While we need not adopt a categorical rule against aggregating the effects of any noneconomic activity in order to decide these cases, thus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature." Id. at 613.

Shortly after Morrison, a unanimous Supreme Court vacated a conviction in Jones v. United States, 529 U.S. 848 (2000), under Commerce Clause jurisprudence. The question in Jones was whether, in light of Lopez and the longstanding principle that constitutionally doubtful constructions should be avoided, DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988), the phrase "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce"[5] should be interpreted narrowly to avoid raising Lopez-type concerns. Jones, 529 U.S. 851. Noting that arson is "a paradigmatic common-law state crime," id. at 858, and expressing concern that, were it to adopt the Government's proposed interpretation of § 844(i), "hardly a building in the land would fall

---

[5] "As now worded, § 844(i) (1994 ed., Supp. IV) reads in relevant part: 'Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both . . .'" Jones, 519 U.S. at 853.

7

outside the federal statute's domain," id. at 857, the Court in Jones narrowed the reach of the statutory phrase in § 844(i) in order to avoid "the concerns brought to the fore in Lopez." Id. at 858. The Supreme Court rejected the government's arguments that the building affected commerce due to its status as collateral on a mortgage provided by an out of state lender, being insured by an out of state insurance company, and used natural gas that was imported across state lines. Jones, 529 U.S. at 855. In applying its prior decisions in Lopez and Morrison, the Supreme Court found that for a conviction to be had under the federal arson statute, the building had to be used in "active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." Id.

    C.    **Section 231(a)(2) does not meet one of the three tests for Commerce Clause jurisdiction.**

Here, § 231(a)(2) purports to bring itself within the realm of the Commerce Clause by requiring only that the government prove that a defendant did "transport . . . in commerce any firearm." The accompanying definition of "commerce" further limits what must be shown by confusingly including conduct "between points within any State or the District of Columbia, but through any place outside thereof." Although the indictment does not set forth the facts to support an interstate commerce connection, even assuming that a gun crossed state lines is not enough to bring it under Congress' authority when the regulated conduct has no relationship to economic activity. Cf. Lopez, 514 U.S. at 558 (citing cases supporting three broad categories of activity that Congress may regulate under its commerce power, including United States v. Darby, 312 U.S. 100 (1941),[6] Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241

---

[6] "The motive and purpose of the present regulation are plainly to make effective the Congressional conception of public policy that interstate commerce should not be made the instrument of

8

(1964),[7] and Houston, E. & W.T.R. Co. v .United States, 234 U.S. 342 (1914)[8]). The Supreme Court has examined similar language to that in § 231(a)(2):

> The initial interpretive question focuses upon the words "involving commerce." These words are broader than the often-found words of art "in commerce." They therefore cover more than "'only persons or activities within the flow of interstate commerce.'" United States v. American Building Maintenance Industries, 422 U.S. 271, 276 (1975) (quoting Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 195 (1974)) (defining "in commerce" as related to the "flow" and defining the "flow" to include "the generation of goods and services for interstate markets and their transport and distribution to the consumer"); see also FTC v. Bunte Brothers, Inc., 312 U.S. 349, 351 (1941).

Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 273 (1995). In United States v. American Building Maintenance Industries, 422 U.S. 271 (1975), the Supreme Court pointed out that the phrase "in commerce" does not necessarily have a uniform meaning whenever used by Congress, but that it "appears to denote only persons or activities within the flow of interstate commerce – the practical, economic continuity in the generation of goods and services for interstate markets and their transport and distribution to the consumer." Id. at 277. See also id. at 283-84 ("To be engaged 'in commerce' within the meaning of s 7, a corporation must itself be

---

[7] competition in the distribution of goods produced under substandard labor conditions, which competition is injurious to the commerce and to the states from and to which the commerce flows." Darby, 312 U.S. at 115.

[8] "That Congress was legislating against moral wrongs in many of these areas rendered its enactments no less valid. In framing Title II of this Act Congress was also dealing with what it considered a moral problem. But that fact does not detract from the overwhelming evidence of the disruptive effect that racial discrimination has had on commercial intercourse. It was this burden which empowered Congress to enact appropriate legislation, and, given this basis for the exercise of its power, Congress was not restricted by the fact that the particular obstruction to interstate commerce with which it was dealing was also deemed a moral and social wrong." Heart of Atlanta, 379 U.S. at 256-57 (internal citations omitted).

"It is immaterial, so far as the protecting power of Congress is concerned, that the discrimination arises from intrastate rates as compared with interstate rates. The use of the instrument of interstate commerce in a discriminatory manner so as to inflict injury upon that commerce, or some part thereof, furnishes abundant ground for Federal intervention." Houston, 234 U.S. at 354.

9

directly engaged in the production, distribution, or acquisition of goods or services in interstate commerce. . . . . In short, since the Benton companies did not participate directly in the sale, purchase, of goods or services in interstate commerce, they were not 'engaged in commerce' within the meaning of s 7 of the Clayton Act."). Here, even if the government had alleged or could show that the firearm Mr. Huff is accused of transporting was transported across state lines, such activity would not constitute the practical, economic continuity in the generation of goods and services for interstate markets and their transport and distribution to the consumer.

In Scarborough v. United States, 431 U.S. 563 (1977), the Supreme Court analyzed the statute that makes it a crime for convicted felons to possess "in commerce or affecting commerce" any firearm and held that proof that a firearm previously traveled at some time in interstate commerce was sufficient to satisfy the required nexus between possession and commerce. Although Scarborough remains the law of the Sixth Circuit, its holding is based on stare decisis which in turn was based on analysis of the particular statute rather than a constitutional question, and not the more recent Supreme Court cases interpreting the bounds of the Commerce Clause. See United States v. McBee, 295 F. App'x. 796, 798 (6th Cir. 2008) cert. denied, 129 S. Ct. 1926 (2009) ("Precedents in both the Supreme Court and the Sixth Circuit directly address the constitutionality of the felon-in-possession statute. McBee asserts that the direction of the Supreme Court's Commerce Clause jurisprudence indicates that the Supreme Court would not find the jurisdictional nexus sufficient. However, this court does not engage in speculation; we are bound by what the Supreme Court has said, not what it might say. 'Unless and until the Supreme Court takes the next step, we are bound to follow its current statement of the law on this subject.'"); see also United States v. Patton, 451 F.3d 615, 636 (10th Cir. 2006)

("Like our sister circuits, we see considerable tension between Scarborough and the three-category approach adopted by the Supreme Court in its recent Commerce Clause cases, and like our sister circuits, we conclude that we are bound by Scarborough, which was left intact by Lopez. Even if we were not persuaded that Scarborough remains 'the case which directly controls,' we would still be compelled to follow its reasoning by prior decisions of this Court, which have continued to adhere to Scarborough despite Lopez and the subsequent cases. Any doctrinal inconsistency between Scarborough and the Supreme Court's more recent decisions is not for this Court to remedy.") (internal citations omitted).

None of the three categories of activities that Congress may regulate neatly applies to § 231(a)(2). The central prohibition of § 231(a)(2) relates to civil disorders, not interstate commerce and is therefore like the arson statute addressed in Jones, "a paradigmatic common-law state crime" where the relationship, if any, to commerce is "merely a passive, passing, or past connection." See Jones, 529 U.S. 848. Reversing a conviction under the Hobbs Act, 18 U.S.C. § 1951, the Sixth Circuit relied on United States v. Wang, 222 F.3d 234, 240-41 (6th Cir. 2000), with reasoning that would seem to apply here:

> As the Wang court noted, "[t]he Constitution requires a distinction between what is truly national and what is truly local." Id. at 240. The government's reliance on the fact that a large amount of money was the goal of the conspiracy, without connecting this fact to an effect on interstate commerce, ignores this distinction because this theory's reasoning would "acknowledge a general federal police power with respect to" any conspiracy to rob large sums of money. Id.
>
> The government's other theory with regard to the interstate commerce element points to evidence showing that the defendants purchased items that traveled in interstate commerce in their preparations to rob Talley. This theory casts a wide net that obliterates the distinction between Hobbs Act and common law robbery. It is difficult to fathom how any robber could fail to utilize items that traveled in interstate commerce in preparation for or during the commission of a robbery. For example, unless the robber raised sheep or cotton plants and converted wool or

11

cotton into clothing, or perhaps robbed in the nude, interstate commerce would be affected by the utilization of clothing that had moved in interstate commerce during a robbery. Likewise, under the government's theory, if a robber came to or from the scene of the crime, or surveyed the scene prior to the crime in an automobile, which had been moved at some time through interstate commerce, the crime would be covered under the Hobbs Act. More important than these examples, however, is the fact that this method or theory of proving the interstate commerce element in a Hobbs Act case has not been utilized or affirmed in this or, as far as we can tell, any other circuit.

As the government failed to produce evidence to show that the defendants conspired to target a business engaged in or affecting interstate commerce, a connection between Talley and a business engaged in interstate commerce, and failed to offer evidence explaining how robbing him of a large sum would have affected interstate commerce, no rational trier of fact could have found the interstate commerce element beyond a reasonable doubt. Accordingly, the convictions of Turner and Larkins are reversed.

United States v. Turner, 272 F.3d 380, 389 (6th Cir. 2001) amended sub nom. United States v. James, 280 F.3d 1078 (6th Cir. 2002).

IV. **THE INDICTMENT FAILS TO SUFFICIENTLY ALLEGE THE "IN COMMERCE" ELEMENT OF THE CHARGE AND FAILS TO ALLEGE ANY FACTS THAT WOULD ESTABLISH INTERSTATE COMMERCE, AN ESSENTIAL JURISDICTIONAL ELEMENT**

Even if the statute could be said to satisfy the standards of the Commerce Clause in theory, the government has failed to sufficiently allege the element in this indictment and the government has failed to allege any facts that would establish federal jurisdiction under the Commerce Clause. It is not enough to state that Mr. Huff "did transport in commerce a firearm." [Doc. 19: Superseding Indictment]. Because the government has not alleged facts that would support the jurisdictional element, the constitutional jurisdictional nexus is insufficient, and this count fails as a matter of law.

   A. **Count 1 recites the "in commerce" element, but there is no allegation that Mr. Huff's alleged conduct related to commerce.**

12

Count 1 has a "commerce" element, but proof or allegations to support this element are absent from the Superseding Indictment. Instead, Count 1 conclusorily states that "in the Eastern District of Tennessee and elsewhere" Mr. Huff "did transport in commerce a firearm . . . ." [Doc. 19]. The government has not identified the firearm, has not identified how it was "in commerce" and has not identified any affect on commerce.

> **B.** **The federal jurisdiction for Count 2 is predicated on establishing that the firearm was used or carried during and in relation to a crime of violence "for which the person may be prosecuted in a court of the United States" – which does not apply here.**

In Count 2, the government must also prove an interstate connection to sustain federal jurisdiction over the alleged conduct. Count 2 requires the government prove beyond a reasonable doubt that:

> On or about April 20, 2010, in Monroe County, in the Eastern District of Tennessee, the defendant DARREN WESLEY HUFF, did use and carry a firearm during and in relation to a felony crime of violence **for which he may be prosecuted in a court of the United States**, that is, transportation of a firearm **in commerce** knowing and having reason to know and intending that the same would be used unlawfully in furtherance of a civil disorder, as set forth in Count One of the Superseding Indictment, the descriptions of which are hereby incorporated by reference as though fully set forth herein.

[Doc. 19] (emphasis added); 18 U.S.C. § 924(c)(1)(A).

In the abstract, courts have upheld the constitutionality of § 924(c) against Commerce Clause challenges. See United States v. Ferreira, 275 F.3d 1020 (11th Cir. 2001); United States v. Staples, 85 F.3d 461, 462-63 (9th Cir. 1996); United States v. Owens, 996 F.2d 59, 61 (5th Cir. 1993) ("Section 924(c) applies only to the use or carrying of a firearm during or in relation to a *federal crime.* It is a valid measure designed to deter the violence associated with drug trafficking, an activity validly regulated by Congress under the Commerce Clause."). There is

13

also some authority that interstate nexus is not an element of a § 924(c) violation.  See United States v. Smith, 320 F.3d 647, 655 (6th Cir. 2003) ("Unlike Section 922(g)(1), however, a conviction under 18 U.S.C. § 924(c)(1) does not require proof of an interstate nexus element."), cert. denied, 538 U.S. 1023; Warwick v. United States, 2005 WL 2740869 (E.D. Tenn. Oct. 24, 2005) ("Interstate commerce is not an element of carrying a firearm during a drug trafficking offense . . .").  Even accepting this position, it remains that the § 924(c) charge must be predicated on a crime that Congress has the authority to regulate.

> Section 924(c)(1) provides for a term of imprisonment for "any person who, during and in relation to any crime of violence ... *for which the person may be prosecuted in a court of the United States,* uses or carries a firearm ...." (emphasis supplied). This circuit has held that this language requires that "the defendant have committed a violent crime for which he may be prosecuted in federal court." Smith, 182 F.3d at 457 (emphasis omitted). And in Smith, we cited with approval the holding of the Fifth Circuit in Collins that a § 924(c) conviction cannot stand when the trial court had no jurisdiction over the predicate crime. See Collins, 40 F.3d at 101 ("Section 924(c)(1) requires that the underlying offense be a federal crime and, as the robbery [ ] conviction for violation of section 1951(a) is now voided, the conviction for unlawful use of a firearm during that robbery also must be reversed."). Because Wang's robbery did not have even a de minimis effect on interstate commerce, the crime could not properly have been prosecuted in federal court. Accordingly, Wang's § 924(c) conviction must also be reversed.

United States v. Wang, 222 F.3d 234, 240-41 (6th Cir. 2000).   Here, Count 2 fails because the conduct charged in Count 1 is insufficient to support federal jurisdiction.

## C. CONCLUSION

Elements, including jurisdictional elements like proof of inter-state commerce, must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt.  See United States v. Resendiz-Ponce, 549 U.S. 102, 107 (2007) ("[A]n indictment must set forth each element of the crime that it charges."); see also Hamling v. United

14

Case 3:10-cr-00073-TAV-HBG   Document 29   Filed 08/13/10   Page 14 of 15
PageID #: 80

States, 418 U.S. 87 (1974). The prosecution in this case is required to prove that when Mr. Huff "transport[ed] . . . a firearm", he substantially affected interstate commerce. The government has not alleged facts which would support federal jurisdiction for either count. Even if it had, the conduct prohibited by § 231(a)(2) does not rise to the level of conduct over which federal courts have jurisdiction. WHEREFORE, Mr. Huff moves this Court to enter an Order dismissing Counts 1 and 2 of the Superseding Indictment.

Respectfully submitted this the 13th day of August, 2010.

                              FEDERAL DEFENDER SERVICES OF
                              EASTERN TENNESSEE, INC.

By:   s/ Jonathan A. Moffatt
       Paula Voss
       Jonathan A. Moffatt
       Asst. Federal Community Defender
       800 S. Gay Street, Suite 2400
       Knoxville, TN 37902
       (865) 637-7979
       BOPR No. 18137

       s/ Anne E. Passino
       Anne E. Passino [BPR No. 027456]
       Ritchie, Dillard & Davies, P.C.
       606 W. Main St., Suite 300
       Knoxville, TN 37901-1126
       (865) 637-0661

**COUNSEL FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2010, a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

                              s/Jonathan A. Moffatt
                              Jonathan A. Moffatt