IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|     Plaintiff, | ) | |
| v. | ) | Case No. 3:10-CR-73 |
| | ) | VARLAN/GUYTON |
| DARREN WESLEY HUFF | ) | |
|     Defendant. | ) | |

**MOTION TO DISMISS COUNT TWO
BECAUSE ITS PREDICATE CRIME IS NOT A "CRIME OF VIOLENCE"
AND MEMORANDUM IN SUPPORT**

Comes the defendant, DARREN WESLEY HUFF, by and through counsel, pursuant to the Fifth, Sixth, and Eighth Amendments to the U.S. Constitution, Rules 12 and 34 of the Federal Rules of Criminal Procedure, Begay v. United States, 128 S.Ct. 1581 (2008), Johnson v. United States, 130 S.Ct. 1265 (2010), and all other authorities cited herein, and respectfully moves this Court for an order dismissing or arresting judgment on Count 2 of the Superseding Indictment because the government has charged Mr. Huff with using and carrying a firearm during and in relation to a "crime of violence" but the government has not alleged a qualifying predicate crime of violence. In support of this motion, Mr. Huff would show as follows:

(1) Mr. Huff is charged in a two-count indictment.

(2) Count 2 charges Mr. Huff with using or carrying a firearm during or in relation to a "crime of violence."

(3) The crime of violence alleged is 18 U.S.C. § 231(a)(2) which makes it a crime for a person to "transport[] . . . in commerce any firearm . . . knowing or having reason to know or intending that the same will be used unlawfully in furtherance of a civil disorder."

1

(4) However, § 231(a)(2) does not meet the definition for a crime of violence because violent force is not one of its elements and no substantial risk of physical force arises during its commission.

(5) Count 2 must be dismissed because it lacks a qualifying predicate crime of violence.

In further support, Mr. Huff relies on the accompanying memorandum of law.

## MEMORANDUM OF LAW

### I. INTRODUCTION

On May 25, 2010, Mr. Huff was charged in a one-count indictment with violating 18 U.S.C. § 231(a)(2) which makes it a crime for a person to "transport[] . . . in commerce any firearm . . . knowing or having reason to know or intending that the same will be used unlawfully in furtherance of a civil disorder." See [Doc. 11: Indictment]. On July 7, 2010, the government superseded the original indictment, adding an allegation that Mr. Huff also violated 18 U.S.C. § 924(c)(1)(A) when he violated § 231(a)(2). Section 924(c) provides for a mandatory minimum punishment served consecutive to any other conviction.[1] Count 2 of the superseding indictment charges that:

> On or about April 20, 2010, in Monroe County, in the Eastern District of Tennessee, the defendant DARREN WESLEY HUFF, **did use and carry a firearm during and in relation to a felony crime of violence** for which he may be prosecuted in a court of the United States, that is, transportation of a firearm in commerce knowing and having reason to know and intending that the same would be used unlawfully in furtherance of a civil disorder, as set forth in Count One of

---

[1] In order to preserve the issue for appeal, Mr. Huff asserts that mandatory minimum sentences violate the constitutional right to equal protection under the Fourteenth Amendment and are cruel and unusual under the Eighth Amendment.

2

the Superseding Indictment, the descriptions of which are hereby incorporated by reference is though fully set forth herein.

[Doc. 19: Superseding Indictment] (emphasis added). The viability of Count 2 therefore depends on whether Count 1 constitutes a "crime of violence." As shown below, because Count 1 is not a crime of violence, Count 2 must be dismissed.

## II. SECTION 231(a)(2) IS NOT A QUALIFYING "CRIME OF VIOLENCE" AND COUNT TWO MUST BE DISMISSED

Count 2 must be dismissed because the government has not alleged a qualifying "crime of violence" necessary to establish the elements of – or culpability for – a violation of § 924(c)(1)(A). Section 924(c)(1)(A) provides in relevant part as follows:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm . . . shall, in addition to the punishment provided for such crime of violence or drug trafficking crime – be sentenced to a term of imprisonment of not less than 5 years . . . .

Id. The "crime of violence" charged in Count 2 is the alleged violation of 18 U.S.C. § 231(a)(2) separately charged in Count 1. In order for § 231(a)(2) to qualify as a "crime of violence," it must be a felony that:

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another; or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). To qualify as a crime of violence within the meaning of the firearm statute, the statute must proscribe conduct that (1) naturally involves a disregard of a substantial risk of force against another, and (2) where such risk of force arises during the course of

3

committing the offense – a violent, active offense. United States v. Serafin, 562 F.3d 1105, 1110 (10th Cir. 2009). The offense charged in Count 1, a rarely invoked statute passed as part of the "Civil Obedience Act of 1968,"[2] meets neither the test in Part A (hereinafter the "element" test) nor the test in Part B (hereinafter the "nature" test), meaning that it cannot be used as a predicate "crime of violence" for purposes of § 924(c)(1)(A).

> **A. The Supreme Court's analytical framework for determining whether a prior conviction constitutes a "crime of violence" under the Sentencing Guidelines or a "violent felony" under the Armed Career Criminal Act is relevant to show that § 231(a)(2) does not qualify as a crime of violence for purposes of § 924(c)(1)(A).**

Whereas § 924(c) uses the term "crime of violence," other provisions within the U.S. Code and the U.S. Sentencing Guidelines use the terms "crime of violence or "violent felony." See 18 U.S.C. § 16 ("crime of violence), 18 U.S.C. § 924(e)(2)(B) ("violent felony"); U.S.S.G. § 4B1.2 ("crime of violence"). The way, though, that the related terms under U.S.S.G. § 4B1.2 and 18 U.S.C. section 924(e)(2)(B) have been interpreted by the Supreme Court supports the conclusion that § 231(a)(2) does not qualify as a "crime of violence."

In close proximity to the term "crime of violence" at issue before this Court in § 924(c), another subsection of § 924 uses the term "violent felony" to determine whether a defendant is

---

[2] Cf. Michael Janofsky, *For Ex-Student Protester, a Pardon Without the Spotlight*, NY Times (Feb. 24, 2001) available at http://www.nytimes.com/2001/02/24/us/public-lives-for-ex-student-protester-a-pardon-without-the-spotlight.html (last visited Aug. 8, 2010) ("As a 22-year-old senior at Washington University in St. Louis, Mr. Mechanic was arrested on charges that he threw a cherry bomb at firefighters on May 4, 1970, in a demonstration against the war and the shootings earlier that day at Kent State University, where four students were killed by National Guardsmen. He became the first person to be tried under a new law, the 1968 Civil Disobedience Act, that was directed, in effect, at young people who were protesting on college campuses."). On January 20, 2001, President Clinton pardoned Howard Mechanic for violating the Civil Obedience Act. See http://www.justice.gov/pardon/clintonpardon_grants.htm (last visited Aug. 9, 2010).

4

subject to a mandatory minimum sentence as an armed career criminal. Section 924(e) defines "violent felony" as follows:

> [A]ny crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that –
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). Analysis of the term "violent felony" is quite relevant to the term "crime of violence" because any differences between the terms are non-substantive.

First, differences in terminology have not prevented courts from applying the principals of Begay v. United States, 553 U.S. 137 (2008), in other contexts. For example, the U.S. Sentencing Guidelines use the term "crime of violence" in U.S.S.G. § 4B1.2 to determine whether a defendant is a career offender and therefore subject to enhanced punishment, and every circuit to have reached the issue has applied the Supreme Court's reasoning in Begay for determining whether a crime is a "violent felony" to determine whether a defendant's prior conviction was a "crime of violence" under the guidelines. See United States v. Bartee, 529 F.3d 357, 363 (6th Cir. 2008) ("Adhering to our view that the parallel provisions in the definitions of a 'violent felony' under the ACCA and a 'crime of violence' under USSG § 4B1.2(a)(2) should be interpreted in a consistent manner, we conclude that § 4B1.2(a)(2) also should be limited to crimes that are similar in both kind and in degree of risk").

Second, § 924(c) and § 924(e) both encompass offenses committed against persons and

5

property.  Compare 18 U.S.C. § 924(c)(3) (force used against the "person or property of another") with 18 U.S.C. § 924(e)(2)(B) (force used against "the person of another" and "injury to another") and Begay v. United States, 553 U.S. 137, 143-44 (2008) (citing H.R.Rep. No. 99-849, p. 3 (1986)) ("Congress sought to expand [the] definition [of violent felony] to include both crimes against the person (clause (i)) and certain physically risky crimes against property (clause (ii))."). Therefore, the Supreme Court's analysis of violent felonies under § 924(e) applies with full force to analyzing whether § 231(a)(2) is a crime of violence under § 924(c).

**B. Section 231(a)(2) does not meet the "element" test for the definition of a "crime of violence."**

Violent force is not an element of § 231(a)(2), which is required if a crime is to meet the "element" test for determining crimes of violence. Therefore, the crime alleged in Count 1 (18 U.S.C. § 231(a)(2)) is not a predicate crime of violence for purposes of Count 2, because it does not meet the "element" test in § 924(c)(3)(a), as interpreted by the Supreme Court with respect to § 924(e)(2)(B)(2).[3] The "element" test is as follows:

> [T]he term 'crime of violence' means an offense that is a felony and – has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

18 U.S.C. § 924(c)(3)(A).

In Johnson v. United States, 130 S.Ct 1265 (2010), the defendant argued that his state conviction for battery did not constitute a prior violent felony, requiring the Supreme Court to analyze the "element" clause of the ACCA, for the first time. Because there was nothing in the

---

[3] "[T]he term 'violent felony' means any crime . . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

6

record to establish which of the ways the defendant had committed the crime of battery, the Supreme Court analyzed whether the least serious of the ways in which the offense could be committed met the definition under § 924(e)(2)(i). See id. at 1269. Before the Court could answer this question, though, it had to determine the meaning of "force" as used in the statute and concluded that "[w]e think it clear that in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force-that is, force capable of causing physical pain or injury to another person." Id. at 1271.

Because the two "element" tests are the same, the reasoning in Johnson applies to this Court's analysis. Compare 18 U.S.C. § 924(e)(2)(B)(i) ("has as an element the use, attempted use, or threatened use of physical force against the person of another") with 18 U.S.C. § 924(c)(3) ("has as an element the use, attempted use, or threatened use of physical force against the person or property of another"). Section 231(a)(2) can only be a qualifying predicate crime if the government must prove beyond a reasonable doubt that Mr. Huff used, attempted to use, or threatened to use "violent force . . . capable of causing physical pain or injury to another" as an element of the crime.

Where the government contends that the statute can be violated where no civil disorder even occurs, there cannot be a threatened use of physical, or violent, force required as an element under the statute. Further, in Leocal, the Court found that the ordinary meaning of the term "crime of violence" coupled with 18 U.S.C. § 16's emphasis on the use of physical force suggest a category of violent, active crimes. Leocal, 543 U.S. at 11.

      a.    <u>Section 231 fails the "element" test because use, attempted use, or threatened use of physical force are not elements charged in the indictment</u>

7

Case 3:10-cr-00073-TAV-HBG   Document 30   Filed 08/13/10   Page 7 of 19   PageID #: 88

Section 231(a)(2) fails the "element" test because the use, attempted use, or threatened use of violent physical force is not one of its elements. One consequence of the fact that § 231(a)(2) has apparently never been prosecuted is an absence of authority on this offense's elements. Without any pattern jury instructions for guidance, it is respectfully suggested that the elements of § 231(a)(2), as the crime was charged in this case, are as follows:[4]

> First: That the defendant transported a firearm;
>
> Second: That the firearm was in commerce; and
>
> Third: That the defendant knew, had reason to know, or intended that the firearm would be used unlawfully in furtherance of a civil disorder.

See 18 U.S.C. § 231. This is therefore an "intent" crime as it relates to the term "civil disorder," because the act that appears to constitute the crime's actus reus is the mere transportation of a firearm. Cf. United States v. Navarro, 476 F.3d 188, 195 n. 10 (3d Cir.2007) ("[T]he offense of burglary was completed when the defendant entered the building with the intent to commit a felony (whether or not he actually committed that felony)...."); United States v. Sutcliffe, 505 F.3d 944, 960 (9th Cir. 2007) ("[A] conviction under § 1028(a)(7) is based on the defendant's unlawful action of transferring or using another individual's means of identification with the intent to commit or to aid or abet other unlawful activity. Thus, the defendant's action in itself constitutes the crime for which he is convicted-a 'separate and distinct offense' from the crime that he intends to commit or to aid or abet. We therefore hold that the government must only prove that the defendant committed the unlawful act with the requisite criminal intent, not that

---

[4] This proffered instruction in no way waives or limits Mr. Huff's argument about the insufficiency of the charging instrument or the constitutionality of the statute. Further, Mr. Huff reserves the right to propose or amend any jury instruction in this case, should that be necessary.

8

the defendant's crime actually caused another crime to be committed.") (internal citation omitted). The government claims that Mr. Huff violated § 231(a)(2) with "know[ledge] or having reason to know or intending" that a firearm would be "used unlawfully" in a civil disorder which did not occur. Under the Government's reading of the statute, therefore, there is not only a realistic probability but an example that the statute covers conduct that does not present a serious potential risk of physical injury.

> b. Section 231(a)(2) fails the "element" test because there is no temporal overlap between its commission and the risk of force.

In <u>Chambers v. United States</u>, 129 S.Ct. 687 (2008), the Supreme Court implied a temporal link between the potential risk of violence and commission of the predicate crime. See <u>id.</u> at 692 ("While an offender who fails to report must of course be doing something at the relevant time, there is no reason to believe that the something poses a serious potential risk of physical injury. <u>Cf.</u> <u>James</u>, 550 U.S., at 203-204. To the contrary, an individual who fails to report would seem unlikely, not likely, to call attention to his whereabouts by simultaneously engaging in additional violent and unlawful conduct.").

> **C. Section 231(a)(2) does not meet the "nature" test because it is categorically different than those crimes involving serious risk of physical injury.**

In the course of committing § 231(a)(2), there is no substantial risk of physical force, so it cannot be a crime of violence. The "nature" test under § 924(c)(3)(B) is analogous to the test § 924(e)(3)(B)(ii), though § 924(c) is arguably more restrictive:[5]

> "[T]he term 'crime of violence' means an offense that is a felony and – that by its nature, involves a substantial risk that physical force against the person or

---

[5] In <u>Leocal v. Ashcroft</u>, 543 U.S. 1 (2004), the Supreme Court held that the definition of a crime of violence under 18 U.S.C. § 16(b) which is the same as § 924(c)(3)(B) is narrower than the definition included in the Sentencing Guidelines, U.S.S.G. § 4B1.2.

9

> property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B).
>
> "[T]he term 'violent felony' means any crime . . . . that is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(3)(B)(ii).

The offense alleged in Count 1 is categorically different than any of the enumerated violent felonies in § 924(e) with their attendant risk of physical harms.

In <u>James v. United States</u>, 550 U.S. 192 (2007), the Supreme Court analyzed whether attempted burglary as defined under Florida state law fit the "otherwise" clause in § 924(e)(2)(B)(ii) and included that it did because "[T]he proper inquiry [under the categorical approach] is whether the conduct **encompassed by the elements of the offense**, in the ordinary case, presents a serious potential risk of injury to another." <u>Id.</u> at 208 (emphasis added). If a statute's elements permit a conviction for conduct that does not present a serious potential risk of injury to another, then it does not qualify as a predicate offense, even if the statute typically invokes the statute to punish conduct that would qualify "in the ordinary case." <u>See id.</u> at 205 n.4 (listing cases finding that certain attempted burglary statutes did not qualify under ACCA because they could be based on such conduct as making a duplicate key, casing a building, obtaining floor plans, and possessing burglary tools). Although the Supreme Court stated that for an offense not to qualify as a predicate, there must be a "realistic probability, not a theoretical possibility," that the statute covers conduct that does not present a serious potential risk of physical injury, id. at 208, a defendant may show the breadth of the statute by "pointing to his own case or other cases in which the state courts did in fact apply the statute" in such a manner. <u>Gonzales v. Duenas-Alvarez</u>, 549 U.S. 183, 193 (2007) (cited in <u>James</u>, 127 S. Ct. at 208).

10

The only conceivable manner in which the government can claim that Mr. Huff violated Title 18 Section 231(a)(2) is to claim that Mr. Huff violated the statute with "know[ledge] or having reason to know or intending" that a firearm would be "used unlawfully" in a civil disorder which did not occur. This case alone makes it clear that, under the government's own reading of the statute, at the very least, there is a realistic probability that the statute covers conduct that does not present a serious potential risk of physical injury. Indeed, if the statute does not necessarily cover conduct that does not present a serious potential risk of physical injury, the government's case in its entirety must fall.

In Begay v. United States, 128 S.Ct. 1581 (2008), the Supreme Court further articulated the appropriate test for analyzing convictions and concluded that an offense is a "violent crime" if it involved conduct that presented a serious potential risk of physical injury to another involving the same type of "purposeful, violent, and aggressive" conduct as burglary, arson, extortion, or the use of explosives. See Begay, 530 U.S. at 144-45. See also id. ("In determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion . . . . [We] read the examples as limiting the crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves. . . ."). Under this test, the Court held that driving under the influence of alcohol was not a violent felony. 128 S.Ct. at 1583. The Court acknowledged that the crime of driving under the influence included potential serious risks. Id. at 1588.

Chambers v. United States, 129 S.Ct. 687 (2009), is another important recent decision

11

Case 3:10-cr-00073-TAV-HBG   Document 30   Filed 08/13/10   Page 11 of 19
PageID #: 92

which deals with the "residual clause" under the Armed Career Criminal Act which is less restrictive than 18 U.S.C. section 16(b). In Chambers, the government attempted to persuade the courts that a "failure to report" for penal confinement was a "violent felony" under the act. Id. at 690. The Supreme Court reviewed statistical evidence which showed "only a small risk of physical violence." Id. at 693. As the"Government provide[d] no other empirical information", and the government did not meet the burden of proof, "failure to report" crimes were found not to be violent crimes.

In United States v. Diaz-Diaz, 327 F.3d 410 (5th Cir. 2003), cert. denied, 540 U.S. 889 (2003), the Fifth Circuit held that to qualify as a crime of violence, an offense "must present the substantial likelihood that the offender would intentionally employ force against the person or property of another in order to *effectuate the commission of the offense.*" Id. at 413. Under the government's theory, since there was never a civil disorder, the crime was completed when the defendant formed the requisite intent. Effectuating the transporting a firearm with a particular intent does not present a substantial likelihood of force used against person or property.

          a.       Section 231 fails the "nature" test because possession of a firearm, with or without intent that it be used unlawfully, is not itself a violent act.

Section 231(a)(2) fails the "nature" test because it does not proscribe conduct that (1) naturally involves a disregard of a substantial risk of force against another, and (2) where such risk of force arises during the course of committing the offense – a violent, active offense. See United States v. Serafin, 562 F.3d 1105 (10th Cir. 2009).

Proof that one knows or intends that a firearm will be used in furtherance of a civil disorder is not itself a violent act. In United States v. Whitson, 597 F.3d 1218 (11th Cir. 2010),

12

the Eleventh Circuit held that conspiracy to commit a crime of violence ("strong arm robbery") was not itself a crime of violence under the career offender sentencing guidelines. While the state conspiracy statute did not require an overt act, it did define the offense as "a combination . . . for the purpose of accomplishing an unlawful object or lawful object by unlawful means." Id. at 1221. See also id. at 1222 ("Conspiring to commit a crime is a purposeful act. The statute itself requires that the conspirators intend that the target offense be committed."). "To see how the simple act of agreeing is either 'violent' or aggressive' is difficult. No violence or aggression is associated with forming an agreement. "It may be true that a conspiracy and its target offense are linked, but as we understand it, the Begay analysis requires us to separate them and to examine the conspiracy alone. Only if that examination reveals violence and aggression in the typical case is the offense a "crime of violence.""" Id.

        b.      <u>Section 231(a)(2) fails the "nature" test because the risk of force must arise in the course of committing the offense, not merely as a possible result.</u>

The definition of "crime of violence" in 18 U.S.C. § 16(b) is practically identical to that in 18 U.S.C. § 924(c)(3)(B). Compare 18 U.S.C. § 16(b) ("any other offense that is a felony and that, but its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense") with 18 U.S.C. § 924(c)(3)(B) ("an offense that is a felony . . . [that] by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"). In Leocal v. Ashcroft, 543 U.S. 1 (2004), the Supreme Court held that for an offense to qualify as a crime of violence under § 16(b), the "substantial risk" relates to the "use of force, not to the possible effect of a person's conduct." Id. In other words, the risk of force must arise in the

13

course of *committing* the crime and not merely as a *possible result.*

In Van Don Nguyen v. Holder, the Sixth Circuit applied the rule of lenity to hold that the theft of an automobile under the California grand theft statute is not a "crime of violence" under 18 U.S.C. § 16(b).[6] 571 F.3d at 525. Looking at the elements of California's statute and the language of § 16(b), the issue was "whether 'taking' an automobile 'by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing [the theft].'" Id. at 528. The Sixth Circuit based its holding in part on Supreme Court's emphasis in Leocal v. Ashcroft, 543 U.S. 1 (2004), that the "reckless disregard in § 16(b) "relates not to the general conduct or the possibility that harm will result from a person's conduct but to the risk that the use of physical force against another might be required in committing the crime." Id. "The "ordinary meaning" of the term "crime of violence" and the legislative history of Section 16(b) suggest a category of violent, active crimes." Id. at 530 (citing Leocal, 543 U.S. at 11).

In United States v. Archer, 531 F.3d 1347 (11th Cir. 2008) the Eleventh Circuit reversed itself post-Begay to hold that carrying a concealed weapon is not a crime of violence because it "does not involve the aggressive, violent conduct that the Supreme Court noted is inherent in the enumerated crimes:"

> Burglary of a dwelling, arson, extortion, and the use of explosives are all aggressive, violent acts aimed at other persons or property where persons might be located and thereby injured. Carrying a concealed weapon, however, is a passive crime centering around possession, rather than around any overt action.

Archer, 531 F.3d at 1351.

---

[6] A violation of § 16 constitutes an "aggravated felony" and is a deportable crime under the Immigration and Nationality Act. See 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(F).

14

In United States v. Haste, No. 07-4266, 2008 WL 4218771 (4th Cir. Sept. 9, 2008), on remand from the Supreme Court in light of Begay, the Fourth Circuit reversed itself to find that felonious possession of a weapon of mass destruction (a sawed-off shotgun) is not a violent felony.

In United States v. Polk, 577 F.3d 515 (3d Cir. 2009), the Third Circuit held that possessing a prohibited object designed to be used as a weapon while in federal prison in violation of 18 U.S.C. § 1791(a)(2) does not constitute a crime of violence because it is not similar in kind to the "overt, active conduct" required by the enumerated offenses:

> Post-Begay, the distinction between active and passive crimes is vital when evaluating offenses under the Career Offender Guidelines to determine if they entail "purposeful, violent and aggressive conduct." While possessing a weapon in prison is purposeful, in that we may assume one who possesses a shank intends that possession, it cannot properly be characterized as conduct that is itself aggressive or violent, as only the potential exists for aggressive or violent conduct. Much like carrying a concealed weapon, the offense is a "passive crime centering around *possession* rather than around any overt action."

Polk, 577 F.3d at 519 (citing Archer, 531 F.3d at 1351) (emphasis in original). In so holding, the court rejected the government's argument that the prison setting automatically rendered the crime violent: "We do not dispute the inherent dangers of possessing a shank in prison, but this alone cannot transform a mere possession offense into one that is similar to the crimes listed." Id. For the foregoing reasons, if the government is not required to show an effect or civil disorder caused by the transportation of the firearm, then § 231 is the functional equivalent of crimes prohibiting the possession of weapons that are not crimes of violence.

C. **The Rule of Lenity**

If any doubt remains about whether § 231(a)(2) is a crime of violence, the rule of lenity alleviates it. See United States v. Ford, 560 F.3d 420, 425 (6th Cir. 2009). The indictment

15

charges Mr. Huff with transporting a firearm with intent to use it in a civil disorder. The conduct forming the basis for the charge is the transportation of the firearm. No violence would occur "in the course of committing" the transportation as required under § 924(c). There is mere speculation that physical force will occur, and no physical force or violence, indeed, no civil disorder occurred. The statute does not, therefore, qualify as a crime of violence, particularly in the manner in which the government attempts to apply the statute.

When the Sixth Circuit recently held that the theft of an automobile under the California grand theft statute is not a "crime of violence" under 18 U.S.C. § 16(b),[7] it based its holding on the Rule of Lenity:

> The most succinct reason for our conclusion is that the statute in question regarding the "crime of violence," as well as the California auto theft statute, is ambiguous and our decision must take into account the "rule of lenity." Under the ancient rule of lenity, any doubt about this conclusion must be resolved in favor of the defendant, or in this case, the petitioner who is subject to deportation pursuant to an ambiguous criminal statute. See United States v. Santos, --- U.S. ----, 128 S.Ct. 2020, 2025, 170 L.Ed.2d 912 (2008)(plurality); United States v. Bass, 404 U.S. 336, 347-49, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); United States v. Ford, 560 F.3d 420, 425 (6th Cir.2009) (applying the "rule of lenity" to a previous conviction for a "walkaway" escape because it is not unambiguously a "crime of violence" and therefore cannot serve as the basis for career offender status). Justice Scalia recently explained in Santos that the rule of lenity prevents courts from having to "read the mind" of Congress and is a "venerable" requirement that the federal courts have applied for two centuries when interpreting ambiguous criminal statutes. When a criminal statute is ambiguous as to its intent, the "tie" goes to the defendant. Because we cannot find that auto theft is "unambiguously" a crime of violence under Section 16(b), we should follow the ancient rule and overrule the administrative agency in this case.

Van Don Nguyen v. Holder, 571 F.3d 524, 525-26 (6th Cir. 2009).

**D**. **Section 231(a)(2) is not a crime of violence because it applies to conduct that**

---

[7] A violation of § 16 constitutes an "aggravated felony" and is a deportable crime under the Immigration and Nationality Act. See 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(F).

16

**is less than purposeful or intentional.**

In United States v. McFalls, a career offender case, the Sixth Circuit held that South Carolina's common law crime of assault and battery of a high and aggravated nature was "not categorically a crime of violence," because the crime applies to both reckless and intentional conduct 592 F.3d 707, 716 (6th Cir. 2010). See id. ("We have squarely held that under the Guidelines definition of "crime of violence" contained in U.S.S.G. § 2L1.2(b)(1)(E) cmt. 1(B)(iii), which is materially indistinguishable from the definition that we apply today (U.S.S.G. § 4B1.2(a) & cmt. 1), "a crime requiring only recklessness does not qualify." Other circuits have reached the same conclusion under the indistinguishable words of the Armed Career Criminal Act.") (internal citations omitted).

In United States v. Baker, 559 F.3d 443 (6th Cir. 2009), the Sixth Circuit held that a Tennessee conviction for reckless endangerment was not a crime of violence under the sentencing guideline for career offender status. The statute is violated by one "who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury" and becomes a felony when committed with a deadly weapon. Id. at 452 (citing Tenn. Code Ann. § 39-13-103). See also id. ("Although it is hardly debatable that the elements of felony reckless endangerment in Tennessee "present[] a serious potential risk of physical injury to another," § 4B1.2(a)(2), the offense does not clearly involve the type of "purposeful, violent, and aggressive" conduct as burglary, arson, extortion, or the use of explosives, Begay, 128 S.Ct. at 1586. Rather, on its face the statute criminalizes only reckless conduct."). Because one of the ways § 231 can be violated is by merely "having reason to know," something less than purposefulness or intent, it cannot be a crime of violence.

17

### III.   CONCLUSION

A violation of 18 U.S.C. § 231(a)(2) as charged does not proscribe conduct where the risk of force arises during the course of committing the offense. United States v. Serafin, supra, at 1110. Count 1 is not a crime of violence because the mere act of transporting a firearm in commerce is too far removed from the use or threatened use of violent physical force, and no substantial risk of physical force arises from the transportation of a firearm in commerce. The fact that Count 1 is predicated on a non-existent civil disorder underscores why and how Count 1 fails both the "element" and "nature" tests for crimes of violence. WHEREFORE, for the foregoing reasons, Mr. Huff respectfully requests that this Court dismiss Count 2 from the superseding indictment.

Respectfully submitted this the 13th day of August, 2010.

          FEDERAL DEFENDER SERVICES OF
          EASTERN TENNESSEE, INC.

By:    s/ Jonathan A. Moffatt
        Paula Voss
        Jonathan A. Moffatt
        Asst. Federal Community Defenders
        800 S. Gay Street, Suite 2400
        Knoxville, TN 37902
        (865) 637-7979
        BOPR No. 18137

        s/ Anne E. Passino
        Anne E. Passino [BPR No. 027456]
        Ritchie, Dillard & Davies, P.C.
        606 W. Main St., Suite 300
        Knoxville, TN 37901-1126
        (865) 637-0661

        **COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

       I hereby certify that on August 13, 2010, a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

                                                s/Jonathan A. Moffatt
                                                Jonathan A. Moffatt