IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:10-CR-73 |
| | ) | (VARLAN/GUYTON) |
| DARREN WESLEY HUFF, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C.§ 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on Defendant Huff's Motion to Dismiss Indictment Because Statute Upon Which Charges Are Based is Unconstitutionally Overbroad and Vague [Doc. 33], filed on August 13, 2010. The parties appeared for a hearing on pending motions on October 12, 2010. Assistant United States Attorney A. William Mackie appeared on behalf of the Government. Attorneys Jonathan A. Moffatt, Paula R. Voss, and Anne E. Passino represented the Defendant, who was not present. After hearing the arguments of the parties, the Court took the motion under advisement.

**I. POSITIONS OF THE PARTIES**

The Defendant is charged in a two-count Superseding Indictment [Doc. 19], with transporting a firearm in interstate commerce, knowing and intending that it would be used unlawfully in

1

furtherance of a civil disorder (Count One) in violation of 18 U.S.C. § 231(a)(2) and carrying a firearm in relation to the crime of violence alleged in Count One (Count Two) in violation of 18 U.S.C. § 924(c)(1)(A). The Defendant argues [Doc. 33] that section 231(a)(2) is overly broad and void for vagueness. He maintains that the statute is overly broad because it criminalizes constitutionally protected speech and conduct, such as the freedom of speech, the right to associate, and the right to possess firearms. He asserts that the statute is vague because it permits arbitrary enforcement and contains vague terms, which do not provide sufficient notice of the conduct that the statute seeks to punish. The Government responds [Doc. 46] that section 231(a) is constitutionally sound in both scope and present application.

## II. ANALYSIS

The Defendant is charged with violating 18 U.S.C. § 231(a)(2), which provides that

> [w]hoever transports or manufactures for transportation in commerce any firearm, or explosive or incendiary device, knowing or having reason to know or intending that the same will be used unlawfully in furtherance of a civil disorder . . . [s]hall be fined under this title or imprisoned not more than five years, or both.

The statute defines "a civil disorder" as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1). The Defendant challenges section 231(a)(2) as being both overly broad, because it criminalizes constitutionally protected activities, and void for vagueness, because a person of common intelligence would not understand what conduct is prohibited. The Court examines each of these contentions in turn and

concludes that section 231(a)(2) is neither overly broad or unconstitutionally vague.

### A. Overbreadth

An otherwise constitutional statute "may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." Grayned v. City of Rockford, 408 U.S. 104, 114 (1972). "The crucial question" in such a case "is whether the [statute] sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments." Id. at 114-15. As a general matter, laws may not restrict speech simply because of its content or assemblies simply due to distaste for the common cause of those meeting, but "reasonable 'time, place, and manner' regulations" are permissible "to further significant governmental interests[.]" Id. at 115.

In the present case, the Defendant argues that section 231(a)(2) is overbroad because it can be used to punish individuals for engaging in constitutionally protected activities, such as speech, assembly, and the carrying of firearms, while possessing a certain intent, regardless of whether any harm was threatened or effected. In essence, he argues that section 231(a)(2) seeks to punish an individual's thoughts, rather than his or her conduct. The Government responds that the statute does not target speech on its face but, instead, seeks to regulate public disturbances involving acts of violence, which do not constitute constitutionally protected activity. Moreover, it asserts that the statute's *mens rea* element limits its application to persons who have acted in bad faith. The Defendant replies that in the instant case, there is no allegation that a public disturbance occurred; thus, he is being prosecuted under section 231(a)(2) for engaging in protected speech and association while possessing a certain intent.

As noted by the Government, the Court of Appeals for the Fifth Circuit has analyzed the constitutionality of a different subsection of 231(a) in United States v. Mechanic, 454 F.2d 849 (1971) (analyzing section 231(a)(3), which prohibits the obstruction of a fireman or law enforcement officer engaged in official duties in relation to a civil disorder), cert. denied, 406 U.S. 929 (1972). In Mechanic, the defendants argued that the statute prohibits constitutionally protected speech. Id. at 852. The appellate court disagreed, concluding that the statue "has no application to speech, but applies only to violent physical acts." Id. The court reasoned that the

> crime set forth by the statute is not mere presence at a civil disorder, as the defendants assume, but an act committed during the course of such a disorder. The term "civil disorder" simply describes the environment in which the act must be committed in order to be subject to prosecution under § 231(a) (3).

Id.

Similarly, section 231(a)(2) also does not prohibit speech or assemblies of persons seeking to engage in speech or even the possession and carrying of firearms, in and of itself. Instead, the thrust of the statute is to prohibit the bringing of a gun or bomb or incendiary device to further a public disturbance involving acts of violence by a group of three or more people. 18 U.S.C. § 231(a)(2). The statute addresses the escalation of danger caused by bringing a weapon into a situation involving acts of violence by a person who intends or knows or has reason to know that the weapon will be used to promote those violent acts. Although "peaceful demonstrations in public places are protected by the First Amendment[,]" . . . where demonstrations turn violent, they lose their protected quality as expression under the First Amendment." Grayned, 408 U.S. at 116 (footnotes omitted). As expressed by the court in Mechanic, the civil disorder is "simply the environment" into which the firearm must be transported by someone with the intention to use the

4

firearm to promote acts of violence. See Mechanic, 454 F.2d at 853.

The Defendant contends that section 231(a)(2) is unconstitutional because it punishes constitutionally protected activity (carrying a firearm, assembling in a group, engaging in free speech) undertaken while having a certain intent (the intent to further a civil disorder) without regard to whether any real acts of violence ultimately occur. He asserts that, in this respect, section 231(a)(2) seeks to punish an individual's thoughts, thereby chilling the freedom of speech and assembly or the legal possession of firearms. The Defendant's argument is flawed, because a civil disorder by definition requires acts of violence, even if those violent acts only imminently threaten, rather than actually result in, personal injury or property damage. 18 U.S.C. § 232(1). Moreover, section 231(a)(2) does not punish intent alone. Instead, section 231(a)(2) prohibits an act, that of transporting a firearm in commerce, for a specific purpose, that of unlawful use in furtherance of a civil disorder, while the individual has a certain intent, that of "knowing or having reason to know or intending that" the firearm will be so used.

Finally, the Defendant contends in his reply brief that the statute is overly broad as applied to him because the civil disorder referenced in the indictment did not occur. The Court of Appeals for the Fifth Circuit entertained a similar challenge that section 231(a)(1)[1] was unconstitutional as-applied "because the government failed to prove the happening or pendency of a particular civil disorder and thus failed to show a clear and present danger justifying an interference with activity protected by the First Amendment." United States v. Featherstone, 461 F.2d 1119, 1122 (5th Cir. 1971), cert. denied, 409 U.S. 991 (1972). The appellate court reasoned that the requirement of a

---

[1] Section 231(a)(1) prohibits teaching another to use or make a "firearm, explosive, or incendiary device" while "knowing or having reason to know or intending" that the firearm or device will be used unlawfully "in, or in furtherance of a civil disorder[.]"

"clear and present danger"[2] does not mean that the government must wait until the planned illegal activity comes to fruition: "'If Government is aware that a group aiming at its overthrow is attempting to indoctrinate its members and to commit them to a course whereby they will strike when the leaders feel the circumstances permit, action by the Government is required.'" Id. (quoting Dennis v. United States, 341 U.S. 494, 509 (1951)). In other words, the Government does not have to wait until the violent acts are occurring to prosecute someone for acting to further those violent acts.

The Court finds that section 231(a)(2) is not overly broad because it is not directed toward constitutionally protected conduct but, instead, seeks to prohibit illegal acts.

**B. Vagueness**

The Defendant also contends that 18 U.S.C. § 231(a)(2) is unconstitutionally vague both on its face and as applied to him. Generally, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). "[O]rdinarily '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others[.]'" United States v. Williams, 128 S. Ct. 1830, 1845 (2008) (quoting Hoffman Estates v. Flipside, 455 U.S. 489, 494-95 (1982)). The Supreme Court has

---

[2]In Schenck v. U.S., 249 U.S. 47, 52 (1919), the Supreme Court created the test that speech can form the basis for a criminal conviction when the words in question "'create a clear and present danger'" that they will cause the "'substantive evils'" that the constitutionally valid statute seeks to prohibit. Dennis v. United States, 341 U.S. 494, 503 (1951).

recently distinguished between statutes that are void for vagueness under the Due Process Clause and the problematic hypotheticals that can be imagined under virtually any statute:

> What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is. Thus, [the Supreme Court has] struck down statutes that tied criminal culpability to whether the defendant's conduct was "annoying" or "indecent"-wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.

Id. at 1846. To survive a vagueness challenge, a statute must give "relatively clear guidelines as to prohibited conduct." Posters 'N' Things, Ltd. v. U.S., 511 U.S. 513, 525 (1994). Such "objective criteria" will "minimize the possibility of arbitrary enforcement and assist in defining the sphere of prohibited conduct under the statute." Id. at 526. "The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." United States v. Harriss, 347 U.S. 612, 617 (1954).

The Defendant agues that section 231(a)(2) is void for vagueness for four reasons: (1) the alternative mental element of "has reason to know" is vague, (2) the term "unlawfully" is vague because it does not indicate the source of the illegality, (3) the term "civil disorder" is vague because it can encompass conduct in which the defendant is not the source of the violence, and (4) section 231(a)(2) is rarely used. The Court will examine each of these arguments in turn.

*(1) Mental State*

The Defendant contends that section 231(a)(2) provides three alternative *mens rea*: "knowing," "having reason to know," and "intending." He contends that this second alternative scienter requirement, "having reason to know," is vague. In Featherston, the defendants also argued

7

that the same language appearing in section 231(a)(1), "knowing or having reason to know," was unconstitutionally vague because a person "of common intelligence must guess at its meaning and application." 461 F.2d at 1121. First, the appellate court observed that the inclusion of a scienter requirement in a statute typically serves to narrow its scope and to ensure that the statute will not be applied to innocent or accidental conduct. Id.; see also Hill v. Colorado, 530 U.S. 703, 732 (2000) (observing that the inclusion of a scienter requirement decreases the likelihood that a person of common intelligence would not understand the conduce prohibited). Second, the court pointed out that the Supreme Court had upheld the similar language "with intent or reason to believe" against a vagueness challenge because those words "'require[] those prosecuted to have acted in bad faith. The sanctions apply only when the scienter is established.'" Featherston, 461 F.2d at 1121 (quoting Gorin v. U.S., 312 U.S. 19, 28 (1940)). Thus, the court found "knowing or having reason to know" is "sufficiently definite to apprise men of common intelligence of its meaning and application." Id. at 1121-22. The undersigned finds that the same analysis holds true for the language "having reason to know" in section 231(a)(2).

*(2) Unlawfully*

The Defendant next argues that the term "unlawfully" is too vague to support criminal liability because the statute does not indicate the source of the illegality. He contends that if the illegality is based upon state law, then the same conduct could violate section 231(a)(2) in one state but not in another state, depending on the circumstance of where the defendant traveled in commerce.

The Court begins by observing that Congress may constitutionally enact laws that rely upon

8

or incorporate state law. United States v. Sharpnack, 355 U.S. 286, 293 (1958) (upholding the constitutionality of the Assimilative Crimes Act, which applies state criminal law in a federal enclave); United States v. Sacco, 491 F.2d 995, 1003 (9th Cir. 1974) (en banc). Additionally, in empowering Congress to enact laws under the Commerce Clause, the Constitution imposes no requirement of uniformity among states. Currin v. Wallace, 306 U.S.1, 13-14 (1939) (noting that laws enacted under the Commerce Clause are still subject to the Due Process Clause of the Fifth Amendment); Sacco, 491 F.2d at 1003.

The Sixth Circuit has determined that having the violation of state law as an element of a federal crime does not render that federal statute unconstitutionally vague. See United States v. Leon, 534 F.2d 667, 673 (6th Cir. 1976), overruled on other grounds, United States v. Stone, 748 F.2d 361, 363 (6th Cir. 1984); see also United States v. Wall, 92 F.3d 1444, 1451 n.16 (6th Cir. 1996). In Leon, the defendants argued that the federal gambling statute, 18 U.S.C. § 1955, was vague and arbitrarily applied in violation of the Fifth Amendment because one of its elements, "an illegal gambling business" requires that gambling violate the state law where the business is conducted. Our appellate court relied upon the Eighth Circuit, which described the problem as follows:

> An additional constitutional problem is suggested because § 1955 prohibits gambling businesses which are in violation of the law of the state or political subdivision in which they are conducted. As a result, the effect of the statute may not be uniform throughout the nation. Gambling activity conducted in one state may be a federal offense, while the same activity in another state may not be a federal offense. Even within a state, some forms of gambling may be federal offenses while other forms of gambling may not be.

Schneider v. U.S., 459 F.2d 540, 542 (8th Cir.), cert. denied, 409 U.S. 877 (1972). Observing that

9

the Supreme Court has not required national uniformity in Commerce Clause legislation and that it has approved the incorporation of state laws into federal statutes in various contexts, the Eight Circuit held that the potential for variation in state gambling law did not cause section 1955 to violate the Due Process Clause of the Fifth Amendment. Id. at 543; see also United States v. Morrison, 531 F.2d 1089, 1093 (1st Cir. 1976) (holding same). "The fact that 1955 applies only in states where gambling is illegal does not result in a denial of equality under the law guaranteed by the due process clause of the fifth amendment." Sacco, 491 F.2d at 1003; see Leon, 534 F.2d at 673 (relying on Sacco). The Court finds that this analysis would apply equally to section 231(a)(2)'s potential incorporation of varying state law.

The Defendant cites to United States v. Stevens, which held that a federal statute prohibiting the creation, sale, or possession of depictions of cruelty to animals[3] was unconstitutionally vague because persons of common intelligence could differ on their understanding of the types of conduct that are cruel. 130 S. Ct. 1577, 1588-89 (2010). In so holding, the Supreme Court observed that the term "illegal" in the statute did not serve to clarify the reach of the statute because of the myriad state and federal laws regulating the treatment of animals, many of which were not promulgated to protect against animal cruelty. Id. The Court did not find the term "illegal" to be vague or that a defendant would not be able to discern what conduct was illegal in any particular jurisdiction[4] but, instead, held

---

[3]The Court notes at the outset that the statute at issue in Stevens regulated speech based on its content and was, thus, presumptively in violation of the First Amendment. 130 S. Ct. 1571, 1584 (2010). As discussed above, section 231(a)(2) does not seek to regulate speech but, instead, regulates conduct.

[4]The Supreme Court discussed a problem created by the particular wording of the statute, in which the underlying act of wounding or killing the animal could have been legal where it occurred and where the depiction was created but illegal in the state or locality in which the depiction was sold or possessed. Id. at 1588. The Supreme Court found that this circumstance

10

that the depiction of an "illegal" treatment of an animal did not necessarily constitute a depiction of cruel treatment. Id. Because the instant Defendant argues that the term "unlawful" itself is vague, the Court finds the analysis in Stevens to be inapposite.

Finally, the Court notes that the defendant chooses the jurisdiction into which he or she transports the firearm or explosive or incendiary device with the intent that it be used to further a civil disorder. Thus, the defendant should be charged with knowledge of what conduct violates the law in that jurisdiction. Accordingly, the Court does not find the term "unlawful" to be vague within the statute.

*(3) "Civil disorder"*

The Defendant contends that the term "civil disorder" is vague, even though it is defined in section 232(1). As noted above, section 232(1) defines "civil disorder" as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." The Defendant argues that an individual could come within the scope of the statute despite the fact that they were not the source of the injury or danger and even if law enforcement was the source of the violent acts.

The Fifth Circuit has rejected the argument that the term "civil disorder" in section 231[5] is unconstitutionally vague:

---

"greatly expands the scope of the statute," but not because the term "illegal" was vague. Id.

[5]Although Mechanic involved a constitutional challenge to section 231(a)(3), the term "civil disorder" appears in both subsections (2) and (3) and the definition in section 232(1) applies to both.

> [T]he term "public disturbance" has not been used by the Congress in isolation. Rather, its scope is consistently narrowed by each subsequent phrase of the definition of "civil disorder." Thus, it is not just any public disturbance which is the subject of the section, but only public disturbances which (1) involve acts of violence (2) by assemblages of three or more persons, and which (3) cause immediate danger of or result in injury to (4) the property or person of any other individual.

Mechanic, 454 F.2d at 853 (footnote omitted). Like the court in Mechanic, the undersigned finds that this definition is sufficient to provide a person of ordinary intelligence with fair notice that his or her actions come within the ambit of the statute.

*(4) Infrequent Use*

The Defendant argues that section 231(a)(2) is unconstitutionally vague because it is used infrequently in federal prosecutions. He maintains that the obscurity of a "*malum prohibitum*"[6] statute is necessarily related to whether a person of common intelligence has fair notice of what it proscribes. Although the Defendant provides no authority for this sweeping statement, the Court of Appeals for the Sixth Circuit has recognized that the obscurity of a law can be relevant when the law reaches those engaged in "apparently innocent conduct":

> "Even those not versed in the law recognize the centuries-old maxim that "ignorance of the law is no excuse." This maxim, deeply embedded in our American legal tradition, reflects a presumption that citizens know the requirements of the law. The benefits of such a presumption are manifest. To allow an ignorance of the law excuse would encourage and reward indifference to the law. Further, the difficulty in proving a defendant's subjective knowledge of the law would hamper criminal prosecutions.

---

[6]*Malum prohibitum* means simply "a thing which is wrong *because* [it is] prohibited" as contrasted with *malum in se*, which is an act that is inherently immoral or wrong. Black's Law Dictionary, 1112 (Rev. 4th ed. 1968).

12

> Despite these important benefits, the ignorance maxim is not absolute. The United States Supreme Court has abrogated the maxim when faced with a law so technical or obscure that it threatens to ensnare individuals engaged in apparently innocent conduct.

United States v. Baker, 197 F.3d 211, 218-19 (6th Cir. 1999), cert. denied, 528 U.S. 1197 (2000).

The Court finds that section 231(a)(2) is neither obscure, nor as discussed in the preceding analysis does it impinge upon innocent conduct. Section 231(a)(2), which was enacted as a part of the Civil Obedience Act of 1968, has been in existence for over forty years. The cases cited above, discussing the constitutionality of different subsections of 231(a), date back to 1971. The Defendant characterizes section 231(a)(2) as a statute "largely left unused in the government's prosecutorial toolbox" [Doc. 33, p. 6],[7] but the Court finds it has withstood the test of time and has been deemed constitutional by the two circuit courts of appeals that have considered the question. See Mechanic, 454 F.2d at 852-53; Featherston, 461 F.2d 1121-22. Accordingly, the Court finds that the minimal case law on section 231(a)(2) does not render it obscure such that a person of common intelligence would not know that his or her conduct was within the scope of the statute.

Finally, the Defendant asks the Court to apply the doctrine of lenity to resolve any doubts about section 231(a)(2)'s validity in his favor. "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." United States v. Santos, 553 U.S. 507, 514 (2008).

> This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party

---

[7] The Defendant bases this observation primarily upon the few federal cases arising from a prosecution under section 231(a)(2). The Court notes that this assertion fails to account for federal prosecutions under the statute that were not the subject of a legal challenge.

13

> that can best induce Congress to speak more clearly and keeps courts
> from making criminal law in Congress's stead.

<u>Id.</u>  The rule of lenity applies only when the statute remains ambiguous after traditional methods of statutory construction have been employed.  <u>United States v. Hayes</u>, 129 S. Ct. 1079, 1088-89 (2009).  In the present case, the Court finds that the scope of the statue is clear and unambiguous.  Accordingly, the rule of lenity is not applicable.

Based on the foregoing, the Court concludes that section 231(a)(2) is not unconstitutionally vague.

# III. CONCLUSION

After carefully considering the motions, memoranda, oral arguments, and relevant legal authorities, the Court finds that 18 U.S.C. § 231(a)(2) is constitutional in both scope an application in the instant case. For the reasons set forth herein, it is **RECOMMENDED** that the Defendant's Motion to Dismiss Indictment Because Statute Upon Which Charges Are Based Is Unconstitutionally Overbroad and Vague [**Doc. 33**] be **DENIED**.[8]

Respectfully submitted,

    s/ H. Bruce Guyton
United States Magistrate Judge

---

[8] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).