IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,       )
                                )
              Plaintiff,         )
                                )
                                )
v.                              )          3:10-CR-73
                                )
                                )          (VARLAN/GUYTON)
DARREN WESLEY HUFF,             )
                                )
                                )
              Defendant.         )


## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C.§

636(b) for disposition or report and recommendation regarding disposition by the District Court as

may be appropriate.  This case is before the Court on the Defendant's remaining motions[1] to dismiss

the Superseding Indictment:

> (1) Motion to Dismiss Count Two Because Its Predicate Crime is Not
> a "Crime of Violence" [Doc. 30],
>
> (2) Motion to Dismiss Indictment [Doc. 31], because there are no
> disputed issues of fact and the Government cannot prove the
> Defendant violated the statutes,
>
> (3) Motion to Dismiss Constitutionally Insufficient Indictment [Doc.
> 32], and

---

[1]This Court has already entered Reports and Recommendations [Docs. 64 and 68] on the
Defendant's motions to dismiss the Superseding Indictment because it fails to establish federal
jurisdiction [Doc. 29] and because the statute on which the charges are based is
unconstitutionally vague and overbroad [Doc. 33].

1

(4) Motion to Dismiss Indictment That Violates Prohibition Against
Double Jeopardy [Doc. 34],

all of which were filed on August 13, 2010.  The parties appeared for a hearing on the motions on

October 12, 2010.  Assistant United States Attorney A. William Mackie appeared on behalf of the

Government.  Attorneys Jonathan A. Moffatt, Paula R. Voss, and Anne E. Passino represented the

Defendant, who was not present.  After hearing the arguments of the parties, the Court took the

motions under advisement.

## I.  POSITIONS OF THE PARTIES

The Defendant is charged in a two-count Superseding Indictment [Doc. 19], with transporting

a firearm in interstate commerce, knowing and intending that it would be used unlawfully in

furtherance of a civil disorder (Count One) and carrying a firearm in relation to the crime of violence

alleged in Count One (Count Two).

The Defendant attacks the Superseding Indictment for failure to allege an offense as a matter

of law on four primary grounds: First, he argues [Doc. 32] that the Superseding Indictment fails to

sufficiently state the elements of the offenses and the essential facts constituting those elements in

violation of the Due Process and Double Jeopardy clauses of the Fifth Amendment and the Notice

clause of the Sixth Amendment.  Second, and more specifically, with regard to Double Jeopardy, the

Defendant argues [Doc. 34] that both counts of the Indictment are multiplicitous and that Count Two

is also duplicitous.  Third, the Defendant calls [Doc. 30] for the dismissal of Count Two (carrying

a firearm in relation to a crime of violence), arguing that Count One, on which it is based, is not a

crime of violence, because it does not contain an element of violent force.  Finally, the Defendant

asserts that the Indictment should be dismissed [Doc. 31] because no disputed issues of fact exist and the Government cannot prove beyond a reasonable doubt that he had the requisite intent to violate the statute.

The Government responds [Doc. 43] that the Superseding Indictment alleges sufficient facts to put the Defendant on notice of the charges against which he has to defend, to prevent surprise at trial, and to protect against a future Double Jeopardy violation. It asserts [Doc. 44] that the Indictment presently does not offend Double Jeopardy because it is neither multiplicitous or duplicitous. The Government argues [Doc. 42] that Count One constitutes a crime of violence. With regard to the Defendant's contention that it cannot prove his intent, the Government maintains [Doc. 41] that disputed issues of fact exist, making dismissal short of a trial improper.

## II. ANALYSIS

Our Constitution requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury[.]" U.S. Const. amend. V. The Defendant challenges the legal sufficiency of the Superseding Indictment, arguing (1) it contains insufficient allegations of the elements and facts to comport with the Fifth and Sixth Amendments; (2) the counts are multiplicitous and duplicitous in violation of the Double Jeopardy clause; (3) Count Two fails to state an offense as a matter of law because Count One is not a crime of violence, and (4) the Government has insufficient proof of the charges alleged in the face of undisputed facts. The Court will address each of these arguments in turn.

## A.  Notice of the Offenses

The Defendant contends [Doc. 32] that the Superseding Indictment fails to give him constitutionally sufficient notice of the charges that he faces because it fails to state all of the elements of the offenses and the essential facts constituting those elements.  Thus, he argues that the Superseding Indictment violates the Due Process and Double Jeopardy clauses of the Fifth Amendment and the Notice clause of the Sixth Amendment, because it fails to provide proper notice of the offenses.

The Fifth Amendment provides that "a trial may be held in a serious federal criminal case only if a grand jury has first intervened" and issued an indictment or presentment.  Russell v. United States, 369 U.S. 749, 760-61 (1962).  Legally insufficient indictments implicate not only the right to a grand jury's determination of probable cause to believe that the offense occurred but also the Fifth Amendment's guarantee of due process of law and protection against being twice placed in jeopardy for the same offense.  Hamling v. United States, 418 U.S. 87, 177 (1974); Russell, 369 U.S. at 761.  Also relevant is the Sixth Amendment's provision that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and the cause of the accusations[.]"  U.S. Const. amend. VI; Russell, 369 U.S. at 761.  It is in the context of these fundamental rights that the Court examines the sufficiency of the instant Superseding Indictment.

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]"  Fed. R. Crim. P. 7(c)(1).  As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  Hamling, 418 U.S. at 117; United

States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting Hamling).  An indictment may allege the charges using the words of the statute itself as long as it gives all the elements of the offense "'fully, directly, and expressly[.]'" Hamling, 418 U.S. at 117 (quoting United States v. Carll, 105 U.S. 611, 612 (1882)); Landam, 251 F.3d at 1079.  Moreover, the statutory language "'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" Hamling, 418 U.S. at 117-18 (quoting United States v. Hess, 124 U.S. 483, 487(1888)); Landam, 251 F.3d at 1079.

Count One charges as follows:

> On or about April 20, 2010, in Monroe County, in the Eastern District of Tennessee and elsewhere, the defendant

> DARREN WESLEY HUFF,

> did transport in commerce a firearm, knowing and having reason to know and intending that such firearm would be used unlawfully in furtherance of a civil disorder.

> In violation of Title 18, United States Code, Section 231(a)(2).

Count Two alleges a violation of 18 U.S.C. § 924(c)(1)(A) as follows:

> On or about April 20, 2010, in Monroe County, in the Eastern District of Tennessee and elsewhere, the defendant

> DARREN WESLEY HUFF

> did use and carry a firearm during and in relation to a felony crime of violence for which he may be prosecuted in  a court of the United States, that is, transportation of a firearm in commerce knowing and having reason to know and intending that the same would be used unlawfully in furtherance of a civil disorder, as set forth in Count One of the Superseding Indictment, the descriptions of which are hereby incorporated by reference as though fully set forth herein.

The Defendant contends that the Indictment fails to state all of the elements of the offenses charged because it does not allege (1) the definition of a civil disorder (18 U.S.C. § 232(1)) or (2) the definition of a crime of violence (18 U.S.C. § 924(c)(3)(A)-(B)).  He also argues that the indictment fails to allege the following essential facts necessary to particularize the allegations: (1) facts establishing a civil disorder, as defined in 18 U.S.C. § 232(1); (2) facts identifying the firearm that is alleged in Counts One and Two; (3) facts showing that the Defendant transported, used, or carried a firearm and/or that the transportation of the firearm was unlawful; (4)  facts showing that the transportation of the firearm substantially affected interstate commerce or that the firearm was transported from another state; (5) facts showing the Defendant had the requisite intent (that he knew, had reason to know, or intended that the firearm would be used unlawfully in furtherance of a civil disorder) to violate section 231(a)(2); and (6) the specific date and location at which the allegations occurred.

The Government responds that the instant Indictment plainly and concisely tracks the statutes and alleges all of the elements of the offenses.  It contends that an indictment need not allege the definitions of specific terms in the statute.  The Government also argues that the Indictment provides notice of the charges and protects against a future Double Jeopardy violation because it alleges the essential facts showing the time, place, and circumstances of the offenses.

The parties agree that an indictment must inform a defendant of the elements and essential facts of the offense in order to make the nature of the charge known.  Fed. R. Crim. P. 7(c).  Yet, despite their reliance on the same cases, the parties' positions on whether and how the instant Indictment conforms to this requirement are polarized, even as to whether the Indictment sufficiently

alleges a date and location of the offenses charged. Accordingly, the Court embarks upon its own review of the prominent cases to determine the sufficiency of the detail in the present Indictment.

*(1) Elements*

"It is well established that an indictment must allege all the elements of the charged crime." United States v. Resendiz-Ponce, 549 U.S. 102, 111 (2007) (Scalia, J., dissenting) (citing Alamendarez-Torez v. U.S., 523 U.S. 224, 228 (1998)). A charge expressed in the words of the statute is sufficient, if "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished[.]" United States v. Carll, 105 U.S. 611, 612 (1881); see also Hamling, 418 U.S. at 117. When a term used in a statute is a "legal term of art," rather than "merely a generic or descriptive term," the indictment need not allege the "legal definition" of the term. Hamling, 418 U.S. at 118 (holding that the indictment charging that a brochure was obscene without defining obscenity was sufficient); see also Resendiz-Ponce, 549 U.S. at 107 (holding that the term "attempt," like the term "obscene" in Hamling, is a legal term encompassing both the intent and the overt act). In elaborating on this holding in Hamling, and seeking to distinguish its application to Defendant Resendiz-Ponce, Justice Scalia stated:

> To be sure, those definitions [of particular legal terms] must be met for conviction; but they need not be set forth in the indictment. If every word contained within the definition of each element of a crime were itself an element of the crime within the meaning of the indictment requirement, there would be no end to the prolixity of indictments.

Resendiz-Ponce, 549 U.S. at 114 (Scalia, J., dissenting).

In the present case, section 231(a)(2) punishes a person who (1) transports in commerce, (2) a firearm, (3) knowing or having reason to know or intending, (4) that the firearm will be used unlawfully in furtherance of a civil disorder. 18 U.S.C. §231(a)(2). Count One of the Superseding Indictment tracks this statutory language, alleging each of these elements, and adding the additional details of the date ("on or about April 20, 2010") and the location ("in Monroe County, in the Eastern District of Tennessee and elsewhere"). In this respect, the Court finds that Count One is a constitutionally sufficient charge. Although the Defendant argues that the Indictment should have alleged the definition of "civil disorder,"[2] the Court finds "civil disorder" to be a legal term of art, like the term "obscene" in <u>Hamling</u> or "attempt" in <u>Resendiz-Ponce</u>. <u>See</u> <u>Resendiz-Ponce</u>, 549 U.S. at 107; <u>Hamling</u>, 418 U.S. at 118. As such, the term "civil disorder" is not uncertain or ambiguous. The Court finds that the Defendant is able to know the nature of the charge he is facing from the allegation of the term itself.

The Court finds the same analysis holds true for Count Two, which alleges a violation of section 924(c)(1)(A). Section 924(c)(1)(A) punishes a person who (1) uses or carries a firearm (2) during or in relation to a crime of violence. 18 U.S.C. § 924(c)(1)(A). Count Two alleges both of these elements, sets out the elements of the specific crime of violence alleged, and adds the date and location of the crime. The Court also finds Count Two to be constitutionally sufficient. The Indictment does not have to set out the definition of "crime of violence," which has a specific legal

---

[2]Section 232(1) defines "civil disorder" as " any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual."

meaning[2] set out in a later section of the statute. The term "crime of violence" is neither uncertain nor ambiguous because it is defined in the statute. Moreover, provision of the particular crime of violence (the crime alleged in Count One) plus the date and the location informs the Defendant of the nature of the charge he is facing and also serves to protect against a future Double Jeopardy violation.

*(2) Facts*

It is well-settled that an indictment must contain facts, not just legal conclusions: "A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances." United States v. Cruikshank, 92 U.S. 542, 558 (1875). The allegations in the indictment, alone, must permit the court to determine whether "the acts charged will–if proved– support a conviction for the offense alleged." Id. at 559. Stated another way, "[t]o be legally sufficient, the indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime." United States v. Superior Growers Supply, Inc., 982 F.2d 173, 177 (6th Cir. 1992); see also United States v. Landham, 251 F.3d 1072, 1079 (6the Cir. 2001) (quoting Superior Growers), United States v. Maney , 226 F.3d 660, 663 (6th Cir. 2000) (quoting Superior Growers). The ability of the court to refer to other statutes to determine the meaning of the primary statute charged does not relieve the Government of its obligation to allege all necessary facts. Carll, 105 U.S. at 613.

---

[2]Section 924(c)(3) defines a "crime of violence" as a felony that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

In evaluating the constitutional sufficiency of the present charges, the Court observes that it must use "'a common sense construction'" to determine whether the indictment gives the Defendant fair notice of the charges. Maney, 226 F.3d at 663 (quoting Allen v. U.S., 867 F.2d 969, 971 (6th Cir. 1989)). First, the Court finds that the Superseding Indictment alleges the crimes "with reasonable particularity of time[ and] place[.]" Cruikshank, 92 U.S. at 558. The Defendant contends that the Indictment fails to allege a specific date and place presumably because of the language "[o]n or about" with regard to April 20, 2010, and "and elsewhere" in relation to Monroe County. In Resendiz-Ponce, the Supreme Court determined that "the use of the word 'attempt,' coupled with the specification of the time and place of respondent's attempted illegal reentry, satisfied" the constitutional requirements that the indictment fairly inform the defendant of the charge and permit him to defend against a Double Jeopardy violation. 549 U.S. at 108. In that case, the indictment also contained the language "[o]n or about" a certain date and stated that the attempt to reenter occurred "at or near San Luis in the District of Arizona[.]" Id. at 105. The present Indictment contains the same language with regard to the date, and although the secondary location of "and elsewhere" is not specific, Monroe County is more specific than "at or near San Luis[.]" Moreover, allegations that the crime took place within the district are generally sufficient. 1 Charles Alan Wright and Andrew D. Leipold, Federal Practice and Procecure §125 (4th ed. 2008). The Court finds that the date and place of the crime alleged in the instant Indictment are, thus, equally specific as that upheld by the Supreme Court in Resendiz-Ponce.[3]

_____

[3]In arguing that the indictment in Resendiz-Ponce contains "more specific factual information" than the instant Indictment, the Defendant notes that it also contains a location and date of Defendant Resendiz-Ponce's prior deportation. [Doc. 52, p. 3 & n.1] In the above analysis, the Court compares the date and location of the crimes being alleged. However, the Court observes that the prior deportation date alleged in Resendiz-Ponce also contains the

Next, the Court turns to whether the Superseding Indictment alleges the circumstances of the crimes with reasonable particularity. The Defendant's arguments fall into four general categories: (1) the Indictment fails to allege facts to support the jurisdictional element, (2) the Indictment fails to allege facts showing the civil disorder, (3) the Indictment fails to allege facts regarding the firearm, and (4) the Indictment fails to allege facts that would establish that he had the required mental state.

The Defendant argues that the Indictment fails to allege facts supporting the jurisdictional element, specifically facts relating to the manner in which the firearm was transported in commerce and to the effect of the transportation of the firearm on interstate commerce. First, the Court observes generally that such factual assertions regarding the interstate nexus of a crime are not always necessary to provide fair notice. See generally 1 Wright, Federal Practice and Procecure §125 (observing that although many federal statutes require a nexus to interstate commerce, "[s]pecific factual claims about how the nexus to interstate commerce was affected often are not required"). Additionally, the Court has already addressed the Defendant's arguments in its Report and Recommendation [Doc. 64, p. 9] on the Defendant's Motion to Dismiss for Failure to Establish Interstate Commerce Jurisdiction, finding the Indictment to be constitutionally sufficient as a matter of law because it alleges that the firearm was transported "in commerce" in "Tennessee" and "elsewhere[.]" Section 232(2) defines "commerce" as "commerce (A) between any State or the District of Columbia and any place outside thereof; (B) between points with in any State or the District of Columbia, but through any place outside thereof; or (C) wholly within the District of Columbia." In his objections [Doc. 67] to this finding, the Defendant faults the Court for inferring

language "on or about[.]"

that the grand jury found subsection (A)–that the firearm was transported between one state, Tennessee, and a place outside Tennessee. He argues that the grand jury just as easily could have found that the Defendant transported the firearm between different counties in the Eastern District of Tennessee under subsection (B) because the Indictment does not mention another state or the word "interstate."[4] What this argument fails to address is that subsection (B) also requires the transportation be between a state and "any place outside thereof" as well as between points within a state. Accordingly, the Court continues to find that "and elsewhere" means or at least includes a place outside of the state of Tennessee. As such, the facts alleging the jurisdictional element are constitutionally sufficient.

The Defendant also contends that the Indictment fails to give fair notice of the charges because it does not allege any facts about the civil disorder such as where and when it occurred, how many people were involved, and the extent and nature of the acts of violence involved. The Court finds that the Indictment's allegation that the Defendant transported a firearm unlawfully in furtherance of a civil disorder is constitutionally sufficient to give the Defendant fair notice of the charge against which he must defend and to serve as a bar for a Double Jeopardy violation, when coupled with the date and location alleged in the Indictment. Although an indictment must allege a defendant's acts with reasonable particularity as to the circumstances, it need not list the evidentiary facts and details necessary to prove each of the elements of the offense charged. See United States v. Williams, 679 F.2d 504, 509 (5th Cir.), cert. denied, 459 U.S. 1111 (1982). The

---

[4]Count One states that the crime occurred "in Monroe County, in the Eastern District of Tennessee and elsewhere[.]" Thus, the Court confidently infers that the grand jury did not rely on subsection (C), which requires that the transportation occur wholly within the District of Columbia.

present Indictment, although basic, is not generic; and indictments are not constitutionally insufficient simply because they could have been made more precise. Wright, <u>Federal Practice and Procedure</u> § 125. The Court finds that the term "civil disorder" is not ambiguous and fairly informs the Defendant of the offenses charged. <u>See</u> <u>Carll</u>, 105 U.S. at 612 (observing that an indictment using the words of the statute is sufficient if such set forth the offense fully and without uncertainty or ambiguity). A finding that an Indictment provides fair notice is not the same as finding that it alleges sufficient facts to allow the defendant to prepare his defense or to avoid surprise at trial. <u>See</u> <u>United States v. Maselli</u>, 534 F.2d 1197, 1201 (6th Cir. 1976). Thus, a constitutionally sufficient indictment may still properly be supplemented with a bill of particulars, an issue which this Court will address with regard to the instant Indictment in a separate order. <u>Id.</u>

The Defendant also contends that the Indictment does not give him sufficient notice of the charges and does not commit the Government to the allegations found by the grand jury because it fails to identify the firearm; to allege facts showing that he transported, used, or carried a firearm; or to list facts that establish that the transportation of the firearm was unlawful. Count One alleges that the Defendant "did transport in commerce a firearm, knowing and having reason to know and intending that such firearm would be used unlawfully in furtherance of a civil disorder." Count two alleges that the Defendant "did use and carry a firearm during and in relation to a felony crime of violence[.]" As with the above analysis of the need for additional facts regarding the alleged civil disorder, the Court finds that the use of the language of the statute with respect to the transportation, use, and carrying of the firearm is sufficient to give the Defendant fair notice and to protect his Fifth Amendment right to an indictment, without further factual elaboration. Our appellate court has held that when the statute alleged to be violated does not enhance the punishment for the type of firearm

involved, the indictment's failure to state the type of firearm alleged to be used does not render the indictment constitutionally insufficient. United States v. Davis, 306 F.3d 398, 411 (6th Cir. 2000).

The Defendant argues that the Indictment must be dismissed because it fails to identify the firearm alleged in both Counts. The Defendant points to the Government's response to his request for a bill of particulars that the Defendant is aware that the events of April 20, 2010, are associated with his Colt .45 handgun and his AK-47 rifle. The Defendant asserts that the Indictment alleges a single firearm and that neither he, nor the Court, can know which of these two firearms formed the basis for the grand jury's charge. "To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." Russell, 369 U.S. at 770. The Defendant contends that even if this Court were to require the Government to specify which of these two firearms was the one upon which it will proceed at trial, this particularization would not cure the defect in the Indictment.

Even assuming that the Defendant transported, used, and carried two firearms on April 20, 2010, the Indictment's failure to identify which of the two firearms forms the basis of the charges does not compel dismissal, as the Defendant contends. As noted above, the specific type of firearm used is not an essential element of either of these crimes. See United States v. Vincent, 20 F.3d 229, 236 (6th Cir. 1994) (holding that "the specific type of firearm used is not an essential element to convict a defendant under 18 U.S.C. § 924(c)"). Thus, the Court of Appeals for the Sixth Circuit has upheld a conviction under section 924(c) when the trial court instructed the jury that it did not

have to find that the particular gun named in the indictment was the gun used in relation to the drug trafficking charge, United States v. Robison, 904 F.2d 365, 369 (6th Cir. 1990), and when the indictment did not specify a particular firearm and the evidence at trial established multiple firearms were found in the defendant's home, Vincent, 20 F.3d at 236 (analyzing defendant's argument that he was denied a unanimous verdict).[5]  The Court finds that the same reasoning applies to section 231(a)(2), in which the specific type of firearm is also not an essential element.  In the present case, whether the Government presents evidence that the firearm the Defendant transported, used, and carried on April 20, 2010, was a Colt .45 handgun or a AK-47 rifle or both, it would still prove that the Defendant transported a *firearm* on April 20, 2010, as alleged in Count One and used or carried a *firearm* on April 20, 2010, as alleged in Count Two.  Accordingly, the Court finds the Indictment is constitutionally sufficient even though it fails to identify the firearm in either count.

Finally, the Defendant argues that the Indictment is constitutionally insufficient because it fails to allege facts to show that he had the requisite mental state to commit the crime alleged in Count One.  Specifically, he argues that Count One contains no facts showing that he knew, had reason to know, or intended that the firearm would be used unlawfully in furtherance of a civil disorder.  "An indictment or information is defective if it fails to allege a mens rea element that is expressly contained in the statute."  1 Wright, Federal Practice and Procedure §125.

The Court finds that the present Indictment expressly alleges the *mens rea*.  The use of the

---

[5]The Court acknowledges that Robison and Vincent deal with the sufficiency of the evidence to support the jury's verdict of guilt, rather than the sufficiency of the indictment. Nevertheless, the Court finds that appellate court's conclusion that the type of firearm used is not an essential part of the jury's finding of guilt beyond a reasonable doubt to support a corollary premise that the type of firearm used is also not an essential part of the grand jury's finding of probable cause.

language of the statute to allege the Defendant's mental state directly and fully informs him of what his mental state is alleged to have been and is not uncertain or ambiguous. See Carll, 105 U.S. at 612. The Indictment's failure to allege other facts to establish the mental state does not deprive the Defendant of fair notice of the charge.

In summary, viewing the Indictment as a whole and with a common sense construction, the Court finds that it is constitutionally sufficient, because it gives the Defendant fair notice of the charges he faces, permits him to plead an acquittal or conviction to bar a Double Jeopardy violation, and asserts all of the facts that, if proven, would establish a prima facie case that the Defendant had committed the offenses alleged. The Court recommends that the Defendant's Motion to Dismiss Constitutionally Insufficient Indictment [Doc. 32] be denied.

## B. Multiplicity and Duplicity

The Defendant argues [Docs. 34 and 51] that the Superseding Indictment violates his right to due process of law and places him in jeopardy twice for the same offense because Counts One and Two are multiplicitous in seeking to punish him twice for the same offense and Count 2 is duplicitous in internally charging two statutes that punish the same type of harm. He contends that the Court should apply the rule of lenity to resolve any doubts about the validity of the charges in his favor. The Government contends [Doc. 44] that the charges are neither multipicitous or duplicitous because each requires proof of facts that are not required by the other.

The Fifth Amendment's prohibition against twice placing a defendant in jeopardy for the same offense shields the defendant from three potential harms: A "second prosecution for an offense after initial acquittal, second prosecution for an offense after an initial conviction, and 'multiple

punishments for the same offense.'" United States v. Gibbons, 994 F.2d 299, 301 (6th Cir.) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)), cert. denied, 510 U.S. 872 (1993).  A multiplicitous indictment charges a single offense in multiple counts thereby infringing upon the third category, multiple punishments for a single offense.  See United States v. Robinson, 651 F.2d 1188, 1194 (6th Cir.), cert. denied, 545 U.S. 875 (1981).  "An indictment is duplicitous if it sets forth separate and distinct crimes in one count."  United States v. Davis, 306 F.3d 398, 415 (6th Cir. 2002).  The primary problem with duplicitous counts is that the jury may not arrive at a unanimous verdict on a specific count.  United States v. Washington, 127 F.3d 510, 513 (6th 1997).  This effect of duplicitous indictments can potentially prejudice the defendant at sentencing, on appellate review, and in protecting against a future double jeopardy violation.  Id.

'"The general test for compliance with the double jeopardy clause looks to "whether each [count] requires proof of a fact which the other does not.""'  Davis, 306 F.3d at 417 (quoting Gibbons, 994 F.2d at 301, which, in turn, quotes Blockburger v. U.S., 284 U.S. 299, 304 (1932)).  "A defendant may be charged with multiple offenses based on the same underlying conduct as long as each offense requires proof of an element not required by the other."  United States v. Kelly, 204 F.3d 652, 656 (6th Cir. 2000); see Blockburger, 284 U.S. at 304.  Ultimately, however, the power to determine what constitutes a criminal offense and the punishment therefor belongs to the legislative branch.  Whalen v. United States, 445 U.S. 684, 689 (1980).  Accordingly, the Blockburger test does not apply when Congress has expressly authorized multiple punishments.  Whalen, 445 U.S. at 688; Davis, 306 F.3d at 417.

*(1) Multiplicity*

The Defendant's argument that Counts One and Two are multiplicious is answered by the Court of Appeals for the Sixth Circuit's analysis in Gibbons and Davis: "Congress made itself unequivocally clear that punishment for violation of [section 924(c)] was to be imposed in addition to punishment for committing the predicate offense." Id. at 418. Section 924(c) provides that

> any person who during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime

receive a specified punishment. 18 U.S.C. § 924(c)(1)(A). "The words 'in addition to the punishment provided for such crime' can have no other meaning" than that Congress expressly authorized a punishment cumulative to that of the predicate felony. Gibbons, 994 F.2d at 302. Moreover, a section 924(c) charge will never require proof of an additional fact beyond that required for the predicate felony. Davis, 306 F.3d at 417; Gibbons, 994 F.2d at 302. Accordingly, the Blockbuster analysis, which is merely "a rule of statutory construction," gives way to plain congressional intent. Gibbons, 994 F.2d at 301-02. In Davis, the court rejected the defendant's argument that charges for armed bank robbery and carrying a firearm in furtherance of an armed robbery were multiplicious because they both were based on the same series of actions involving a firearm. Davis, 306 F.3d at 417; see also Gibbons, 994 F.2d at 301-02 (concluding that counts of conspiracy to distribute cocaine and conspiracy to use or carry firearms in relation to drug trafficking

were not multiplicitous).[6]


*(2) Duplicity*

The Defendant argues that Count Two is duplicitous because the elements of the predicate

offense (transporting a firearm in furtherance of a civil disorder) mirror the elements of section

924(c). In support of this argument, he relies on case law holding that an indictment that charges

both types of section 924(c) offenses is duplicitous. He asserts that the similarity between using or

carrying a firearm in relation to a crime of violence (one of the two section 924(c) offenses) and

transporting a firearm in furtherance of a civil disorder casts the congressional intent for multiple

punishments (discussed above) into doubt, thereby creating ambiguity, which requires the application

of the Blockburger test. After examining the case law, the Court disagrees.

In 2004, the Court of Appeals for the Sixth Circuit determined that section 924(c) sets forth

two distinct offenses: (1) using or carrying a firearm "during and in relation to" a crime of violence

or a drug trafficking crime and (2) possessing a firearm "in furtherance of" a crime of violence or

---

[6]The examples cited by the Defendant of gun-related offenses found to be multiplicitous
do not analyze whether a section 924(c) offense and its predicate crime of violence are
multiplicitous. See United States v. Wallace, 447 F.3d 184, 188 (2d Cir. 2006) (finding two
section 924(c) offenses to be multiplicitous because of the similarity of their two predicate
offenses); United States v. Platter, 514 F.3d 782, 786 (8th Cir. 2008) (finding two section 922(g)
offenses to be multiplicitous); United States v. Graham, 305 F.3d 1094, 1100 (10th Cir.) (finding
multiple charges of dealing in explosives to be multiplicitous), cert. denied, 537 U.S. 1142
(2002); United States v. Anderson, 872 F.2d 1508, 1520 (11th Cir. 1989) (holding that charges of
three separate conspiracies to possess, transfer, and sell or dispose of unregistered firearms
actually constituted a single conspiracy). Of these cases, only Wallace deals with section 924(c)
offenses, and there the court found that a single section 924(c) charge/conviction was proper.
Wallace, 447 F.3d at 190. None of these cases stand for the proposition that a section 924(c)
charge and its predicate crime of violence can be multiplicitous, despite Congress's express
intent to impose multiple punishments.

a drug trafficking crime.  United States v. Combs, 369 F.3d 925, 931, 933 (6th Cir. 2004).  In

addition to the plain language of the statute[7] and the legislative history,[8] the court based this holding

on the different proof required for each section 924(c) offense.  Id. at 931-33.

The appellate court applied a Blockburger-style analysis to the proof required for the two

separate offenses within section 924(c), finding that different proof is required for each offense.  Id.

at 932-33.  "Use" "requires some active employment of the firearm by the person committing the"

predicate offense, while "carry" means "the firearm must be on the person or accompanying the

person[.]"  Id. at 932.  "[T]o constitute a 'carrying' offense, the firearm need not be immediately

available for use and . . . 'the proper inquiry [in determining whether a firearm is being "carried"]

---

[7]The Combs court observed that the structure of section 924(c) with the two clauses
separated by "or" reveals that Congress intended two separate offenses.  Id. at 931.

[8]The Combs court also held that the legislative history supported a determination that
section 924(c) contains two offenses.  Id. at 932.  Congress amended section 924(c), adding the
language "possess a firearm in furtherance of the crime" following the Supreme Court's
determination that the "using or carrying of a firearm during and in relation to" another crime did
not encompass mere possession.  Id. at 932.  The court noted in a parenthetical that Congress
rejected simply adding possessing to using or carrying in favor of requiring that possession be in
furtherance of a crime.  Id.  The appellate court observed that

> [t]he legislative history of the amendment bolsters the view that
> Congress intended "in furtherance of" to create a different standard
> of conduct than did the "during and in relation to" language.  From
> the House Committee Report we know that members regarded "in
> furtherance of" as a slightly higher standard, encompassing the
> "during and in relation to" language. H.R.Rep. No. 105-344, at 11
> (1997).  "The government must clearly show that a firearm was
> possessed to advance or promote the commission of the underlying
> offense." Id. at 12.  See also [United States v. ]Mackey, 265 F.3d
> [457,] 461 [(6th Cir. 2001)].  By its adding possession as a
> prohibited act, and requiring a higher standard of participation to
> charge a defendant with the act, we understand Congress to have
> delineated a new offense within the same statute.

Id.

is physical *transportation*' of the firearm." Id. at 933 (quoting Hilliard v. U.S., 157 F.3d 444, 449 (6th Cir. 1998)) (alteration in original but emphasis added). The appellate court observed that the "during and in relation to" language "requires that the firearm 'furthered the purpose or effect of the crime and its presence or involvement was not the result of coincidence.'" Id. (quoting United States v. Warwick, 167 F.3d 965, 971 (6th Cir. 1999)).

In contrast, for the possession offense, the proof requires "a higher standard of participation" in the "in furtherance" language than that required by "during and in relation to" language, as well as a "'specific nexus between the gun and the [predicate] crime charged.'" Id. (quoting United States v. Mackey, 265 F.3d 457, 462 (6th Cir. 2001)). Factors suggesting that a firearm is possessed "in furtherance of" a predicate crime are "(1) whether the firearm was loaded; (2) the type of firearm; (3) whether the weapon was stolen or legitimately possessed; (4) the type of [predicate crime or] drug activity conducted; and (5) the time and circumstances under which the gun was found." Id. Thus, the Combs court concluded "that 'in furtherance of' differs from 'during and in relation to' and requires the government to prove a defendant used the firearm with greater participation in the commission of the crime or that the firearm's presence in the vicinity of the crime was something more than mere chance or coincidence." Id.

After Combs, counts charging both a carrying/use section 924(c) offense and a possession section 924(c) offense have been deemed duplicitous. United States v. Savoires, 430 F.3d 376, 380 (6th Cir. 2005) (holding that a charge of using or carrying a firearm in relation to a drug trafficking crime and possession of a firearm in furtherance of a drug trafficking crime is duplicitous); Davis, 306 F.3d at 416 (concluding that the jury instructions clarified and cured any problems arising from a duplicitous section 924(c) charge that alleged the defendant used, carried, and possessed a firearm).

Analogizing from this case law, the instant Defendant argues that Count Two is duplicitous because it charges that he "did use and carry a firearm during and in relation to" Count One, which in turn charges him with the "transportation of a firearm . . . used . . . in furtherance of a civil disorder[.]" He contends that because Count One also involves a firearm and contains the "in furtherance of" language, charging a section 924(c) offense in combination with a section 231(a)(2) offense is tantamount to charging both section 924(c) offenses in the same count.

The Court finds that careful examination of the <u>Blockburger</u> analysis in <u>Combs</u> belies the Defendant's contention. <u>Combs</u> held that "in furtherance of" was a different and higher showing than "during and in relation to." Accordingly, a predicate offense, such as section 231(a)(2) that uses the "in furtherance of" language would not duplicate a using/carrying section 924(c) offense. Moreover, the fact that both the section 924(c) offense and the predicate offense involve the use of a firearm does not make Count Two duplicitous. <u>See</u> <u>Davis</u>, 306 F.3d at 417-18 (rejecting the contention that 924(c) could not be charged in conjunction with a predicate offense of armed robbery). Just as the two section 924(c) offenses are distinct, so are the use/carry offense under section 924(c) and section 231(a)(2). The ambiguity the Defendant seeks to show is not there. Thus, the Court finds no reason to deviate from the expression of clear congressional intent with regard to imposing multiple punishments found in the statutory language.

Finding that the instant charges are neither multiplicitous or duplicitous, the Court recommends that the Defendant's Motion to Dismiss Indictment That Violates Prohibition Against Double Jeopardy [Doc. 34] be denied.

## C. Crime of Violence

The Defendant argues [Docs. 30 and 54] that Count Two of the Superseding Indictment must be dismissed as a matter of law because transporting a firearm in furtherance of a civil disorder in violation of 18 U.S.C. § 231(a)(2) is not a "crime of violence" as required for a violation of 18 U.S.C. § 924(c)(1)(A). He contends that section 231(a)(2) does not meet the definition of a "crime of violence" because (1) violent force is not one of the elements of a section 231(a)(2) violation and (2) no substantial risk of physical force arises during the commission of a section 231(a)(2) offense. The Government responds [Doc. 42] that the statutory definition of "civil disorder" reveals that section 231(a)(2) is a crime of violence because a civil disorder involves acts of violence that cause an immediate danger of injury or damage to property. The Government argues that regardless of whether the civil disorder occurs, the nature of a section 231(a)(2) violation involves a substantial risk that violence could occur because the defendant has the intent to further a civil disorder. After examining the parties' arguments and the case law, the Court concludes that section 231(a)(2) is a crime of violence under section 924(c)(3)(B).

Count Two alleges a violation of section 924(c)(1)(A), which provides an additional punishment for one who "during and in relation to any crime of violence . . . uses or carries a firearm[.]" Section 924(c)(3) defines a "crime of violence" for purposes of that statute as a felony that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The question of whether a section 231(a)(2) violation constitutes a crime of violence for purposes of section 924(c) is one of first impression. As discussed in part A above, the elements of section

23

231(a)(2)[9] are (1) transporting in commerce, (2) a firearm (or explosive or incendiary device), (3) while knowing, having reason to know, or intending, (4) that the firearm will be used unlawfully in furtherance of a civil disorder. The Court observes that none of the elements of section 231(a)(2) requires the use of physical force. Accordingly, the Court finds, and the parties agreed at the motion hearing, that if section 231(a)(2) is a crime of violence, it must be because "by its nature, [it] involves a substantial risk that physical force against the person or property of another may be used in the course of [its commission]." 18 U.S.C. § 924(c)(3)(B).

The Government argues that the statutory language used in defining a civil disorder with respect to a section 231(a)(2) violation shows that Congress intended for section 231(a)(2) to be a crime of violence. The statute defines a civil disorder as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 924(e). The Government contends that because a civil disorder entails violent acts resulting in or imminently leading to personal injury or property damage, then carrying a firearm with the intent to further a civil disorder creates a substantial risk of physical force to persons or property. The Defendant denies that the commission of the offense (the actual transporting of the firearm with a certain intent) creates a substantial risk of physical force, because, as he argues is true in this case, the civil disorder may not even occur. The Defendant likens section 231(a)(2) to other crimes that courts have determined are not "crimes of violence" or "violent felonies" under the Armed Career Criminal Act

_____

[9]Section 231(a)(2) states that "[w]hoever transports or manufactures for transportation in commerce any firearm, or explosive or incendiary device, knowing or having reason to know or intending that the same will be used unlawfully in furtherance of a civil disorder . . . shall be fined or imprisoned . . . or both."

and the sentencing guidelines.

*(1) Law Relevant to "Crime of Violence" Determination*

Whether an offense by its nature is a crime of violence is determined by examining whether a substantial risk of physical force occurs *during* the commission of the offense. 18 U.S.C. 924(c)(3)(B). This determination is made by looking at the offense in the abstract, not at how it occurred in the particular case before the Court: The language of the definition of a crime of violence "requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime." Leocal v.Ashcroft, 543 U.S. 1, 8 (2004) (analyzing the language of 18 U.S.C. §16(b), which is identical to section 924(c)(3)(B)). Although the Supreme Court has not analyzed what constitutes a "crime of violence" under section 924(c)(3), it has examined the identical definition for a crime of violence under 18 U.S.C. §16.[10] Id.; United States v. Serafin, 562 F.3d 1105, 1108 (10th Cir. 2009) (observing that the statutory language of section 924(c)(3)(B) and section 16(b) are identical and that the Supreme Court "has yet to interpret the crime of violence language in §924(c)(3)(B)"). A crime that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in course of

_____

[10]Section 16 provides that the "term 'crime of violence' means–

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

committing the offense"

> simply covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense. The reckless disregard in §16 relates not to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime. The classic example is burglary. A burglary would be covered under §16(b) not because the offense can be committed in a generally reckless way or because someone may be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime.

Id. at 10. The "substantial risk" in the statutory definition applies to the use of force, rather than to the potential effects of the person's actions. Id. at 10 n.7.

Additionally, the Supreme Court observed that the "ordinary meaning of this term[, i.e., "crime of violence"], combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes[.]" Id. at 11 (holding that driving under the influence of an intoxicant is not a crime of violence by its nature); Van Don Nguyen v. Holder, 571 F.3d 524, 530 (6th Cir. 2009) (applying the rule of lenity to hold that theft of an automobile is not a crime of violence under section 16(b) because Congress's intent is ambiguous).

The instant Defendant would also require that offenses that by their nature are crimes of violence must also involve "purposeful, violent, and aggressive conduct." Begay v. U.S., 553 U.S. 137, 144-45 (2008) (concluding that driving under the influence is not a "violent felony" under the ACCA, because it is a strict liability crime and does not involve purposeful conduct). The Defendant argues that the Supreme Court's analysis in Begay, which determined whether driving under the influence of an intoxicant (DUI) is a "violent felony" under the Armed Career Criminal Act

(ACCA), 18 U.S.C. § 924(e),[11] is relevant to the present inquiry. The Court finds that the pertinent

language in the definition of a "violent felony" under the ACCA–that the offense "involves conduct

that presents a serious potential risk of physical injury to another"–differs significantly from the

requirement that the offense involve a "*substantial* risk" of force and that the risk or force must occur

"in the course of committing the offense." Compare 18 U.S.C. §924(e)(2)(B)(ii) with 18 U.S.C.

924(c)(3)(B). The Court of Appeals for the Sixth Circuit has declined to apply the definition of a

"crime of violence" under section 16, which, as discussed above, is identical to the definition in

section 924(c)(3), when determining whether possession of a sawed-off shotgun is a "violent felony"

under the ACCA. United States v. Amos, 501 F. 524, 527 (6th Cir. 2007).[12] "The clause 'used in

the course of committing the offense,' which does not appear in the ACCA, narrows the section

16(b) definition and distinguishes it from that in the ACCA." Id.

---

[11]The ACCA imposes an additional punishment on a person convicted of an offense under section 922(g) who also has three prior violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). A "violent felony" under the ACCA is defined as a felony that

> (i) has as an element the use, attempted, use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B).

[12]The Defendant argues that our appellate court applied Begay in Van Don Nguyen v. Holder, but in Nguyen, the court applied Begay to hold that the court looks to the statute "generically," not to the particular way in which the offense was committed in the case before it. 571 F.3d 524, 529 (6th Cir. 2009). The court went on to apply the Leocal holding that section 16(b) applies to "violent, active crimes" and the rule of lenity and did not apply the "purposeful, violent, and aggressive conduct" language from Begay. Id. at 530.

The Court of Appeals for the Tenth Circuit has also recognized that section 924(c) and the ACCA have "important differences in statutory text and penological objectives[:]"

> While § 924(c)(1) addresses the use of firearms in furtherance of a crime of violence or drug trafficking, the ACCA and § 4B1.2 enhance the punishment imposed for repeat offenders. These differences help explain why courts have reached seemingly different conclusions about what conduct constitutes a crime of violence under each provision.

Serafin, 562 F.3d at 1109 (also discussing section 4B1.2 of the United States Sentencing Guidelines, which defines a "crime of violence" as "burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another"). Finally, the Supreme Court in Leocal has remarked that the definition of a "crime of violence" under section 16 is more restrictive than the definition of crime of violence under the sentencing guidelines, which mirrors the definition in the ACCA, because the former requires a "substantial risk" of force, while the latter requires a "serious potential risk" of injury. 543 U.S. at 10 & n.7. Accordingly, the Court agrees with the Government that the cases cited by the Defendant under Begay, the ACCA, and section 4B1.2(a)(2) of the sentencing guidelines are not pertinent to the present analysis of whether an offense is a crime of violence under section 924(c)(3).


*(2) Application of the Relevant Law to Section 231(a)(2)*

Generally, crimes focused on the possession of firearms are not, by nature, crimes of violence. The Court of Appeals for the Sixth Circuit has held that the possession of a firearm by a previously convicted felon, 18 U.S.C. § 922(g), is not a crime of violence as that term is defined in section 16. Orr v. Hawk, 156 F.3d 651, 656 (6th Cir. 1998) (analyzing the Bureau of Prison's refusal

to permit a sentence reduction for successful completion of drug abuse treatment because the defendant had been convicted of a crime of violence). In its analysis, the appellate court noted that "18 U.S.C. § 924(c)(3) . . . contains no language that would include mere possessory offenses[.]" Id. at 652.

In applying the principles of Leocal, the Tenth Circuit has held that possession of an unregistered short-barreled rifle is not a crime of violence under section 924(c)(3)(B). Serafin, 562 F.3d 1107, 1115. The Court observed that "in light of Leocal, our analysis must not only focus on (1) whether an offense, by its nature, raises a substantial risk of physical force being employed, but also on (2) whether the risk of force actually arises in the course of committing the offense, and not merely as a probable, or even possible, result." Serafin, 562 F.3d at 1114. Applying these factors to the possession of an unregistered firearm, the court held that "the unlawful act of possession does not 'by its nature' involve a substantial risk that physical force will occur in the course of committing the offense[,]" because possession of an unregistered firearm can occur in a variety of non-violent circumstances, the possession of a registered firearm of this type is permitted in certain circumstances, and the risk of force does not arise from the defendant's possession of the unregistered firearm but from the possibility that he might commit another crime while gaining or retaining possession. Id. at 1114-15. Finally, the court emphasized that the "statute at issue here does not have an element requiring an 'intent to use' the unregistered weapon." Id. at 1115. Because "the danger from an unregistered short-barreled rifle is inherent to its use, not merely in its possession[,]" the Serafin court held that possession of an unregistered short-barreled rifle was not a "crime of violence" and dismissed the defendant's conviction under section 924(c)(1). Id. at 1115-16.

Similarly, the Court of Appeals for the Fifth Circuit concluded that possession of a short-barreled firearm is not a crime of violence under section 16(b). United States v. Diaz-Diaz, 327 F.3d 410, 413-14 (5th Cir. 2003). Writing before the Supreme Court's decision in Leocal, the court employed a "categorical approach," looking to the offense in the abstract, and found that in order for the offense to be a crime of violence it "must present 'the substantial likelihood that the offender will intentionally employ force against the person or property of another *in order to effectuate the commission of the offense*.'" Id. at 413 (citation omitted, emphasis in original). Applying this standard, the court held that the offense of conviction "requires only that a defendant 'knowingly possess[ ], manufacture[ ], transport[ ], repair[ ], or sell[ ] . . . a short-barrel firearm[.]' . . . . '[P]hysical force against the person or property of another need not be used to complete [that] crime.' Instead, it is complete upon, *inter alia*, mere knowing possession of the weapon." Id. at 414 (citations omitted).

The Defendant argues that Serafin and Diaz-Diaz reveal that section 231(a)(2) is not a crime of violence because, like the possessory offenses at issue in these cases, the mere transporting of a firearm while having a certain intent does not involve the substantial risk of physical force. The Government responds that the act of transporting as well as the intent required in section 231(a)(2) distinguish section 231(a)(2) from other offenses criminalizing the possession of firearms.

Other courts have recognized that the intent element can transform the possession of a firearm into a crime of violence. In Serafin, the court observed that the offense of possession of an unregistered firearm "does not have an element requiring an 'intent to use' the unregistered weapon" and distinguished Third Circuit case law in which the element of intent had made the possession of a firearm a crime of violence. 562 F.3d at 1115. In Henry v. Bureau of Immigration and Customs

Enforcement, the Court of Appeals for the Third Circuit concluded that the criminal possession of a weapon with the intent to use it unlawfully against another was a crime of violence under section 16(b). 493 F.3d 303, 309-10 (3rd Cir. 2007). Examining the analysis in Leocal, the court observed that "applying the categorical approach and our §16(b) jurisprudence, our inquiry is whether the possession of a loaded firearm with intent to use the same unlawfully against another involves a substantial risk that the actor will intentionally use physical force in committing his crime." Id. at 307. "[C]ertainly if someone intends to use physical force there is a substantial risk that physical force may be used." Id. at 308-09. Intent involves either the conscious desire to cause a certain result or the knowledge that acting in a certain way will inevitably cause the result. Id. at 309 (citing the Third Circuit's Model Criminal Jury Instructions). Thus, the Henry court concluded that "proof of the intent element creates the substantial risk that physical force will be used during the commission of the offense" thereby satisfying section 16(b). Id. at 309-10.

Like the offense examined in Henry, section 231(a)(2) requires more than the possession of a firearm or even the transporting of a firearm in commerce. Section 231(a)(2) criminalizes transportation of a firearm with the intent to further a civil disorder, which, by its definition, involves violent acts and immediate danger to another's person or property. In analyzing the constitutionality of section 231(a)(2), the undersigned found [Doc. 68, p.4] that the thrust of the statute is to prohibit the bringing of a gun or bomb or incendiary device to further a public disturbance involving acts of violence by a group of three or more people. The statute addresses the escalation of danger caused by bringing a weapon into a situation involving acts of violence by a person who intends or knows, or has reason to know that the weapon will be used to promote those violent acts. The Court observed that a person can be prosecuted for violating section 231(a)(2), even if the civil disorder

does not ultimately occur, because the person acted to further violent acts. See United States v. Featherstone, 461 F.2d 1119, 1122 (5th Cir. 1971) (holding, with regard to a different subsection of 231, that the government may properly prosecute action in furtherance of a civil disorder even before the civil disorder occurs), cert. denied, 409 U.S. 991(1972). Thus, because the actor intends to further a civil disorder, section 231(a)(2) involves a substantial risk that physical force against another or against property will occur during its commission.

In conclusion, the Court finds that transporting a firearm in commerce while having the intent to further a civil disorder is a crime of violence under section 924(c)(3). Accordingly, the Court recommends that the Defendant's Motion to Dismiss Count Two Because Its Predicate Crime is Not A "Crime of Violence" [Doc. 30] be denied.

### D. Insufficient Proof

Finally, the Defendant moves [Doc. 31] to dismiss the Superseding Indictment because the Government cannot prove, as a matter of law and in light of undisputed facts, that he had the requisite intent required by the statute. The Government responds [Doc. 41] that the facts relating to the Defendant's intent are in dispute and, thus, the question of whether the Defendant had the intent required by the statute is a matter for the jury to determine at the trial of this case.

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). Specifically, a defect in the indictment, such as its failure to state an offense, can be challenged before trial. Fed. R. Crim. P. 12(b)(3)(B). Moreover, the Court "may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion so long as the court's findings on the motion do not

invade the province of the ultimate finder of fact." United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976). Resolution of a pretrial motion to dismiss the indictment for failure to state an offense is appropriate when the "facts surrounding the alleged offense [are] virtually undisputed and trial of the substantive charges would not substantially assist the court in deciding the legal issue raised by the motion to dismiss the indictment." Id. at 665. In Jones, the appellate court held that the district court properly decided the defendant's motion to dismiss the indictment "because [the motion] raised the legal question of whether [the statute at issue] was intended to apply to interspousal wiretaps" and the facts relating to the issue were "virtually undisputed[.]" Id.

Similarly, in United States v. Levin, the Court of Appeals for the Sixth Circuit determined that "the district court concluded from undisputed extrinsic evidence that a Federal Rule of Criminal Procedure 12(b) pretrial motion to dismiss the indictment was well-taken because the government was, as a matter of law, incapable of proving beyond a reasonable doubt the intent required to convict the appellees of the controversial counts of the indictment which were dismissed with prejudice." 973 F.2d 463, 470 (6th Cir. 1992). The court held this disposition of the case upon a pretrial motion was appropriate because the motion raised "a legal issue, namely the ability of the government to prove intent which was an integral element of [the statute charged] . . . after the trial court had considered undisputed extrinsic evidence." Id.

From these cases and Rule 12(b), the Court distills two requirements for addressing a motion to dismiss the indictment which alleges that the government cannot establish the offense charged as a matter of law: (1) the issue raised must be a question of law and (2) the relevant facts must be undisputed. Levin, 973 F.2d at 470; Jones, 542 F.2d at 665. The undisputed nature of the evidence is an important predicate to a court's determination of a motion to dismiss the indictment. If the

evidence relating to the issue raised by the parties is disputed, the court runs the risk of treading upon the role of the grand jury:

> When a body of citizens, properly chosen and constituted as a grand jury, finds probable cause to believe that a crime has been committed within its jurisdiction, that finding is sufficient to require a trial. The indictment is not evidence, as every petit jury in a criminal case is instructed. The prosecution must still produce evidence from which the trial jury can find every element of the offense proven beyond a reasonable doubt, or the defendant is entitled to a judgment of acquittal. However, the prosecution's evidence is tested at trial, not in a preliminary proceeding.

United States v. Short, 671 F.2d 178, 183 (1982); see also Levin, 973 F.2d at 472 (Boyce, J., dissenting) (decrying "the district court's pre-trial decision that the government would not be able to establish the requisite criminal intent at trial [as being], in essence, a decision that the indictment was based on insufficient or inadequate evidence").

In the present case, the Defendant asserts that the undisputed evidence in this case reveals that the Government cannot prove that he transported a firearm with the intent that it be used unlawfully in furtherance of a civil disorder. He contends that his statements prior to, during, and after his trip to Madisonville, Tennessee, on April 20, 2010, show his lack of knowledge or intent to use his gun in furtherance of any violence which could constitute a civil disorder. The affidavit in support of the criminal complaint [Doc. 3] filed in this case states that on April 15, 2010, the Defendant told Robert Shane Longmire that he and eight or nine other Georgia militia groups were planning to travel to Madisonville on April 20 to "take over the city." The affidavit also states that following a traffic stop on April 20, 2010, the Defendant told Lieutenant Don Williams of the Tenth Judicial District Drug Task Force that if enough people were present in Madisonville, they were going to take over the Monroe County Courthouse. The Court finds that these statements in the

affidavit supporting the criminal complaint reveal that the Defendant's intent is a disputed issue of fact for the jury to determine. Moreover, the Court finds that because the dispute turns upon purely factual issues, if this Court were to hold an evidentiary hearing to resolve the matter as requested by the Defendant, it would be treading upon the grand jury's probable cause determination and usurping the province of the jury. Accordingly, the Court recommends that the Defendant's Motion to Dismiss Indictment [Doc. 31] also be denied.

## III. CONCLUSION

After carefully considering the motions, memoranda, oral arguments, and relevant legal authorities, the Court finds no basis to dismiss the Superseding Indictment. For the reasons set forth herein, it is **RECOMMENDED** that the Defendant's motions to dismiss the indictment [**Docs. 30, 31, 32, and 34**] be **DENIED**.[13]

Respectfully submitted,

_____s/ H. Bruce Guyton_____
United States Magistrate Judge

---

[13]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).