UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:10-CR-73 |
| | ) | (VARLAN/GUYTON) |
| DARREN WESLEY HUFF, | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This criminal action is before the Court on the Report and Recommendation (the "R&R") [Doc. 62], entered by U.S. Magistrate Judge H. Bruce Guyton. The defendant, Darren Wesley Huff, is charged in a superseding indictment with the alleged offenses of transporting a firearm in furtherance of a civil disorder in violation of 18 U.S.C. § 231(a)(2) and using a firearm in relation to a felony crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) [Doc. 19].

The defendant filed a motion to suppress on grounds that the police violated his rights under the Fourth Amendment to the United States Constitution by making a traffic stop without probable cause to believe that a traffic offense had occurred [Doc. 22]. Defendant asserted that all evidence obtained after the stop, including evidence that the defendant possessed a gun, his statements made to officers at the scene, and any statements made by his passenger who would not have been identified absent the stop, must be suppressed [Doc. 62]. The government filed a response in opposition [Doc. 38], and the parties then appeared

before Magistrate Judge Guyton for a hearing on the matter [Doc. 62]. Following the hearing, counsel requested leave to file post-hearing briefs, which Magistrate Judge Guyton granted [*Id.*]. The government filed its brief, and the defendant requested, and was granted, additional time in which to file his brief, which he subsequently filed [*Id.*].

In the R&R, Judge Guyton finds no basis to suppress the evidence and recommends that the motion be denied [*Id.*]. The defendant filed objections to the R&R [Doc. 65], and the government filed a response to those objections [Doc. 66]. For the reasons set forth herein, the Court will overrule the defendant's objections [Doc. 65], accept in whole the R&R [Doc. 62], and deny the defendant's motion to suppress [Doc. 22].

## I.    Background Facts[1]

On April 20, 2010, Trooper Michael Wilson ("Trooper Wilson") of the Tennessee Highway Patrol ("THP") was on patrol in Monroe County, Tennessee [Doc. 62].[2] Trooper Wilson was on "special assignment" from the Homeland Security Lieutenant for the THP to patrol and provide safety to the public regarding threats to public safety potentially occurring in connection with a court proceeding for Walter Fitzpatrick at the Monroe County Courthouse in Madisonville [*Id.*]. At a briefing that morning, Trooper Wilson was informed

---

[1] At the motion hearing, Magistrate Judge Guyton heard the testimony of Trooper Michael Wilson and William Michael Norris Desilva [Doc. 62]. The findings of fact in the R&R are based on the testimony of these witnesses, the evidence presented at the hearing, and the briefs filed by the parties [*See id.*]. The defendant objects to portions of the magistrate judge's findings of fact, along with his legal analysis and conclusions. The Court has noted and considers such objections herein.

[2] As of April 20, 2010, Trooper Wilson had thirteen years of experience with the THP and had made thousands of traffic stops based on violations of traffic laws [Doc. 62].

that persons coming from surrounding counties and "from the state of Georgia" had threatened to make "citizens arrests" of Monroe County public officials. [*Id*.]. Other than Fitzpatrick and a mention of "the militia," Trooper Wilson was not given the names of any person or specific group that was of interest that day [*Id*.].

While on patrol on Interstate 75 North between 6:50 a.m. and 7:00 a.m., Trooper Wilson spotted a black pickup truck with "suspicious indicators" on it: the words "OATH KEEPERS" in large writing on the back window, the words "Not on our watch!" on the bumper, and a pro-militia bumper sticker [*Id*.]. The truck also had a personalized Georgia license plate that read "IM LIT" [*Id*.].

Trooper Wilson followed the truck as it took the exit 60 ramp toward Madisonville, and observed the truck commit two traffic violations for which he initiated a traffic stop: following too closely and running a stop sign [*Id*.]. At the hearing, Trooper Wilson testified that he saw the defendant's truck "traveling to close in an unsafe position behind a gray Honda passenger car" and that he then saw the defendant's truck proceed past a stop line and make a "very brief rolling stop" at the intersection of the exit ramp and Highway 68 [*Id*.]. Trooper Wilson testified that, before initiating the traffic stop, he did not know who was in the truck, nor could he discern the number of occupants in the truck due to the truck's tinted windows [*Id*.]. He also testified that he did not "run the tags" prior to the stop, and that he had never heard of the Oath Keepers prior to stopping the defendant [*Id*.].

The in-cruiser video showing the events upon which Trooper Wilson based his decision were played during the hearing [*Id*.]. The video begins at 7:08 a.m. [*Id*.]. Trooper

3

Wilson testified that, at the 7:09 a.m. mark in the video, the defendant's truck is following too closely, "within a car length[,]" which Trooper Wilson described as "unsafe" [*Id.*]. The video then shows the defendant's truck traveling through the intersection, where there is a stop line and a stop sign [*Id.*].

Trooper Wilson testified that the video shows that a tractor trailer truck was on the exit ramp in front of the Honda, which was in front of the defendant's truck, and that he was directly behind the defendant and that the defendant slowed down as he approached the end of the exit ramp [*Id.*]. Trooper Wilson also testified that, at 7:09:04 a.m. on the video, the tractor trailer was stopped at the intersection at the end of the exit ramp and that, at this point, the defendant applied his brakes and nearly hit the Honda in front of him [*Id.*]. The trooper indicated that he did not believe there was a car-length amount of space between the Honda and the defendant's truck, and that following too closely could result in a crash [*Id.*].

Trooper Wilson also testified that at 7:09:09 a.m. on the video, the tractor trailer was turning right at the intersection, that the Honda stopped behind the tractor trailer, and that the defendant's truck stopped abruptly behind the Honda, nearly hitting it [*Id.*]. Trooper Wilson admitted, however, that the Honda did not stop at 7:09:07 a.m. on the video [*Id.*]. Further, Trooper Wilson testified that once the Honda was through the intersection, the defendant's truck approached the intersection and made a rolling stop, lasting "less than one second" [*Id.*]. Although he acknowledged that the defendant's brake lights were on at 7:09:16 a.m., Trooper Wilson opined that this maneuver was not a "controlled stop" or a "legal stop" [*Id.*].

4

With respect to Tennessee law, Trooper Wilson read Tennessee Code Annotated 55-8-124(a) and opined that the defendant followed another vehicle too closely on the morning of April 20, 2010 [*Id.*]. He stated that the statute does not speak in terms of the number of seconds or feet that must be between vehicles, but he generally looks at whether a third vehicle would be able to get between the two vehicles that are following each other [*Id.*]. Trooper Wilson denied using his own "personal safety standards" when enforcing the traffic laws [*Id.*].

With respect to the Tennessee law on stop signs, Trooper Wilson read Tennessee Code Annotated 55-8-149(c) and opined that the defendant did not comply with the statute on April 20, 2010 [*Id.*]. Trooper Wilson testified that a vehicle has to come to a "true stop" behind the "reference line" before turning once it is safe to do so [*Id.*]. He indicated that the "stop line" is the line painted on the pavement perpendicular to the intersecting roadway and that the stop line does not go all the way across the intersection [*Id.*]. He also stated that one must come to a "safe stop" that allows full control of the vehicle and the opportunity to view the traffic in front of him or her in order to comply with the law [*Id.*]. Regarding the stop line at the intersection at issue, Trooper Wilson identified a photograph of the line at the hearing taken five months after the stop, but admitted that the line was covered with debris or a shadow [*Id.*].

With respect to the stopping of the defendant, Trooper Wilson testified that the defendant immediately pulled over and stopped after Trooper Wilson turned on his emergency lights at 7:09:24 a.m. [*Id.*]. At that time, Trooper Wilson attempted to radio

dispatch but had trouble getting through, and instead used his cellular telephone to call in the stop [*Id*.]. Meanwhile, at 7:09:26 a.m. on the video, the defendant stuck his hands out the driver's window and got out of the truck with his hands up [*Id*.]. At 7:12:33 a.m., the passenger in the defendant's truck, William Michael Norris Desilva, got out of the truck and was directed to walk backward toward Trooper Wilson's car [*Id*.].

When he exited the truck, the defendant was wearing a pistol on a holster belt, so Trooper Wilson disarmed him [*Id*.]. Trooper Wilson then took the defendant to the back of the patrol car where the defendant produced a Georgia driver's license and a Georgia handgun carry permit (the "HCP"); he, however, did not provide proof of registration for the vehicle [*Id*.]. Trooper Wilson asked the defendant if there were more guns in his truck and whether he could search the truck [*Id*.].[3] The defendant stated that he did not have any violent intentions [*Id*.].

Trooper Wilson determined that the defendant's driver's license was valid [*Id*.]. Trooper Wilson, however, was suspicious of the authenticity of the HCP because it "looked unprofessional," having a different appearance than the carry permits of "most states" [*Id*.]. Trooper Wilson attempted to verify the HCP through law enforcement but was told that the Georgia handgun carry permits were issued by the local probate judge in each county [*Id*.].

---

[3] Within minutes of stopping the defendant's truck, three other law enforcement vehicles arrived to assist Trooper Wilson: a SUV, which stationed itself nearby on the side of the road, his partner Trooper Kelly Smith, and a lieutenant from the Tenth Judicial Task force [Doc. 62]. During the course of the stop, beginning at 7:19:35 during the video, two trained police dogs, a drug dog and a bomb-sniffing dog, were led around the defendant's truck, but neither alerted [*Id*.].

He attempted to contact the clerk's office in Paulding County, Georgia, but had no success [*Id.*]. On cross-examination, Trooper Wilson agreed that the stop lasted over an hour due to this exercise, but his suspicious were heightened and he felt he had to verify the HCP because the defendant stated that the FBI had been to his house [*Id.*]. Trooper Wilson also agreed that the HCP had a raised circular imprint and an expiration date of January 15, 2015 [*Id.*].

Trooper Wilson returned the pistol to the defendant around 8:14 a.m. and explained that the defendant would not be able to take it into a courthouse [*Id.*]. He then gave the defendant three "warning citations" for following too closely, a stop sign violation, and a violation of the registration law and released him [*Id.*]. When Trooper Wilson gave the warning citations, he told the defendant that they would not "cost" him or go on his record [*Id.*]. Trooper Wilson and the defendant then shook hands and Trooper Wilson said, "I appreciate you" and "be careful" [*Id.*]. The defendant, despite having been released, then made a strong statement in a raised voice that caught Trooper Wilson's attention [*Id.*]. Trooper Wilson then engaged in a conversation with the defendant and requested some of his brochures [*Id.*]. The defendant left the scene thirty minutes after being released [*Id.*].

William Michael Norris Desilva ("Desilva") also testified at the hearing [*Id.*]. Desilva testified that he lives in Dallas, Georgia, attends church with the defendant, and accompanied the defendant to Monroe County on April 20, 2010 due to his interest in citizen's arrests and criminal justice [*Id.*]. Desilva further testified that he had not slept before meeting the defendant at 5:00 a.m. on April 20, 2010 to ride as a passenger in the defendant's truck [*Id.*].

7

With respect to the stopping of the defendant, Desilva testified that when the defendant exited Interstate 75 toward Monroe County, he looked in the side mirror of the truck and saw a state trooper behind them, and then informed the defendant of the trooper [*Id*.]. Desilva indicated that the defendant's speed decreased as they traveled the uphill slope of the exit ramp and that the defendant came "to a complete stop before he took off into traffic" [*Id*.]. Desilva remembered the defendant stopping because Desilva does not like traveling on the interstate and his senses were heightened after noticing the trooper behind them [*Id*.]. Desilva also testified that he recalled "staring at the dash and as the vehicle was coming to a stop my body's inertia pressing against the seat belt and being thankful for . . . the fact we stopped" [*Id*.]. Although Desilva recalled that there was another vehicle in front of them, he testified that the defendant did not slam on his brakes or almost collide with it at any point on the exit ramp [*Id*.]. Desilva also testified that the defendant's license plate "IM LIT" referred to the defendant's former outdoor lighting business [*Id*.].

On cross-examination, Desilva testified that he saw the defendant carrying a Colt .45 on April 20, 2010, and that such was not unusual [*Id*.]. He further testified that, although the defendant did not stop "suddenly" and that the stop was not "violent" or "aggressive," he remembered "pressing into the seatbelt," a sensation he "pretty much feel[s] . . . every time" he stops [*Id*.]. In addition, he testified that he did not remember where the defendant stopped in relation to the stop sign or the vehicle traveling in front of the defendant's truck [*Id*.]. On re-direct examination, Desilva testified that the defendant stopped before "he was in traffic" [*Id*.].

## II. Analysis

### A. Standard of Review

As required by 28 U.S.C. § 636(b)(1) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, the Court has undertaken a *de novo* review of those portions of the R&R to which the defendant has objected. In doing so, the Court has carefully considered the R&R [Doc. 62], the parties' underlying and supporting briefs, [Docs. 22, 38, 58, and 60], the transcript from the motion hearing [Doc. 55], the defendant's objections [Doc. 65], and the government's response to those objections [Doc. 66], all in light of the relevant law.

### B. The Report and Recommendation of Magistrate Judge Guyton

Magistrate Judge Guyton finds that, because Trooper Wilson had probable cause to stop the defendant for the traffic violations he observed, the stop provides no basis for the suppression of evidence [Doc. 62]

With respect to Trooper Wilson's belief that the defendant committed the traffic offense of following too closely, Magistrate Judge Guyton discusses the relevant Tennessee statute and finds that Trooper Wilson's testimony (*i.e.*, that he observed the defendant truck travel on the exit ramp so closely behind a gray Honda that he deemed the distance to be unsafe, that there was not a car-length of space between the Honda and the defendant's truck, and that he saw the defendant apply his brakes and nearly hit the Honda as the Honda approached the end of the exit ramp) reveals that he had probable cause to believe the defendant was following the Honda too closely in violation of Tennessee Code Annotated § 55-8-124(a) [*Id.*].

With respect to Trooper Wilson's belief that the defendant violated the law by failing to observe the stop sign at the intersection of the exit ramp and Highway 68, Magistrate Judge Guyton sets forth the relevant Tennessee law and finds that Trooper Wilson had probable cause to believe that the defendant violated the law, which required the defendant to come to a complete cessation of movement before crossing the stop line and/or entering the intersection [*Id*.]. In so finding, Magistrate Judge Guyton relies upon Trooper Wilson's testimony that the defendant's truck made "a very brief rolling stop" after it was beyond the stop line at the intersection, where there is a stop sign, rather than a "true," "controlled," "legal," or "safe" stop that would have allowed him to be in full control of his vehicle [*Id*.].

In addition, Magistrate Judge Guyton rejects the defendant's contention that the video of the events in question establishes that he was not following too closely and that he did not come to a brief stop at the stop sign [*Id*.]. On the basis of his review of the video, Magistrate Judge Guyton finds it to fully corroborate Trooper Wilson's testimony with respect to the defendant following the Honda too closely because, at the time the defendant's truck and the Honda are at the midway point of the exit ramp, the defendant's truck is less than a car length from the Honda, and, at the time the two vehicles reach the top of the ramp, the defendant's truck is within a few feet of the Honda [*Id*.]. With respect to the defendant stopping completely before the stop line, Magistrate Judge Guyton indicates that the video does not allow for one to determine whether the defendant's truck was in the intersection at the time the defendant contends he applied his brakes and paused briefly, but that such is irrelevant because the video in no way contradicts Trooper Wilson's testimony [*Id*.]. The magistrate

judge also notes that Trooper Wilson was in a better position to determine where the defendant was in relation to the intersection and the stop sign when he made the "rolling stop" and that the probable cause standard does not require that the trooper witnessed the traffic violation beyond a reasonable doubt or by clear and convincing evidence [*Id*.]. Given the road conditions, the trooper's clear view of the defendant's driving, and the fact that the defendant paused for less than one second before traveling into the intersection, Magistrate Judge Guyton concludes that Trooper Wilson had more than a mere suspicion that the defendant had violated the traffic laws regarding stop signs and had reasonable grounds to believe that there was a substantial chance that the defendant had failed to make a proper stop [*Id*.].

Magistrate Judge Guyton also rejects the defendant's contention that the testimony of Desilva forecloses the trooper's determination that the defendant was following the Honda too closely and failed to come to a complete stop before entering the intersection because, although Desilva testified that the defendant never slammed on his brakes nor nearly collided with the Honda, Desilva never testified with regard to how closely the defendant was following the Honda [*Id*.]. Likewise, although Desilva testified that the defendant came to a complete stop, he did not recall where the defendant stopped in relation to the Honda, the stop sign, or the stop line [*Id*.].

Finally, Magistrate Judge Guyton rejects the defendant's argument that Trooper Wilson's true reason for stopping the defendant was to engage in a fishing expedition where no traffic violation had actually occurred because of his finding that the trooper had probable cause for stopping the defendant [*Id.*].

### C. The Defendant's Objections to the R&R

The defendant asserts that the R&R "errs in making the following findings of fact: 1) that the evidence supports a finding that Mr. Huff was following too closely to the car in front of him as that offense is defined by Tennessee state law; 2) that a 'stop line' existed at the intersection, 3) that Mr. Huff failed to stop before entering the intersection as required by Tennessee state law, and 4) that the trooper had a reasonable belief, based on those facts, that Mr. Huff had committed traffic offenses that justified the stop and seizure of his person" [Doc. 65]. The defendant further asserts that his "vehicle was pulled over as part of a pretextual stop in the hope that evidence of a crime might eventually be discovered" [*Id.*].

In response, the government contends that the threshold issue is the defendant's fourth objection because the relevant question under Sixth Circuit law is "whether or not it was demonstrated that the officer had 'reasonable grounds for belief supported by less that [sic] prima facie proof but more than mere suspicion' to believe traffic violations occurred . . . , not whether any traffic violation was actually proved at the suppression hearing beyond a reasonable doubt, or even by clear and convincing evidence" [Doc. 66 (citation omitted)]. The Court agrees and finds that, even if the defendant's first three objections have merit, if Trooper Wilson had reasonable grounds to believe that a traffic violation occurred, supported

12

by less than prima facie proof but more than mere suspicion, then Magistrate Judge Guyton's recommendation should be enforced, regardless of whether the trooper chose to exercise his discretion in enforcing traffic laws to stop the defendant for other reasons. *See Whren v. United States,* 517 U.S. 806 (1996) (holding that "[a]s a general matter, the decision to stop an automobile is reasonable [within the meaning of the Fourth Amendment] where the police have probable cause to believe that a traffic violation has occurred"); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) ("We hold that so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment.") (citation omitted); *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (citation omitted) (defining probable cause).

Magistrate Judge Guyton finds that "[b]ased on his personal observations, Trooper Wilson had probable cause to believe that the driver of the pickup truck had committed two traffic violations[:]" following too closely and failure to stop at a stop sign [Doc. 62]. This Court has reviewed the testimony of Trooper Wilson and Desilva as well as the video of the traffic stop and agrees with this conclusion.

The defendant has presented nothing to convince this Court that Trooper Wilson did not have probable cause to believe that the defendant was following the Honda too closely. At best, the defendant argues that, in pulling over the defendant for not having a car's length of space between the defendant's truck and the Honda, the trooper was holding the defendant, not to legal requirements under Tennessee law, but to safety standards taught as part of drivers' education classes. This argument, however, is unconvincing because

13

"[t]hough the statute does not define 'reasonable and prudent,' the Tennessee drivers' manual provides that vehicles should maintain at least one car length for every ten miles per hour." *United States v. Walton*, 258 F. App'x 753, 756-57 (6th Cir. 2007) (citing *United States v. Sanford*, 476 F.3d 391 (6th Cir. 2007)).

Likewise, the defendant has presented nothing to convince this Court that Trooper Wilson did not have probable cause to believe the defendant failed to stop at the stop sign. The defendant argues that he did in fact stop at the intersection where the stop sign was located, but he concedes that any such stop was "brief," and the Court's review of the video demonstrates that the defendant stopped, at most, for a second before entering the intersection. The law requires that a "stop" is a "complete cessation from movement," and nothing presented to Magistrate Judge Guyton or the undersigned suggests that the defendant's vehicle ceased from moving before entering the intersection. Moreover, whether a stop line existed at the intersection is of no consequence because the relevant statute provides that a vehicle must nevertheless stop before entering the intersection. *See* Tenn. Code Ann. § 55-8-149(c).

The defendant argues that the trooper had a mistaken view of the law, but this argument is without merit. In support of this contention, the defendant cites *United States v. Lopez-Soto*, 205 F.3d 1101 (9th Cir. 2000), among other cases. In *Lopez-Soto*, the conduct relied upon in stopping the defendant was not actually prohibited. 205 F.3d at 1103 (finding that an officer violated the Fourth Amendment in stopping the defendant based on his erroneous belief that a vehicle registration sticker had to be visible from the rear window,

when the applicable law required the stick be displayed on the windshield). Such is not the case here. The defendant has pointed to nothing even suggesting that Trooper Wilson's view of the law regarding following too closely or failing to stop at a stop sign was incorrect.

The defendant's argument that his vehicle was pulled over as part of a pretextual stop in the hope that evidence of a crime might be discovered also lacks merit. As an initial matter, Trooper Wilson's ulterior motivations, if any, are irrelevant. *Whren*, 571 U.S. at 813 ("Subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis."). Nevertheless, Magistrate Judge Guyton did not base his finding of probable cause on any belief of the trooper that pulling over the defendant's truck would reveal criminal activity. Rather, the magistrate judge found probable cause existed under the relevant law to stop the truck because it was following the Honda too closely and because it failed to stop at a stop sign. As indicated above, the Court agrees with such conclusions.

In sum, after reviewing the R&R, the underlying briefs, the relevant law, the transcript from the hearing, the video of the traffic stop, the defendant's objections to the R&R, and the government's response to the defendant's objections, the Court determines that the magistrate judge fully and appropriately considered the defendant's arguments in support of his motion to suppress. As the Court agrees with the magistrate judge's analysis and findings, the defendant's objections are overruled.

## III. Conclusion

For the all the reasons explained above, the Court **OVERRULES** the defendant's objections [Doc. 65] to the R&R and **ACCEPTS IN WHOLE** the R&R [Doc. 62]. The defendant's motion to suppress [Doc. 22] is hereby **DENIED**.

IT IS SO ORDERED *NUNC PRO TUNC* January 28, 2011.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE