IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:10-CR-73 |
| Plaintiff, | ) | JUDGE VARLAN |
| v. | ) | |
| | ) | |
| DARREN WESLEY HUFF, | ) | |
| Defendant. | ) | |

## MOTION TO DISMISS FOR INEFFECTIVE ASSISTANCE OF COUNSEL

COMES the Defendant in the above-entitled action, Darren Wesley Huff, and moves this Court to dismiss the indictment against him for the reason that said counsel is not only ineffective, he appears to be either incompetent or attempting "to sell the Defendant down the river."

See Memorandum of Law in Support, attached hereto.

WHEREFORE, Defendant Darren Wesley Huff Defendant moves this Court to dismiss the indictment against him, *with prejudice*.

Respectfully submitted,

Dated: July 13, 2011

Darren Wesley Huff
617 Shoals Trail
Dallas, GA 30132

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:10-CR-73 |
| Plaintiff, | ) | JUDGE VARLAN |
| v. | ) | |
| | ) | |
| DARREN WESLEY HUFF, | ) | |
| Defendant. | ) | |

**FILED**
JUL 1 5 2011
Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS FOR INEFFECTIVE ASSISTANCE OF COUNSEL

COMES the Defendant in the above-entitled action, Darren Wesley Huff, and would show this Court the following.

1. Defendant Darren Wesley Huff ("Huff") has repeatedly requested his assigned counsel to file two (2) pretrial motions. Those motions are attached hereto as Exhibits A and B, respectively.

2. The history of those refusals is as follows:

On, or about, March 25, 2011, Huff spoke with his public defender, Jonathan Moffatt ("Moffatt"), concerning two motions that were sent to be filed. Huff had previously communicated with Moffatt via email, with the original request to file on March 7, 2011.

In his original response, Moffatt stated that he, and the others who are involved in Huff's defense, found the motions to be very interesting, with "some valid points," but that he would not file them, due to them not being according to their plan. Huff urged Moffatt to file them, but the most he was willing to do was file them, without adopting

them.

>Huff then sent the following email on March 13, 2011:

>>Jonathan,

>>After careful consideration of our last conversation, I am asking you to reconsider your position on the two motions that I sent. While I am aware and respectful of our differing views of my case—it is still my case. Upon reflecting on our history together, it is more apparent that I have little to no input concerning my defense. While I do believe that you are doing an above average job, along with Ann: this is still my life, and I insist on doing all that I can to preserve and defend myself, with your "counsel."

>>Please do not silence me in my own defense. If you are truly seeking a proper and thorough defense for me, then adopt these two motions, and file them. While you may believe them to contain little current relevance, Jonathan—they are still valid. As you may, or may not be aware, your view of these motions is at the heart of what is wrong with the system that you work for. According to your view, the law is whatever the whim of the day is. That is not how this country was founded. The Constitution is not a living-breathing document: it is what men have died for. It is solid, and unbendable.

>>These two motions identify two key areas that have served to wrongfully incriminate and oppress the American people. What was wrong 200+ years ago is still wrong today.

>>It is not a request: please adopt them, and file them at your earliest convenience.

The next communication between Moffatt and Huff concerning these motions was on March 25, 2011. Moffatt responded to the email via the telephone and told Huff that he would not adopt the motions.

After Huff asked Moffatt for his reason, Moffatt stated that they felt as though they were well written and clear, but that they had "no current legal merit." Huff was not clear as to the meaning of the phrase "no current legal merit," so he inquired further.

3

Huff and Moffatt began discussing specifically the motion for dismissal due to violations of the Fifth Amendment. Moffatt stated that there was not enough "case law" to support the motion.

Huff then asked whether or not the motion had validity. Moffatt acknowledged that it did but again stated that it would not be adopted and filed because they base their motions on case law. Moffatt repeated that the motion in question had "no current legal merit."

Huff then, in an attempt to have Moffatt adopt the motions, briefly recapped his history with Federal Defender Services ("FDS"), and Moffatt in particular. Huff stated that at no time have they done anything that Huff had requested.

Huff believed that his personal belongings had been illegally seized, and had requested numerous times that they attempt to have the property returned but they had refused.

The two motions were simply the latest refusal by FDS to truly represent Huff and his interests. Huff had pleaded with Moffatt to do at least one thing that he had requested: feeling that he should, at least, have input on the direction of his case. Moffatt acknowledged the fact that they have refused Huff's every request since the beginning, but stated that they have Huff's interest in mind.

Huff asked how Moffatt could state that they were "representing" him, if they do not reflect Huff's wishes. The conversation turned somber, and Huff asked Moffatt plainly whether he was going to file the motions or not. Moffatt responded in a disgusted tone, "Look Darren, we're not going to turn the entire system on its head with your case.

4

We're just not going to do it. I will not adopt these motions."

The conversation then ended.

3. Not one single motion public defender Jonathan Moffatt has filed, on his own, has been granted. Every motion he has filed has been DENIED.

There can only be one of two reasons for those denials.

a. The Court is denying every single motion merely to demoralize the Defendant into taking a "plea bargain."

b. Public defender Jonathan Moffatt is simply incompetent.

Pursuant to this Court's Order of May 5, 2011, it appears to be the latter:

> In sum, because the Court finds the defendant's objections lacking in merit and because the Court finds that the magistrate judge correctly addressed the issues raised in the defendant's motion to dismiss, the defendant's objection will be overruled.

Court's Order of May 5, 2011.

The obvious question here is: why is it that public defender Jonathan Moffatt can file motions "lacking in merit" and the Defendant is not able to file motions that public defender Jonathan Moffatt finds "lacking in merit"?

Whether a motion "lacks merit" or not should be determined by a *federal judge*, not an attorney so incompetent he cannot win a *single motion*.

The most recent correspondence from public defender Jonathan Moffatt is as follows:

> Darren: This e-mail will confirm that I decided not to file a number of motions which you requested that I file during this case because I did not believe the motions had legal merit. This e-mail will also confirm that I or other lawyers assigned to your case filed a number of motions on your

5

behalf which to date have been denied by the court.

I spoke to the prosecutor again who told me that if there were to be discussion regarding a plea to count 1 and a dismissal of count 2, they would engage in a discussion as to what sentencing guidelines would apply to a conviction for count 1. Clearly, our goal in any such discussions would be to create the strongest likelihood of a sentence of probation. I understand that you have not accepted that offer. The prosecutor reiterated that they would lose incentive to settle after a couple of weeks because the trial prep would begin. I do not believe that means that there would be no chance at a settlement from that point.

Statement made by public defender Jonathan Moffatt.

4. This is *not* how "assistance of counsel" is supposed to work.

## ARGUMENT

The relationship between a lawyer and the client is one of agent and principal. *In re Artha Management, Inc.*, 91 F.3d 326, 328 (2d Cir. 1996). The decision to settle a case rests with client. *Id.* at 329.

The relationship of principal and agent depends...upon the principal having "the right to control the conduct of the agent with respect to matters entrusted to [the agent]." Restatement (second) of Agency 14 (1958). *Transamerica Leasing v. La Republica De Venezuela,* 200 F.3d 843, 849 (D.C. Cir. 2000).

An attorney cannot represent in contravention of a client's explicit instructions to contrary. *Trulis v. Barton,* 107 F.3d 685, 693 (9th Cir. 1995). An attorney must follow a client's specific instructions. *Id.* at 694.

The client is master of his own defense. *United States v. Teague,* 953 F.2d 1525, 1533 (11th Cir. 1992); *United States v. Moody*, 977 F.2d 1425, 1430 (11th Cir. 1992).

An attorney must be zealous and active. *Powell v. Alabama*, 287 U.S. 45, 58,.53

6

S.Ct. 55, 60 (1932).

An attorney's mistakes are imputed to the client. *United States v. Commodity, Account No. 549 54930,* 219 F.3d 595, 598 (7th Cir. 2000).

Counsel who is only interested in discussing potential plea bargains is ineffective. *Sanchez v. Mundragon,* 858 F.2d 1462, 1466 (10th Cir. 1988).

There should be protection of the public from incompetent, unethical, or irresponsible representation. *The Florida Bar v. Moses,* 380 So.2d 412, 417 (Fla. 1980).

Finally, though the following appears to be from the dissenting opinions in a death penalty case, some of the principles bear repeating:

> The issue before us implicates the most fundamental and important of all rights—to be represented by effective counsel. All other rights will turn to ashes in the hands of a person who is without effective, professional, and zealous representation when accused of a crime. In my view, counsel here failed in all three areas.
>
> *Rompilla v. Horn,* 359 F.3d 310 (3d Cir. 2004) (Nygaard).
>
> Too often appointed trial counsel lack the experience, training or financial resources necessary to adequately represent those defendants on trial for their life who face the powerful forces of the government. See, e.g., Stephen B. Bright, Counsel for the Poor: The Death Sentence Not for the Worst Crime but for the Worst Lawyer, 103 YALE L. J. 1835, 1862 (1994). In my view, any level of inadequate representation not only undermines the reliability that must be the foundation of our adversarial process, but also heightens the risk that defendants will be convicted and sentenced to death despite their actual or incremental innocence.
>
> *Id.* (footnote omitted).
>
> Ideally, the standard set out in *Strickland v. Washington,* 466 U.S. 668 (1984), should act as a safety net to correct injustices caused by ineffective counsel. I view the results as less than ideal. I begin with the Supreme Court instruction to "indulge a strong presumption that counsel's conduct

7

Case 3:10-cr-00073 Document 102 Filed 07/15/11 Page 7 of 10 PageID #: 817

falls within the wide range of reasonable professional assistance." *Id.* at 689. I submit, however, that where the sanction, once executed, is irreversible, the presumption must be defined narrowly—not widely. Unfortunately, in the twenty years since the standard was set out in *Strickland*, it has degraded. The range of what is deemed "effective" has widened to, in my view, an astonishing spectrum of shabby lawyering. Counsel has been deemed "effective" despite, for example, sleeping through a portion of the case. *See McFarland v. Texas*, 928 S.W.2d 482, 505 (Tex. Crim. App. 1996) (recognizing that defense counsel slept through parts of defendant's capital trial, but deeming him "effective."). Other shocking examples include cases where counsel was intoxicated during the capital trial, *see Haney v. Alabama*, 603 So.2d 368, 377-78 (Ala. Crim. App. 1991); and cases where counsel presented no evidence whatsoever during the sentencing phase, *see Mitchell v. Kemp*, 762 F.2d 886, 888 (11th Cir. 1985). In my view, the majority opinion in this case infuses our jurisprudence with this degraded standard.

*Id.* (footnote omitted).

WHEREFORE, Defendant Darren Wesley Huff moves this Court to dismiss the indictment against him, *with prejudice*.

Respectfully submitted,

Dated: July 13, 2011

Darren Wesley Huff
617 Shoals Trail
Dallas, GA 30132

8

Case 3:10-cr-00073   Document 102   Filed 07/15/11   Page 8 of 10   PageID #: 818

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | Case No. 3:10-CR-73 |
|---|---|---|
| Plaintiff, | ) | JUDGE VARLAN |
| v. | ) | |
| | ) | |
| DARREN WESLEY HUFF, | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

This certifies that I have on this _13_ day of July, 2011, placed a true and exact copy of the

**MOTION TO DISMISS FOR INEFFECTIVE ASSISTANCE OF COUNSEL
with MEMORANDUM IN SUPPORT**

in the U. S. Mail, first class postage prepaid, addressed to:

A William Mackie
U.S. Department of Justice (Knox USAO)
Office of the U.S. Attorney
800 Market Street, Suite 211
Knoxville, TN 37902

865-545-4167

_____
Darren Wesley Huff

9



