IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                   Docket No: 3:10–CR-73
                                                                 Varlan/Guyton
                                                     ORAL ARGUMENT REQUESTED

DARREN WESLEY HUFF,

    Defendant.


**MOTION
FOR NEW TRIAL
OR FOR JUDGMENT OF ACQUITTAL**

      Comes the defendant, Darren Wesley Huff, by and through his undersigned counsel, who respectfully moves this Honorable Court, pursuant to Rules 29 and 33, F.R.Cr.P., to enter an Order wherein a Judgment of Acquittal as to Count I is entered, or in the alternative a new trial is granted. In support of the foregoing, Mr. Huff would show as follows:

      1. There is insufficient evidence within this record to support the jury's verdict in Count I of the superceding indictment. Mr. Huff acknowledges that, subsequent to conviction, the standard for review requires this Court to examine the record and determine if any evidence exists which, if accredited by the jury, will support the verdict. With this standard of review in mind, Mr. Huff respectfully submits that there exists insufficient evidence to support the jury's verdict; in fact the overwhelming weight of the evidence

1

preponderates against the verdict and in favor of Mr. Huff's innocence, to wit:

The entire focus of this case centered upon whether Mr. Huff possessed the requisite *unlawful* intent to violate 18 U.S.C. §231(a)(2). The only evidence of Mr. Huff's purported unlawful intent consisted of various statements accredited to Mr. Huff. Witnesses Shane Longmire and Erica Dupree each testified that, on April 15, 2010, Mr. Huff stated that he was going to "take over the city" (Madisonville) on April 20, 2010. However, Mr. Longmire related a statement he attributed to Mr. Huff about "being on the front line with his AK-47's" which Ms. Dupree did not hear, although she testified she was present for the entirety of the time Mr. Longmire spoke to Mr. Huff. Significantly, the statements each attributed to Mr. Huff came *before* Chuck Reed, FBI, spoke with Mr. Huff on April 19, 2010. Agent Reed testified that Mr. Huff informed him, within the April 19th interview, that Mr. Huff: (i) intended to go to Madisonville the next day, (ii) that he intended to assist in effecting citizen's arrests if the opportunity arose, (iii) that he would be armed with his 45 caliber pistol and AK-47 rifle. Most significantly, Agent Reed testified that Mr. Huff provided Agent Reed with his cellular phone number coupled with a request to "call him if there was a problem." Mr. Huff and his wife, Cindy Huff, each testified that Mr. Huff told Agent Reed that "he would call the whole thing off if there was a problem." Agent Reed did not deny that this statement was made.[1]

Whatever intent Mr. Huff may, or may not have harbored on April 15th while in Georgia is immaterial. Mr. Huff must have harbored an unlawful intent on April 20th when he

---

[1] A separate basis for acquittal premised upon these facts is discussed *infra* within paragraph eleven (11).

traveled from Georgia to Tennessee in order to have violated 18 U.S.C. §231(a)(2). The statements made on April 19th are wholly inconsistent with such an unlawful intent. Moreover, the FBI's inaction validated Mr. Huff's belief that the action he was prepared to take on April 20th was legal. It strikes at the very heart of the concepts of fundamental fairness and due process to permit the government to utilize an obscure statute premised solely upon a person's intent in order to convict that person where such a person (within twenty-four hours prior to the "commission of the crime") was led to believe, by an agent of the government, that his actions were legal. It is especially egregious where those actions (travel between states, free association with others, the right to bear arms) are, not only acts which may not be considered *malum in se*, but rather are actions which are protected by the United States Constitution. It is respectfully submitted that the uncontradicted testimony about the events of April 19th, 2010, coupled with the government's acquiescence in Mr. Huff's conduct, in and of themselves, merit a judgment of acquittal.

The balance of the evidence within this record, likewise, preponderates in favor of Mr. Huff's innocence. While Mr. Huff made certain statements which may be considered incriminatory while on the shoulder of Highway 68, he made multiple statements during the course of this same detention which flatly contradict those statements. Most significantly, Mr. Huff's actions (for which there is no dispute) bely the claim that he harbored an unlawful intent to further a civil disorder by the use of one or more firearms. When asked, Mr. Huff voluntarily placed his 45 caliber pistol within the toolbox of his pickup truck. Every law enforcement officer (who was asked) testified that, had Mr. Huff so desired, he could have continued to carry his sidearm. The voluntary act of relinquishing his weapon, where he had

3

already been led to believe his actions were legal, belies the jury's conclusion that Mr. Huff harbored an unlawful intent.

Moreover, there exists no rational explanation (which is consistent with Mr. Huff's unlawful intent) which will explain Michael DeSilva's presence on April 20th. Mr. DeSilva was unarmed (he testified he does not even own a firearm) on April 20th, and there exists not a scintilla of evidence to suggest, nor imply, that he shared in an alleged nefarious plot to take over the city/courthouse. Accordingly, the jury had to take a quantum leap of logic to rationalize Mr. DeSilva's presence as consistent with an unlawful intent on Mr. Huff's part. The jury had to accept as true that, not only did Mr. Huff desire the FBI's presence and was willing to "call the whole off if there was a problem", but he brought along a young man who was like family to him where this young man would have been subject to injury, arrest, or death (or at the very least stranded three hours away from home) while Mr. Huff carried out his nefarious plan. It is respectfully submitted that Mr. DeSilva's presence, in and of itself is so wholly inconsistent with an unlawful intent on Mr. Huff's part as to warrant an acquittal.

The government's theme throughout the trial consisted of the following: Mr. Huff planned to use his gun(s) to effect a civil disorder, but he chose not to when confronted with the "overwhelming police presence" in Madisonville on April 20, 2010. Once again, however, the greater weight of the uncontradicted evidence suggests the contrary. Had Mr. Huff and his alleged compatriots[2] been thwarted in a plan to effect a "takeover of the

---

[2] The government has yet to identify the other persons who allegedly comprised the "assemblage of three or more persons."

4

city/courthouse" on April 20th, logic dictates such a plan would have been reformulated for a date where no such police presence existed. However, the uncontradicted evidence in this record proves the contrary. The next trip Darren Huff made to Tennessee after April 20th consisted, exclusively, of his efforts to seek law enforcement assistance to effect arrests of the perceived corrupt officials in Monroe County.

Finally, it strains credulity to believe that Mr. Huff intended to use his weapon(s) to effect a takeover of Madisonville, Tennessee. Every witness who was asked testified that Darren Huff is an intelligent man. The uncontroverted evidence within this record proves there existed no coordinated plan by any group to mobilize in Madisonville on April 20th.[3] To accept the verdict rendered in Count I, the government must concede that Mr. Huff planned an armed confrontation where he had no way of knowing if he would be the only one armed in the "takeover of the city." While the undersigned has great respect for the jury, and for the dedication each juror exhibited in reaching a verdict, there exists not only reasonable doubt, but significant doubt that Daren Huff violated §231(a)(2) of Title 18.

2. The Court erred when it overruled Mr. Huff's Motion to Suppress the evidence obtained from the seizure of his person which occurred on April 20, 2010 (Doc. 22). It is respectfully submitted that the lynchpin of the government's case consists of those statements Mr. Huff made subsequent to the traffic stop initiated by Trooper Michael Wilson of the Tennessee Highway Patrol. Trooper Wilson's justification for the seizure of Mr. Huff's person was that Mr. Huff "followed too closely," and that "Mr. Huff failed to stop at the stop

---

[3] Mr. Huff, in fact, is heard telling the officers during the road side stop that he was "aware of only one other person who was coming."

sign" before he entered Highway 68 after exiting I-75 North. Not only did multiple witnesses who were present (Darren Huff, Michael DeSilva, and Carl Swensson) testify that Mr. Huff came to a complete stop, but the Trooper's dashboard camera recorded Mr. Huff coming to a complete stop. It is respectfully submitted that the Court erred when it overruled Mr. Huff's Motion to Suppress the evidence derived from this stop/seizure. Mr. Huff incorporates those arguments heretofore made in support of this issue as if the same were set forth hereinafter verbatim.

    3. The Court erred when it failed to sustain Mr. Huff's Motion to Dismiss Count I because the statute is overly broad and vague in violation of the Due Process Clause of the United States Constitution (Doc. 33). Mr. Huff incorporates by reference those arguments heretofore made in support of this issue as if the same were set forth hereinafter verbatim.

    4. The Court erred when it failed to sustain Mr. Huff's Motion to Dismiss Count I due to the failure to establish Interstate Commerce jurisdiction (Doc. 29). Mr. Huff incorporates by reference those arguments previously made in support of this Motion as if the same were set forth hereinafter verbatim.

    5. The Court erred when it failed to sustain Mr. Huff's Motion to Dismiss an Unconstitutionally Insufficient Indictment (Doc. 32). Mr. Huff incorporates by reference those arguments made in support of this motion as if the same were set forth hereinafter verbatim.

    6. The Court erred when it failed to sustain Mr. Huff's Motion *in limine* wherein Mr. Huff sought an Order which precluded the government from eliciting testimony that Mr. Huff possessed an anti-aircraft gun (Doc. 120-123, 128, 129).

6

Case 3:10-cr-00073   Document 175   Filed 11/08/11   Page 6 of 11   PageID #: 1077

7. The Court erred when it failed to sustain Mr. Huff's Motion *in limine* wherein he sought an order which precluded the government from eliciting testimony that he held racist, and/or anti-semitic beliefs (Doc. 120-123, 128, 129).

8. The Court erred when it failed to instruct the jury as requested by Mr. Huff wherein Mr. Huff sought an instruction clarifying that the elements of 18 U.S.C. §231(a)(c) must be proven in the conjunctive (Doc. 147).

9. The Court erred when it failed to sustain Mr. Huff's Motion *in limine* wherein he sought exclusion of the items seized from his vehicle on April 30, 2010 (Doc. 121).

10. The Court erred when it permitted the United States in rebuttal to offer a portion of a taped statement given by witness Erica Dupree to the Chief of the Madisonville Police Department. It is respectfully submitted that any evidence the United States sought to "rebut" by this testimony was elicited solely through cross-examination of one or more witnesses by the government. As such, the proffered testimony is not proper rebuttal evidence.

11. The confluence of several facts related to the April 19th interview between Mr. Huff and Agent Chuck Reed, FBI mandate entry of a judgment of acquittal/dismissal resulting from the evidentiary insufficiency related to Mr. Huff's knowledge that he was violating 18 U.S.C. §231(a)(2). Mr. Huff was convicted of violating the provisions of an obscure statute which has been used only a handful of times in the forty plus years it has existed. [4] Absent an unlawful intent on Mr. Huff's part, every action he took in April 20th, 2010 was lawful, and in fact each such action(s) is protected by the United States Constitution.

---

[4] It is believed this prosecution is the first to utilize this statute within the Sixth Circuit.

There exists no doubt that Mr. Huff could legally travel from Georgia to Tennessee, there exists no doubt that Mr. Huff could legally and constitutionally possess firearms, and there exists no doubt that Mr. Huff had/has the absolute right to assemble and protest the action of government. The general maxim that "ignorance of the law is no excuse" has its exceptions. As the Sixth Circuit stated in *United States v. Baker*, 197 F.3d 211 (6th Cir. 1999):

> [T]he ignorance maxim is not absolute. The United States Supreme Court has abrogated the maxim when faced with a law so technical *or obscure* that it threatens to ensnare individuals engaged in apparently innocent conduct. See *Bryan v. United States*, 524 U.S. 184 (1998) (noting that court has carved an exception to ignorance maxim with respect to "highly technical statutes that presented the danger of ensnaring individuals engaging in apparently innocent conduct"); *Lambert v. California*, 355 U.S. 225, 229 (1957) (creating exception to ignorance maxim with respect to obscure felon registration statute). To presume knowledge of such a law would violate a core due process principle, namely that citizens are entitled to fair warning that their conduct may be criminal.
>
> 197 F.3d, pp. 218-219 (Emphasis Supplied). See also, *United States v. Aaron*, 590 F.3d 405, 409 (6th Cir. 2009).

Had the April 19th interview never taken place, Mr. Huff has a good faith argument, due to obscurity of 18 U.S.C. 231(a)(2) (coupled with otherwise legally protected conduct), that due process is offended by his conviction. However, when the obscurity of §231 is coupled with the conduct of the United States on April 19-20, 2010, a "core principle of due process" is violated by allowing the conviction in Count I to stand. Not only was Mr. Huff prosecuted pursuant to the proscription(s) found in a statute that is so obscure it does not have a designated Guideline for sentencing, [5] but Mr. Huff was led to believe his conduct in taking the trip on April 20th was lawful. This record is very clear, there exists no contradictory evidence, this prosecution would never have commenced because the trip to Tennessee would never have occurred if the FBI

---

[5] In fact, the undersigned's Sentencing Guideline Manual contains over 1500 pages. The undersigned has been unable to locate a single citation to, nor reference about, 18 U.S.C. §231.

8

had informed Mr. Huff that "there is a problem." The instant facts differ markedly from a hypothetical situation where an agent of the government confronts a person who planned to commit a bank robbery. Each of us are on notice, irrespective of what the police say or do, that the act of forcibly purloining money from a bank is against the law. As the Supreme Court observed in *Lambert*:

> The rule that ignorance of the law will not excuse is deep in our law, as is the principle that of all of the powers of local government, the police power is one of the lease limitable. On the other hand, due process places some limits on its exercise. Engrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to defend charges. Notice is required before property interests are disturbed, before assessments are made, before penalties assessed. Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act. Recent cases illustrating the point are (internal citations). These cases involved only property interests in civil litigation. But the principle is equally appropriate where a person, *wholly passive, and unaware of any wrongdoing*, is brought to the bar of justice of condemnation in a criminal case.
> 355 U.S., p. 228 (Emphasis Supplied) (Internal citations omitted).

In the case at bar, however, Mr. Huff's intended actions were conveyed to Agent Reed coupled with a specific request for guidance if there "was a problem." [6] The subsequent silence by the United States in the face of this request, when combined with otherwise protected conduct, and a statute for which the term "obscurity" does not begin to

---

[6] The Sixth Circuit has yet to reverse a conviction premised solely upon the government's conduct, even if "objectively outrageous." See, e.g. *United States v. Tucker*, 28 F.3d 1420 (6th Cir. 1994). The Court, however, has continued to maintain the defense may be appropriate in the proper factual setting. Four factors have historically been relevant when determining the viability of this argument: (1) the need for the police conduct as shown by the type of criminal activity involved (2) the impetus for the scheme or whether the criminal enterprise pre existed the police involvement, (3) the control the government exerted over the criminal enterprise, and (4) *the impact of the police activity on the commission of the crime*. *United States v. Barger*, 931 F.2d 359, 363 (6th Cir. 1991). The aforesaid are "factors for consideration, not mandatory prongs in a test, everyone need not be shown." *Id.*, p. 363. The challenged government conduct must violate fundamental fairness and be "shocking to the universal sense of justice." *Id.*, p. 363. In this instance, the government's conduct must be viewed in context with the obscurity of 18 U.S.C. §231(a)(2). When so viewed, it is respectfully submitted the government's silent acquiescence which permitted one of its citizens to engage in conduct for which he otherwise would not have engaged, and thereby violate an obscure statute, is offensive to the concept of fundamental fairness.

9

adequately describe it's existence, render Mr. Huff's conviction in Count I offensive to due process. The due process clause requires "fair warning" that conduct is criminal. In this case, not only was there an absence of fair warning that Mr. Huff's intended conduct was criminal, there was explicit validation by the government that the intended conduct was "without problem", and therefore legal.

WHEREFORE, based upon the foregoing, Darren Wesley Huff respectfully moves this Honorable Court to set this matter for oral argument, and to thereafter enter an Order granting the relief sought within the premises of this motion.

Submitted this 8th day of November, 2011.

**s/G. Scott Green**
G. SCOTT GREEN, BPR #012872
800 S. Gay Street, Suite 1650
Knoxville, TN 37929
(865) 637-0134

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies on this date a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

This the 8th day of November, 2011.

**s/G. Scott Green**
G. SCOTT GREEN