**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:10-CR-73 |
| | ) | |
| DARREN WESLEY HUFF | ) | (VARLAN/GUYTON) |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR NEW TRIAL OR FOR JUDGMENT OF ACQUITTAL [Doc. 175]**

Now comes the United States of America, by and through the United States

Attorney for the Eastern District of Tennessee, William C. Killian, and, in response to

Defendant Darren Wesley Huff's Motion for New Trial or for Judgment of Acquittal

[Doc. 175] states that the motion should be denied. In support thereof, the government

states the following:

I.    INTRODUCTION AND SUMMARY

The Defendant moves for a judgment of acquittal and/or new trial, contending

that: (1) there was insufficient evidence proving that the Defendant had the necessary

intent to violate 18 U.S.C. § 231(a)(2); (2) the Court erred in denying the Defendant's

pretrial motions; (3) the Court erred in allowing into evidence prior consistent

statements of a witness in rebuttal; and (4) "statutory obscurity" denied the Defendant

constitutional due process.

The United States submits that there was more than sufficient evidence admitted

at trial for a reasonable jury to convict the Defendant; that the Court was not in error in

the various pre-trial rulings of which the Defendant seeks to raise virtually identical

objections for a yet third time; the Court was not in error in admitting the government's

rebuttal evidence; and that the charge contained in Count One of the Superseding

Indictment properly alleged, and the evidence at trial demonstrated, a violation of federal law (namely 18 U.S.C. §231(a)(2)) that is constitutionally sufficient both on its face as written and as applied, and further that any alleged "obscurity" of this statute does not have the effect of rendering the law invalid or in violation of the "due process clause [requirement of] 'fair warning' that the conduct was criminal." Defendant's Motion, p.10. The Defendant is simply incorrect in his assertion and argument that the Court should grant a judgment of acquittal or a new trial because the Defendant was convicted of a violating "a statute for which the term 'obscurity' does not begin to adequately describe it's existence." *Id.* What can best be described as his "obscurity argument" is actually a recycled "vagueness" argument that was rejected by this Court and which arguments are now dressed in new Rule 29 and 33 clothes. The government submits that all of these diverse post-trial arguments and claims now advanced by the Defendant have neither merit nor substance. Accordingly, the Defendant's motion should be denied.

II.    STANDARD OF REVIEW

Rule 29(c) of the Federal Rules of Criminal Procedure governs a motion for a judgment of acquittal following a jury verdict or discharge. That rule provides "if the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). When reviewing a criminal defendant's motion for a judgment of acquittal, the court "must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Humphrey,* 279 F.3d 372, 378 (6th Cir. 2002)(quoting *Jackson v. Virginia*, 443 U.S. 307,

2

319 (1979)); *accord, e.g., United States v. Sawyers,* 409 F.3d 732, 735 (6th Cir. 2005);

*United States v. Talley,* 164 F.3d 989, 996 (6th Cir. 1999). This standard applies

equally to circumstantial and direct evidence. *Humphrey*, 279 F.3d at 378. Indeed,

"[c]ircumstantial evidence alone, if substantial and competent, may support a verdict

and need not remove every reasonable hypothesis except that of guilt." *Id.* (quoting

*United States v. Talley,* 194 F.3d 758, 765 (6th Cir. 1999)(companion case to *United*

*States v. Talley*, 164 F.3d 989 (6th Cir. 1999))).

Rule 33 of the Federal Rules of Criminal Procedure provides, in pertinent part,

that on motion of a defendant the court may grant a new trial "if required in the interests

of justice." Decisions on motion for new trial are within the sound discretion of the trial

judge. *Burks v. Egeler,* 512 F.2d 221, 224 (6th Cir. 1975). In ruling on a motion for new

trial, the Court may consider the credibility of witnesses and the quality of the evidence.

*United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979), *aff'd* 633 F.2d 219

(6th Cir. 1980). Motions for new trial are not favored and should be granted only with

great caution and in the "most extraordinary of circumstances." *United States v.*

*Garner*, 529 F.2d 962, 969 (6th Cir. 1976).

With respect to both the Defendant's Rule 29 and Rule 33 sufficiency of evidence

arguments, the scienter element for 18 U.S.C. § 231(a)(2) is the same: the government

was required to prove, "That the Defendant transported the firearm knowing, having

reason to know, or intending that the firearm would be used in furtherance of a civil

disorder."[1]

---

[1] Civil disorder means any public disturbance involving acts of violence by
assemblages of three or more persons, which causes an immediate danger of or result
in damage or injury to the property or person of any other individual.

III.   ARGUMENT

    A.   Sufficiency of Evidence Regarding Defendant's Intent

The Defendant notes that he told Special Agent ("SA") Reed on April 19, 2010, the day before the offense, that he intended to execute "Citizen's Arrest Warrants" the next day in Madisonville, Tennessee ("Madisonville"), while armed with his .45 caliber pistol and an AK-47. However, he argues that his statement to SA Reed that he would call the whole thing off if there was a problem belies any unlawful intent. Moreover, he asserts that the failure by either SA Reed or the FBI to call or stop the Defendant before his trip validated the Defendant's belief that his intended actions were lawful.

The Defendant's contention that he thought his actions were lawful is disingenuous and not supported by any evidence. Moreover, even if for purpose of argument, SA Reed's response or inaction did cause him to have an erroneous belief that his plan to take over Madisonville, the courthouse, and execute Citizen's Arrest Warrants on public officials was lawful, it would not negate the requisite intent for the offense.

Initially, it should be noted that in his motion, the Defendant has mischaracterized the testimony regarding the conversation he had with SA Reed the night before the offense. The Defendant testified that he told SA Reed essentially, "If you have a problem, don't come kicking down my doors in the middle of the night, call me first." This is a far cry from telling SA Reed to let him know if his planned action in Madisonville was illegal. There is nothing about Defendant's statements to SA Reed which suggests the Defendant believed his planned action was lawful; and there is nothing about SA Reed's response or inaction which suggested to the Defendant that

4

his planned action was lawful. The fact that Defendant, in response to an unexpected visit by SA Reed at his home, made some self-serving statements to stave off any government interference with his planned conduct does not indicate he changed his intent. The more plausible interpretation is that the Defendant did not want them to search his house before he left for Madisonville the next morning and at least wanted a forewarning if they did.

Even if the Defendant's version of the conversation between SA Reed and him is accepted as correct, it is clear that it in no manner negated the Defendant's intent. The fact that SA Reed did not call the Defendant again before he made his trip to Madisonville or tried to stop the Defendant could not have caused the Defendant to believe that his planned action was lawful. SA Reed did not have an affirmative duty to advise the Defendant of the illegality of his proposed conduct, nor a duty to try to stop him in advance. The Defendant's contention that he interpreted the fact that SA Reed did not call him back was validation of his belief that his intended conduct was lawful is patently absurd. The Defendant knew well that what he was planning to do in Madisonville was unlawful. The Defendant witnessed Walter Fitzpatrick get arrested and charged for trying to execute Citizen's Arrest Warrants in Madisonville three weeks earlier. The Defendant also told Erica Dupree and Shane Longmire five days before the offense that he might be killed or arrested for what he planned to do in Madisonville. Thus, it is clear that the Defendant was well aware that what he planned to do was illegal whether or not SA Reed called him back after their conversation on April 19, 2010.

The Defendant also expressed his intent when he was stopped on the roadside en route to Madisonville on the day of the offense. At that time, the Defendant told several police officers, "We fully intend to proceed forward with those citizen's arrests . . . I've got my .45 because ain't no government official gonna go peacefully." During the traffic stop the defendant also said, "If it comes down to that I've got to fight you guys, I have no choice." These were the Defendant's expressed intentions subsequent to his conversation with SA Reed and during his trip to Madisonville.

The jury could have reasonably believed that the Defendant had the intent to conduct unlawful arrests of public officials in Madisonville on the day of the offense. A militia group conducting unlawful arrests of public officials is tantamount to a civil disorder. Thus, a rational fact-finder could find that the Defendant intended to commit a civil disorder while en route to Madisonville the day of the offense. It could also be reasonably inferred that the Defendant had that intent when he crossed the Tennessee-Georgia state line shortly before his vehicle was stopped on the way to Madisonville. Further, a rational juror could find from the Defendant's statements and the surrounding circumstances that the Defendant knew his planned action in Madisonville was unlawful.

Moreover, Shane Longmire and Erica Dupree testified that on April 15, 2010, the Defendant told them he was traveling to Madisonville on April 20, 2010, with other militia members to take over the city. The Defendant told them he would be taking his AK-47 with him for that purpose. There was also evidence at trial that the Defendant did in fact take his AK-47 and 300-400 rounds of ammunition with him to Madisonville. Taking an AK-47 and such ammunition to Madisonville is consistent with his statements to Dupree and Longmire that he was going there to take over the city. It supports that he had the

6

same intent on the day of the offense as when he made the statements to Dupree and Longmire five days earlier. The brief intervening conversation the Defendant had with SA Reed the night before the offense does not indicate that he changed his intent.

It is disingenuous and not credible for the Defendant to claim that he believed SA Reed and the FBI tacitly approved or endorsed his actions. However, even assuming arguendo that the Defendant believed SA Reed's inaction equated to approval and the Defendant thereby thought his planned action in Madisonville was lawful, it did not negate his intent. The maxim *Ignorantia legis non excusat* (ignorance of the law is no excuse) means that mistakes of law are generally not a defense. As set forth above, regarding intent, the government was required to prove: "That the Defendant transported the firearm knowing, having reason to know, or intending that the firearm would be used in furtherance of a civil disorder." The government did not need to prove that the Defendant knew his conduct was unlawful anymore than the government must prove that a person who commits a bank robbery knew that a bank robbery was unlawful. In fact, the defendant's argument is similar to a person telling a police officer that he is going to commit an armed bank robbery, but tells the officer to call him if he has a problem with it and he'll call it off, then hearing nothing back, commits the bank robbery. The person cannot seriously claim he lacked intent because he thought the police officer's failure to call meant he could legally rob the bank. The Defendant's contention in his motion for new trial or judgment of acquittal is equally invalid.

Contrary to the Defendant's contention, the fact that he brought his friend, Michael DeSilva, with him to Madisonville on April 20, 2010, does not refute that he had unlawful intent. Mr. DeSilva described himself as an aspiring writer who was intrigued

7

by the events in Madisonville. It is reasonable to infer that he was with the Defendant out of curiosity and possibly to have a subject to write about. The Defendant and his associates were not opposed to getting additional publicity for their actions, as indicated by evidence at trial that they posted videos of some of their activities in Madisonville on the internet.

The Defendant contends that if the Defendant and his associates truly had the intent to take over the city or courthouse, they would have reformulated another date when no such police presence existed. Whether or not there was evidence of an alternative plan has no bearing on the Defendant's intentions when he went to Madisonville on April 20, 2010. Further, the fact that the Defendant went to East Tennessee after the offense in a failed attempt to get certain Sheriffs to join his cause is also irrelevant regarding his intent on the day of the offense.

The fact that an attempt to take over the city may not have been an intelligent endeavor does not suggest the Defendant did not have the intent. He told police officers during the traffic stop on his way to Madisonville that he would die for his cause. Clearly, the Defendant, coming to Madisonville with an AK-47 and 300-400 rounds of ammunition and with other armed associates, could have possibly taken over the courthouse without a sophisticated plan.

The Defendant contends that his actions belie any unlawful intent to commit a civil disorder. The government submits that traveling to Madisonville with a loaded Colt .45 and an AK-47 with 300-400 rounds while expressing his intent to take over the city and arrest public officials is clear evidence of his intent to commit a civil disorder. Although the Defendant argues in his motion that he put his firearm in his toolbox after

8

the traffic stop, evidence showed he never relinquished possession of those firearms before going to Madisonville. He had constructive possession of those firearms in Madisonville. Moreover, Lt. Don Williams testified that he observed the Defendant go back to his truck in Madisonville and he believed the Defendant retrieved his pistol.

Through evidence of the Defendant's actions and statements there was more than sufficient evidence that he transported a firearm in commerce intending that the firearm would be used in furtherance of a civil disorder.

B. Ruling on Pretrial Motions and Rebuttal Evidence at Trial

1. Court's Denial of Pretrial Motions

In paragraphs 2-9 of the Defendant's motion, the Defendant asserts that this Court erred in its prior rulings on pretrial motions and submits those alleged errors as a basis for a judgment of acquittal or new trial. The government submits that since the Court has already ruled upon these exact issues, the law of the case requires rejection of his motion for judgment of acquittal or new trial on these grounds.

2. Court's Ruling on Rebuttal Evidence at Trial

The Defendant contends that since the government introduced a statement given by Erica Dupree in rebuttal to testimony elicited through cross-examination of one or more witnesses by the government that it was improper. The Defendant cites no authority for his contention. The government introduced a tape recording of Erica Dupree's phone call to the police as a prior consistent statement under Fed. R. Evid. 801(d)(1)(B). Rule 801(d)(1)(B), in pertinent part, reads, "a statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is . . . consistent with his

9

testimony and is offered to rebut an expressed or implied charge against him of recent fabrication or improper influence or motive." Broad discretion is given to the trial court regarding the admission of prior consistent statements under Fed. R. Evid. 801(d)(1)(B). *United States v. Hamilton*, 689 F.2d 1262, 1273 (6th Cir.), *cert. denied* 103 S. Ct. 753 (1983); *United States v. Lawson*, 872 F.2d 179, 182 (6th Cir. 1989). A charge of recent fabrication or improper influence need not be expressly stated in order to allow rehabilitation through prior consistent statements. *Hamilton*, 689 F.2d at 1273. If such an accusation can be inferred from the Defendant's cross-examination, then the witness can be rehabilitated through the testimony of other witnesses. *United States v. Khan*, 821 F.2d 90 (2nd Cir. 1987).

In the instant case, defense counsel attempted to call into question Ms. Dupree's credibility during cross-examination. When the Defendant testified, he stated that some of the testimony of Ms. Dupree was false. Under these circumstances it was proper for the government to introduce her prior consistent statements under Fed. R. Eivd. 801(d)(1)(B). Clearly, the Court's ruling on this evidentiary issue is not a basis for a judgment of acquittal or new trial.

C. Obscurity/Vagueness

Lastly, while not immediately couching his argument as such, in essence the Defendant appears to be arguing a violation of the Due Process Clause of the Constitution on the basis of "statutory obscurity." Defendant's Motion, No. 11, pp.7-10. The Defendant appears to be advancing some form of a constitutional "due process" argument by seeking to mix together a legal concoction of one part (i) "evidentiary insufficiency" (Defendant's Motion, p.7) argument; one part (ii) government

10

"entrapment" argument – "Mr. Huff was led to believe [by the FBI] his conduct in taking the trip on April 20th was lawful" (Defendant's Motion, p.8); and one part (iii) constitutional "vagueness" argument to the effect that he was wrongly "convicted of violating the provisions of an obscure statute which has been used only in a handful of times in the forty plus years it has existed" (Defendant's Motion, p.7). This "statutory obscurity" argument has no legal or equitable merit and is rather a rehashing of his pre-trial constitutional "void for vagueness" and constitutional "insufficiency" motions to dismiss (Docs. 33 and 32), both of which were denied by this Court (Docs. 83 and 101).

As a threshold question, the Defendant's implied argument that there was some aspect of "entrapment" by any FBI agents by claiming that there "was explicit validation by the government that the intended conduct was 'without problem,' and therefore legal," is without merit, unsubstantiated and unfounded in the evidence introduced at trial. Accordingly, the government will simply submit that absent some actual evidence that the government induced the Defendant to undertake some conduct of which he had not previously indicated any intent to do, this aspect of the Defendant's "statutory obscurity" argument has no basis whatsoever.

Shifting the focus to the central tenant of the Defendant's last argument, he fails to articulate how the prosecution (and conviction) of what he alleges to be an "obscure" statute violates his Due Process rights; at best he argues that there was "an absence of fair warning that [his] intended conduct was criminal." Defendant's Motion, p.10

As noted above, while the Defendant now uses the term "obscure," he previously raised very much the same character or type of argument in his pre-trial motions to dismiss for constitutional "vagueness" and "insufficiency," both of which were rejected

by this Court. As the government noted previously, the Supreme Court has ruled that a given statute will be found void for vagueness if it fails to give a person of ordinary intelligence fair notice that his conduct is forbidden by the statute. *Palmer v. City of Euclid*, 402 U.S. 554 (1971). Similarly, a statute will be held to be "vague" if it forbids conduct in terms so vague or indeterminate that men of common intelligence must necessarily guess at its meaning, differ as to its application, and cannot enforce its terms fairly. *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926). While the Defendant uses the term "obscure" to argue that he did not "have fair notice" that his actions could be considered in violation of the law, the government submits this is essentially the  same claim that was previously raised in his "vagueness" arguments.

In *Grayned v. Rockford*, 498 U.S. 102 (1972), the Supreme Court outlined what defines a meritorious challenge to a statute on the grounds of constitutional vagueness: "[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Id.* at 108. In that respect, "we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning." *Id.*; *see also Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972). Further, "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Id.* at 109; *see also Coates v. Cincinnati*, 402 U.S. 611 (1971).

Accordingly, the Defendant's various arguments for constitutional "vagueness" and now "obscurity" with regard to Section 231(a)(2) fails to meet any of the established tests for a meritorious challenge. The language of Section 231(a)(2) could not be any

clearer, or to use the language set forth in *United States v. Spector*, 343 U.S. 169, 172 (1952), "the commands of the statute [are] simple and intelligible" and provide clear notice to any citizen:  you may not (i) transport in commerce (which is defined), such as traveling interstate, (ii) a firearm (iii) knowing, having reason to know or intending that the same will be used unlawfully in furtherance of a civil disorder (also defined in the statute).

Despite what the Defendant appears to argue, this statute neither criminalizes the innocent actions of anyone who lawfully possesses a firearm nor who travels interstate to exercise any First Amendment rights to assemble or speak.  This statute is clearly directed only to those who transport a firearm in commerce with the knowledge that it will be used or the intent to use it in furtherance of a civil disorder; the prohibition of this statute is plain, simple and intelligible and whether the Defendant actually read the statute is not the controlling issue.  "The likelihood that anyone would not understand any of the statute's common words seems quite remote." *Hill v. Colorado*, 530 U.S. 703, 732 (1972).  Moreover, the statutory language of Section 231(a)(2) is clear that it "requires those prosecuted to have acted in bad faith.  The sanctions apply only when scienter is established." *See Gorin v. United States,* 312 U.S. 19, 28 (1940)(discussing violations of the Espionage Act of 1917).  The Supreme Court has held that including a mens rea element in the statute serves to help eliminate the issue of vagueness. *Hill*, 530 U.S. at 706.  In fact, by his own argument, the Defendant was put on notice prior to April 20, 2010, that his planned trip to Madisonville could implicate violations of federal law.  If he had wanted to further inquire or determine what laws

might be implicated, this purportedly "obscure" statute was readily available for him to look up.

Lastly, one other aspect of the Defendant's argument that Section 231(a)(2) is "obscure" appears to be based in part on his assertion that he was convicted of violating "an obscure statute which has been used only a handful of times in the forty plus years it has existed." Defendant's Motion, p.7. The Defendant's challenge to conviction for violating Section 231(a)(2) appears to rest upon his argument that validity of this provision should be measured in direct correlation to the frequency of prosecution; this argument is simply without merit. Using the same logic (or illogic), there would be similar challenges based upon the "infrequency" of any prosecutions for treason or seditious conspiracy (18 U.S.C. §§ 2381 and 2384) or the knowing use the of "Woodsy Owl" character for profit without authorization (18 U.S.C. § 711a). Simply put, this "obscurity" argument has no bearing whatsoever on whether statutes are to be considered constitutionally valid and any convictions for violations thereof in keeping with due process principles.

IV.     CONCLUSION

WHEREFORE the government respectfully requests that this Honorable Court

deny Defendant's Motion for New Trial or for Judgment of Acquittal.

Respectfully submitted this 29th day of November, 2011.

                                        WILLIAM C. KILLIAN
                                        UNITED STATES ATTORNEY

                              By:     *s/ Jeffrey E. Theodore*
                                        Jeffrey E. Theodore
                                        A. William Mackie
                                        Assistant United States Attorneys
                                        800 Market Street, Suite 211
                                        Knoxville, Tennessee 37902
                                        Telephone: (865) 545-4167


## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2011, a copy of the foregoing was filed
electronically.  Notice of this filing will be sent by operation of the Court's electronic filing
system to all parties indicated on the electronic filing receipt.  All other parties will be
served by regular U.S. mail.  Parties may access this filing through the Court's
electronic filing system.

                                        *s/ Jeffrey E. Theodore*
                                        Jeffrey E. Theodore
                                        Assistant United States Attorney