UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:10-cr-73 |
| | ) | (Judge Varlan) |
| DARREN WESLEY HUFF | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM
REGARDING APPLICATION OF THE SENTENCING GUIDELINES**

Now comes the United States of America, by and through the United States Attorney for the Eastern District of Tennessee, William C. Killian, and files this Sentencing Memorandum.

MOST ANALOGOUS OFFENSE GUIDELINE

As this Court has previously ruled, the offense of which Defendant has been convicted is a crime of violence. [Doc. 97.] The statutory index of the Sentencing Guidelines does not set forth a specific guideline section for the Defendant's crime. The United States submits that the appropriate Guideline Section utilizing § 2X5.1 should be a section that adequately reflects the fact that the Defendant has been convicted of a crime of violence.

The United States Probation Officer has determined in the Presentence Investigation Report ("PSR") that the most analogous Guideline to the crime of conviction is § 2K2.1. By its terms, this section cross-references through Subsection (c) to other crimes intended by the Defendant in the course of his offense conduct. To the extent that this Guideline Section is applied in a manner that takes into account the dangerous and violent nature of the offense, the United States does not object to § 2K2.1 being the applicable Guideline Section. However, contrary to the PSR, which

cross-references to aggravated assault, the United States submits that the appropriate cross-reference should be to U.S.S.G. § 2A4.1 (kidnapping, abduction, unlawful restraint), since the Defendant's intended conduct, if accomplished, would have amounted to aggravated kidnapping under Tennessee law.

Section 2K2.1(c) states in pertinent part:

> If the defendant possessed . . . a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply
>
> (A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than determined above.[1]

The Tennessee Code Annotated ("TCA") states in pertinent part:

> 39-13-304. <u>Aggravated kidnapping</u>.
>
> (a) <u>Aggravated kidnapping is **false imprisonment**, as defined in § 39-13-302, committed</u>:
>
> (1) to facilitate the commission of any felony or flight thereafter;
>
> (2) <u>to interfere with the performance of any governmental or political function</u>;
>
> (3) with the intent to inflict serious bodily injury on or to terrorize the victim of another;
>
> (4) where the victim suffers bodily injury; <u>or</u>
>
> (5) <u>while the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon</u>.
>
> (b) (1) Aggravated kidnapping is a Class B felony.

---

[1] "Another offense" for purposes of Subsection (c)(1), means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, regardless of whether a criminal charge was brought, or a conviction obtained. § 2K2.1, Commentary, N. 14(C)

2

(emphasis added).

The TCA also states in pertinent part:

> 39-13-302. False imprisonment.
>
> (a) A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other person's liberty. . . .

Thus, under TENN. CODE ANN. § 39-13-304 if a person commits a false imprisonment to either (1) interfere with the performance of any governmental function or (2) while the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon, then they have committed an aggravated kidnapping under Tennessee law.

Through the testimony of witnesses at trial, the Defendant's own testimony, and the "Citizens' Arrest Warrants" admitted into evidence at trial, it is clear that the Defendant intended to unlawfully arrest various government officials in Monroe County, Tennessee. In addition to taking over the courthouse and city, his primary motivation for going to Madisonville on April 20, 2010, was to execute "Citizens' Arrest Warrants." During a traffic stop the morning of the offense, the Defendant stated, "We fully intend to proceed forward with those citizens arrests . . . I've got my .45 because ain't no government official gonna go peacefully." During his testimony at trial, the Defendant said he believed the public officials named in the "Citizens' Arrest Warrants" had committed treason, a capital offense. Moreover, the "Citizens' Arrest Warrants" referred to the public officials named in the warrants as "Declared Domestic Enemies."

The threatened unlawful arrests presented a threat to public safety and a crime of violence. The Defendant's threat and attempt to unlawfully arrest public officials and take over the city and courthouse involves a real threat of serious harm to those

3

targeted. Moreover, the Defendant's intent to unlawfully arrest government officials would clearly constitute confining them unlawfully, and substantially interfering with their liberty, thus false imprisonment. Further, the Defendant intended to possess a deadly weapon while conducting the unlawful arrests. As indicated previously, he told officers during the traffic stop, "We fully intend to proceed forward with those citizens arrests . . . I've got my .45 because ain't no government official gonna go peacefully." The Defendant's statements and the "Citizens' Arrest Warrants" themselves make it clear that the Defendant intended to conduct the unlawful arrests for the purpose of interfering with the performance of government officials.

Since the intended targets of the arrests were government officials and since the Defendant intended to be armed while conducting these arrests, such conduct would constitute aggravated kidnapping, if accomplished. It is clear that what the Defendant intended to do when he possessed the firearm meets at least two of the five factors which elevate false imprisonment to an aggravated felony under Tennessee law. Only one of those factors is necessary. Thus, what the Defendant intended to do was tantamount to aggravated kidnapping under Tennessee law. Therefore, the United States submits that pursuant to § 2K2.1(c), the appropriate cross-reference should be to § 2A4.1 (kidnapping, abduction, unlawful restraint).

Although the Defendant did not accomplish his intended goal of arresting public officials, due to the overwhelming response from law enforcement, his words and actions made it clear that he intended to conduct such arrests, or false imprisonments, when he went to Madisonville on April 20, 2010. Thus, § 2K2.1(c) should cross-reference to § 2A4.1.

4

In the PSR, the probation officer cross-references to aggravated assault pursuant to § 2K2.1(c)(1)(A). Although such a cross-reference could be appropriate, a cross-reference to aggravated kidnapping more accurately reflects the crime intended by the Defendant, which was a false imprisonment of government officials while armed.

If the Court were to decide not to apply the cross-reference under § 2K2.1(c), then the United States submits that pursuant to § 2X5.1 the Court should not use § 2K2.1 as the analogous guideline at all. If the cross-reference provision in Subsection (c) is not applied, then the application of § 2K2.1 would not adequately reflect the Defendant's violent offense conduct. Instead, the Court should utilize § 2X5.1 and go directly to § 2A4.1.

The Defendant's objection to the PSR ¶ 20 regarding the cross-reference provision makes no sense. Cross-referencing pursuant to § 2K2.1(c) does not contradict the explicit directive found within § 2X5.1. If § 2K2.1 is determined to be the most analogous guideline section, then that section must be applied in its entirety. Thus, the cross-reference provision in § 2K2.1(c) must be applied since it is clearly applicable to the Defendant's conduct.

PARAGRAPH 19, SECTION 2K2.1(b)(6)(B)

The government submits that paragraph 19 of the PSR should also reflect that "another felony offense" could be aggravated kidnapping under Tennessee law as set forth in the previous argument. The government submits that aggravated kidnapping should be listed as "another felony offense" under this paragraph.

## AGGRAVATING ROLE: SECTION 3B1.1

The Government contends that the Defendant's offense level should be increased by four levels pursuant to U.S.S.G. § 3B1.1 because he was an organizer and leader in criminal activity that involved five or more participants. Section 3B1.1(a) of the Sentencing Guidelines authorizes a four-level enhancement "[i]f the defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive. . ."

In the instant case, the Defendant was clearly a leader or organizer of the criminal activity, and the criminal activity was extensive. The Defendant was at the forefront of the plans to cause a civil disorder by taking over the courthouse and arresting public officials in Madisonville, Tennessee, on April 20, 2010. There were well over ten participants involved with Defendant in the plan to cause a civil disorder. Some of them were members of the Georgia Militia who traveled from other states, many of whom were armed. It is not necessary for the other participants in the take-over plans to have been charged for them to be considered participants. § 3B1.1, Commentary, N. 1.

On April 1, 2010, the Defendant and several other individuals accompanied Walter Fitzpatrick as he attempted to execute citizen's arrests on the grand jury foreperson, Gary Pettway, and the Monroe County Sheriff, William Bivens. The Defendant videotaped these attempted arrests for the purpose of publishing them on the internet. On April 7, 2010, the Defendant drove to Madisonville to meet with Fitzpatrick and others to plan future citizen's arrests in Madisonville. At the Defendant's trial, there was evidence of text messages between the Defendant and Mike Fulmer from that trip.

6

In those text messages, the Defendant stated that he "met with the arrested [Fitzpatrick] to coordinate with all groups involved." He also stated that they did not execute any arrest warrants that day, but they were "moving to phase 2."

On April 20, 2010, the day of the offense, the Defendant was stopped by the Tennessee Highway Patrol for a traffic violation as he drove to Madisonville. He was in possession of numerous "Citizens' Arrest Warrants" at that time. In a taped conversation between the Defendant and the officers involved in the stop, the Defendant discussed the "Citizens' Arrest Warrants" they planned to execute that day and the plans to take over Madisonville. The Defendant told the officers he was "at the higher end of the enforcement side of this whole thing." Moreover, testimony at trial showed that the Defendant attempted to recruit the officers to join his efforts in Madisonville.

While in Madisonville the day of the offense, Huff met with several other members from the Georgia Militia and other supporters of the plan to conduct citizen's arrests. Witnesses at trial testified that the group congregated at Donna's Restaurant and also outside the restaurant near the Monroe County Courthouse. A tape recording of Huff's speech to the crowd at Donna's Restaurant reveals that he was someone in a leadership position. As indicated in the PSR, the Defendant gave a "motivational" speech to the group. During that speech, the Defendant regaled the crowd about the fact that he had an AK-47 in his truck with 300-400 rounds of ammunition. Witnesses also observed Huff outside the restaurant addressing a group of his supporters in an animated manner. The Defendant was also overheard telling cohorts that they would have to come back another day, indicating he had decision-making authority over the other participants.

7

The Defendant continued his recruitment efforts for his insurrection movement after April 20, 2010. On April 30, 2010, he traveled to East Tennessee in an attempt to get sheriffs from various counties to join him. He met with Loudon County Sheriff Tim Guider and attempted to get him to join his efforts in Madisonville. The Defendant also appeared for a series of video-taped interviews on the internet website, "Rise Up for America." In those interviews, he promoted his group's efforts in Madisonville.

Clearly the Defendant's participation in the civil disorder was that of an organizer/leader as he played a much greater role than others by: (1) video-taping events on April 1, 2010; (2) traveling to Tennessee on April 7, 2010, to plan future efforts to conduct citizen's arrests; (3) being a vocal leader on April 20, 2010; (4) making decisions, such as the postponement of the courthouse takeover; (5) attempting to recruit law enforcement officers involved with his traffic stop to join his cause; (6) recruiting Michael DeSilva to join him to write about the offense on April 20, 2010; (7) traveling to East Tennessee on April 30, 2010, to recruit county sheriffs to join his cause; and (8) appearing on internet websites to promote his cause regarding the Madisonville rebellion. Moreover, by his own words, the Defendant was a leader, saying "he was at the higher end of the enforcement side of this whole thing." Therefore, Defendant was an organizer or leader and his offense level should be enhanced pursuant to § 3B1.1.

OBSTRUCTION OF JUSTICE: SECTION 3C1.1

The government contends that a two-level enhancement for obstruction pursuant to U.S.S.G. § 3C1.1 is appropriate for the Defendant's perjurious testimony at trial. Section 3C1.1 of the Sentencing Guidelines authorizes a two-level enhancement "[i]f the

8

defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing, of the instant offense . . ." U.S.S.G. § 3C1.1(A). The Application Notes to § 3C1.1 provide specific examples of the type of conduct that warrants the enhancement and specifically lists "perjury" as an example. U.S.S.G. § 3C1.1 n.4(b).

In *United States v. Dunnigan*, 507 U.S. 87, 85, 113 S. Ct. 111, 122 L. Ed. 2d 445 (1993), the Supreme Court outlined the requirements necessary to support an obstruction of justice enhancement based on perjury. The Court held that the district court "must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice . . . under the perjury definition." *Id.* The Sixth Circuit has interpreted Dunnigan to require the district court to "identify for the record at least some specific instances of conflicting testimony and specify which portions of the defendant's testimony he finds materially perjurious." *United States v. Spears*, 49 F.3d 1136, 1143 (6th Cir. 1995), abrogated on other grounds; *United States v. Wells*, 519 U.S. 482, 117 S. Ct. 921, 137 L. Ed. 2d 107 (1997). "Material information is information that, if believed, would tend to influence or affect the issue under determination." *United States v. Crousore*, 1 F.3d 382, 385 (6th Cir 1993) (citing U.S.S.G. § 3C1.1 comment n.5).

Thus, for the enhancement to apply, a district court must indicate which portions of the Defendant's testimony were perjurious and apply the elements of perjury to those portions of the testimony. *United States v. Sassanelli*, 118 F.3d 495, 501 (6th Cir. 1997). A district court decides perjury matters for sentencing by preponderance of the evidence burden of proof. *United States v. Zajack*, 62 F.3d 145, 147 (6th Cir. 1995).

9

1. Summary

At trial, the Defendant repeatedly denied making any statements to Erica Dupree or Shane Longmire that he intended to take over the city of Madisonville or the courthouse when he spoke to them in the bank on April 15, 2010. There was no ambiguity in the testimony of Defendant on that issue. The Defendant testified, "I have never made a statement about taking over the courthouse, the city, the state, nothing...I never said anything about taking anything over." The Defendant's testimony was directly contradicted by the testimony of Erica Dupree and Shane Longmire. Both witnesses testified that the Defendant came into the bank on April 15, 2010, and told them he was going to go to Madisonville, Tennessee, on April 20, 2010, with other members of the Georgia Militia and they were going to take over the city. Dupree and Longmire also testified that the Defendant said he was going to take his AK-47 with him. It is impossible to reconcile the testimony of the Defendant with that of Dupree and Longmire. Either the Defendant was being deliberately untruthful, or both Dupree and Longmire together were being deliberately untruthful.

2. Analysis

   A. *Defendant's Veracity*

The testimony of Dupree and Longmire corroborates each other. It is also corroborated by the fact that the Defendant did in fact go to Madisonville on April 20, 2010, with other armed protesters to protest against the arrest of Walter Fitzpatrick. The testimony of Dupree and Longmire is also supported by evidence of other statements that the Defendant made to officers during the traffic stop, indicating that he was planning to arrest public officials in Madisonville and was prepared for an armed

10

confrontation with law enforcement that day. Moreover, their testimony was supported by other evidence consistent with their version of the Defendant's statements in the bank, such as he was going to take an AK-47 with him. The Court found in its order denying the Defendant's motion for new trial, "the defendant took his AK-47 and 300-400 rounds of ammunition with him when he traveled to Madisonville from Georgia which was consistent with what he told Shane Longmire and Erica Dupree he would do." [Doc. 182.] It is important to note that the Defendant admitted at trial that he initially lied to the FBI about that fact.

Further, Dupree's testimony is corroborated by the taped phone call she made to the Madisonville police chief about the Defendant's statements shortly after he made them. As this Court found in its order denying the Defendant's motion for new trial, "[t]he tape-recorded statement was also consistent with Erica Dupree's challenged testimony." [Doc. 182.]

Finally, this Court stated in its order denying the Defendant's motion for new trial that, "the defendant's statements and Agent Reed's response, or failure to respond, did not negate the intent the defendant expressed to Shane Longmire and Erica Dupree." [Doc. 182, p. 5.] It is implicit in this statement that the Court found Dupree and Longmire's testimony about Defendant's intent to be credible. Clearly, Erica Dupree and Shane Longmire's testimony was credible. Their testimony was consistent and supported by other evidence. They had absolutely no motive to fabricate their testimony about the Defendant's statements.

11

Case 3:10-cr-00073-TAV-HBG Document 191   Filed 04/05/12   Page 11 of 13   PageID #: 1227

B. *Materiality*

The Defendant's testimony that he never told Dupree or Longmire that he and others planned to "take over" the city of Madisonville was clearly material. One of the elements that the government had to prove was that the Defendant intended for a firearm to be used in a "civil disorder." Clearly, statements that he and other members of his militia were intending to "take over" the city is material to whether he intended to use the firearm in furtherance of a civil disorder. Taking over a city by force certainly constitutes a civil disorder. Dupree and Longmire's testimony on that issue would tend to influence or affect the issue under determination. Thus, the Defendant's emphatic and direct contradiction of their testimony would be material.

The government submits that a two-level enhancement for obstruction under Section 3C1.1 should be awarded in this case.

WHEREFORE, the United States respectfully requests this Honorable Court to sentence the Defendant in accordance with the Guidelines as advocated in this sentencing memorandum.

    Respectfully submitted,

    WILLIAM C. KILLIAN
    UNITED STATES ATTORNEY

By:   *s/ Jeffrey E. Theodore*
    JEFFREY E. THEODORE
    A. WILLIAM MACKIE
    Assistant United States Attorneys
    800 Market Street, Suite 211
    Knoxville, TN 37902
    (865) 545-4167

## CERTIFICATE OF SERVICE

      I hereby certify that on April 5, 2012, a copy of the foregoing Sentencing Memorandum Regarding Application of Sentencing Guidelines was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

                                           *s/ Jeffrey E. Theodore*
                                           Jeffrey E. Theodore
                                           Assistant United States Attorney